**AMENDED AND RESTATED**

**BY-LAWS**

**OF**

**WTA TOUR, INC.**

June 9, 2022

# TABLE OF CONTENTS

**Page**

**ARTICLE I. OFFICES** ....................................................................................... 1

SECTION 1.1    OFFICE .......................................................................................... 1
SECTION 1.2    ADDITIONAL OFFICES ................................................................... 1

**ARTICLE II. MEMBERSHIP** ........................................................................... 1

SECTION 2.1    MEMBERS ...................................................................................... 1
SECTION 2.2    APPLICATION FOR MEMBERSHIP .................................................. 2
SECTION 2.3    OTHER MEMBERS .......................................................................... 2
SECTION 2.4    HONORARY MEMBERS .................................................................. 3
SECTION 2.5    CONDITIONS OF MEMBERSHIP ....................................................... 3
SECTION 2.6    VIOLATIONS OF CONDITIONS OF MEMBERSHIP.. ........................... 4

**ARTICLE III. DUES, FEES, ASSESSMENTS AND OTHER PAYMENTS** ......... 4

SECTION 3.1    MEMBER DUES, FEES, ASSESSMENTS AND OTHER PAYMENTS ......... 4
SECTION 3.2    FAILURE TO PAY MEMBER DUES, FEES, ASSESSMENTS AND OTHER PAYMENTS ... 4

**ARTICLE IV. ELECTION OF DELEGATES AND MEETINGS OF MEMBERS** ............ 4

SECTION 4.1    ELECTION OF DELEGATES; TERMS ................................................. 4
SECTION 4.2    RESIGNATION AND REMOVAL OF DELEGATES ............................... 17
SECTION 4.3    VACANCIES AMONG DELEGATES ................................................... 17
SECTION 4.4    ANNUAL AND SPECIAL MEETINGS OF MEMBERS/DELEGATES; PLACE OF MEETINGS; ANNUAL MEETINGS ........................................ 18
SECTION 4.5    NOTICE OF MEETINGS AND WAIVER OF NOTICE. ........................... 17
SECTION 4.6    QUORUM ....................................................................................... 18
SECTION 4.7    VOTING. ........................................................................................ 19
SECTION 4.8    ACTION WITHOUT A MEETING ...................................................... 19
SECTION 4.9    ADJOURNED MEETINGS OF MEMBERS ......................................... 21
SECTION 4.10   LIST OF MEMBERS/DELEGATES ..................................................... 20
SECTION 4.11   SPECIAL CLASS OF MEMBERS ....................................................... 20

**ARTICLE V. BOARD OF DIRECTORS** .......................................................... 20

SECTION 5.1    POWER OF BOARD; QUALIFICATION OF DIRECTORS ...................... 20
SECTION 5.2    NUMBER OF DIRECTORS AND ALTERNATES .................................. 22
SECTION 5.3    APPOINTMENT OF DIRECTORS AND ALTERNATES; TERMS OF OFFICE. .............. 21
SECTION 5.4    NEWLY-CREATED DIRECTORSHIPS ................................................ 23
SECTION 5.5    RESIGNATION AND REMOVAL OF DIRECTORS ............................... 23
SECTION 5.6    VACANCIES AMONG DIRECTORS ................................................... 23
SECTION 5.7    ALTERNATES. ................................................................................. 23
SECTION 5.8    OBSERVERS AND OTHERS ............................................................. 23
SECTION 5.9    MEETINGS OF DIRECTORS. ........................................................... 23
SECTION 5.10   CHAIRMAN OF THE BOARD. .......................................................... 25
SECTION 5.11   NOTICE AND WAIVER OF NOTICE. ................................................ 24
SECTION 5.12   QUORUM OF DIRECTORS .............................................................. 25

SECTION 5.13    VOTING; ACTION BY THE BOARD. ........................................................ 25
SECTION 5.14    ACTION BY DIRECTORS WITHOUT A MEETING ..................................... 27
SECTION 5.15    COMPENSATION OF DIRECTORS ....................................................... 26

**ARTICLE VI. EXECUTIVE COMMITTEE AND OTHER COMMITTEES .................... 26**

SECTION 6.1    EXECUTIVE AND OTHER COMMITTEES. ............................................. 26

**ARTICLE VII. CODE OF CONDUCT AND STANDARDS OF PERFORMANCE .......... 27**

SECTION 7.1    CODE OF CONDUCT AND STANDARDS OF PERFORMANCE ..................... 27
SECTION 7.2    CODE OF CONDUCT AND STANDARDS OF PERFORMANCE COMMITTEES. .............. 29

**ARTICLE VIII. OFFICERS ..................................................................................... 30**

SECTION 8.1    OFFICERS ....................................................................................... 30
SECTION 8.2    ELECTION OF OFFICERS .................................................................... 30
SECTION 8.3    TERM OF OFFICE; RESIGNATION; REMOVAL; VACANCIES ..................... 30
SECTION 8.4    COMPENSATION ............................................................................... 31
SECTION 8.5    CHIEF EXECUTIVE OFFICER .............................................................. 31
SECTION 8.6    SECRETARY ..................................................................................... 31
SECTION 8.7    TREASURER ..................................................................................... 31
SECTION 8.8    OTHER OFFICERS ............................................................................. 32
SECTION 8.9    MANAGEMENT SUCCESSION. ............................................................. 32

**ARTICLE IX. INDEMNIFICATION AND INSURANCE ....................................... 33**

SECTION 9.1    INDEMNIFICATION .......................................................................... 33
SECTION 9.2    INSURANCE ..................................................................................... 33

**ARTICLE X. OTHER MATTERS ........................................................................... 33**

SECTION 10.1    FISCAL YEAR ................................................................................. 33
SECTION 10.2    OFFICIAL LANGUAGE ...................................................................... 33
SECTION 10.3    CORPORATE SEAL ........................................................................... 33
SECTION 10.4    CHECKS, DRAFTS, NOTES AND OTHER OBLIGATIONS .......................... 33
SECTION 10.5    DEPOSITS OF CORPORATE FUNDS ...................................................... 33
SECTION 10.6    ANNUAL STATEMENT ...................................................................... 33
SECTION 10.7    BOOKS AND RECORDS TO BE KEPT .................................................... 34
SECTION 10.8    RELATED PARTY TRANSACTIONS. ..................................................... 34
SECTION 10.9    PROFESSIONAL ADVISERS ................................................................ 34
SECTION 10.10    AMENDMENT OF THE BY-LAWS. ...................................................... 35
SECTION 10.11    USE OF GENDER PRONOUNS ............................................................ 35
SECTION 10.12    JURISDICTION AND VENUE. ............................................................ 35
SECTION 10.13    GOVERNING LAW .......................................................................... 36
SECTION 10.14    LITIGATION COSTS ........................................................................ 36

**AMENDED AND RESTATED**

**BY-LAWS**

**OF**

**WTA TOUR, INC.**
**(The "Tour")**

**ARTICLE I.**
**OFFICES**

Section 1.1    <u>Office</u>.  The office of the Tour within the State of New York shall be located in the City and County of New York.  The corporate headquarters of the Tour shall be located in St. Petersburg, Florida, in Pinellas County, where the books and records of account of the Tour shall be kept.

Section 1.2    <u>Additional Offices</u>.  The Tour may also have offices at such other places within or without the State of New York and within or without the United States as the Board of Directors of the Tour (the "Board of Directors" or the "Board") may from time to time designate or as the business of the Tour may require.

**ARTICLE II.**
**MEMBERSHIP**

Section 2.1    <u>Members</u>.  The Tour shall have four classes of members:  the "Player Class," the "Tournament Class," the "Federation Class" and the "Special Class."

(a)    <u>Player Class</u>.  Any woman whose primary source of income is derived from participation on a regular basis in competitive tennis for economic gain shall be eligible for full membership in the Player Class, based upon criteria for membership to be established from time to time by the Board.  The Player Class shall consist of four (4) levels of voting members, determined by the first ranking of players following completion of the French Open Championships in each year, as follows:

(i)    The members of the first level shall be those players who are full members and are ranked one through twenty in singles, inclusive ("Top 20 Group");

(ii)    The members of the second level shall be those players who are full members and are ranked twenty-first through fiftieth in singles, inclusive ("21-50 Group");

(iii)    The members of the third level shall be those players who are full members and are ranked fifty-first through one-hundredth in singles, inclusive ("51-100 Group"); and

(iv)    Subject to the following sentence, the members of the fourth level shall be those players who are full members and are ranked below one-hundredth in singles or only have a doubles ranking ("101+ Group").

The Board may, in its discretion, also establish criteria for the creation of, and composition of, a non-voting level of members of the Player Class (to be referred to as the "associate members"), based upon a ranking or an income level from competitive tennis that are lower than that of full members.

(b)    <u>Tournament Class</u>.    The members of the Tournament Class shall be the owners (whether individual, corporate or any other form of ownership) of tournaments receiving a sanction from the Tour as a tournament of any category (other than the four tournaments known as the "Grand Slam Events" and the season-ending "WTA TOUR Championships") in the twelve-month award competition series of tennis tournaments known as the "WTA TOUR" (or such other name as the Tour may designate, hereafter referred to as the "Tour" or the "WTA TOUR") pursuant to the WTA TOUR Rules, as they may be adopted and amended from time to time by the Tour.    (The members of the Tournament Class may sometimes be referred to herein as the "Tournaments.")

(c)    <u>Federation Class</u>.    The sole member of the Federation Class shall be the International Tennis Federation (Ltd.) (the "ITF"), a Bahamas membership corporation representing its member national tennis associations and/or federations, or any related entity representing such member national tennis associations or federations designated by the ITF or any successor organization or organizations.

(d)    <u>Special Class</u>.    The sole member of the Special Class shall be the Chief Executive Officer of the Tour (the "CEO").

(e)    <u>General</u>.    The respective qualifications, rights, privileges and responsibilities of the members of any class shall be as set forth in the Certificate of Incorporation of the Tour, these By-Laws and, to the extent not inconsistent with applicable law, the Certificate of Incorporation and these By-Laws, in the WTA TOUR Rules and resolutions duly passed by the Board of Directors. In the event of any conflict or inconsistency between any of the terms or provisions of these By-Laws or the Certificate of Incorporation on the one hand and any of the terms or provisions of the WTA TOUR Rules or resolutions passed by the Board of Directors (other than any resolutions duly authorizing an amendment to these By-Laws in accordance with the terms herein) on the other hand, to the extent not inconsistent with applicable law, the term or provision of these By-Laws or the Certificate of Incorporation, respectively, shall govern and control. The Tournaments' ownership rights in and to the Tournaments are set forth on Schedule I attached to these By-Laws.

Section 2.2    <u>Application for Membership</u>.    The application procedures for membership in the Tour or in any class of members and the procedures for renewal, suspension and termination of membership shall be as determined from time to time by the Board of Directors.  In the event of a conflict between such procedures and these By-Laws, these By-Laws shall prevail.

Section 2.3    <u>Other Members</u>.    The Tour shall have such other members as the Board of Directors may determine, subject to amendment of these By-Laws pursuant to the "Supermajority Matters" provision of Section 10.10 in order to provide for such other members.

Section 2.4    <u>Honorary Members</u>.  The Board of Directors may elect honorary members by a unanimous vote of the entire Board.  Such honorary members shall be exempt from payment of any fees or dues and shall be entitled to all the privileges of regular members, except the right to vote or hold office.

Section 2.5    <u>Conditions of Membership</u>.  Each member of the Tour (other than the Special Class member with respect to Sections 2.5(a), (b) and (d)), by accepting and maintaining a membership in the Tour, agrees for herself, himself or itself and, in the case of the Federation Class, for its members, to:

(a)    Abide by all decisions, rulings, and actions of the Tour or any class of members of the Tour with respect to all matters within the jurisdiction of the Tour (or any such class of members);

(b)    Abide by all decisions, rulings and actions of the Board of Directors (or any authorized committee of the Tour or the Board of Directors);

(c)    Abide by all decisions, rulings and actions of the CEO of the Tour, if any, with respect to all matters within his or her jurisdiction;

(d)    Waive any and all claims or demands, whether for damages or otherwise, which the member might now or hereafter have against the Tour or any member of the Tour or against any director, officer or employee of the Tour in connection with or by reason of any decision, ruling or action of the membership of the Tour, any applicable class of membership of the Tour, the Board of Directors (or any authorized committee of the Board) or the officers or employees of the Tour with respect to all matters within their respective jurisdictions;

(e)    Grant to the Tour the authority to use or to grant to others the right to use her, his or its, name, photograph, likeness, logo, art work, or other identification, alone or in conjunction with the name, photograph, likeness, logo, art work, or other identification of others, for the purpose of promoting the WTA TOUR, the "XYZ" WTA TOUR (where "XYZ" refers to the title sponsor of the WTA TOUR) and the Tournaments, Grand Slam Events (subject to their prior approval) and WTA TOUR Championships, together comprising the WTA TOUR, in newspapers, magazines, motion pictures, programs, player and tournament yearbooks, broadcasts and telecasts, and all other publicity and promotional materials and media, including publicity and promotion in connection with a commercial product, as long as such publicity and promotion in connection with a commercial product is directly related to the publicity and promotion of the WTA TOUR and does not constitute a direct individual endorsement of such commercial product;

(f)    Conduct herself, himself or itself in a manner which is in the best interests of the Tour, the WTA TOUR and the sport of tennis and abide by all of the terms and provisions of the Certificate of Incorporation of the Tour, the By-Laws of the Tour and the WTA TOUR Rules, as amended from time to time; and

(g)    Grant to her, his or its Delegates (as defined below) and, if applicable, Alternates (as defined below)(each elected or appointed pursuant to Sections 4.1 and/or 4.3 of these By-Laws) an irrevocable proxy, which proxy is coupled with an interest, to appoint themselves as Directors to serve on the Board of Directors of the Tour in accordance with the

provisions of these By-Laws, whether at annual or special meetings of members or by means of a written consent, and to vote on any other matter properly brought before the members for a vote.

Section 2.6    Violations of Conditions of Membership.    The CEO may impose appropriate sanctions, including monetary sanctions, upon any member who violates the Conditions of Membership.  Members may appeal the imposition of such sanctions to the WTA Tour Board of Directors.

## ARTICLE III.
## DUES, FEES, ASSESSMENTS AND OTHER PAYMENTS

Section 3.1    Member Dues, Fees, Assessments and Other Payments.    Members of the Tour shall pay annual dues, fees, assessments and other payments to the Tour in such amounts and in such manner as the Board of Directors may from time to time determine.  Any special assessments determined by the Board of Directors to be necessary or advisable to meet operating expenses or working capital requirements shall be allocated among the member classes as follows: the Federation Class shall be assessed an amount equal to 5% of the total special assessment, and the Tournament Class and the Player Class shall each be assessed an amount equal to 47.5% of the total special assessment.

Section 3.2    Failure to Pay Member Dues, Fees, Assessments and Other Payments.    If any member of the Tour shall fail to pay any dues, fees, assessments or other payments as and when they become due, the Board of Directors shall take such action as it deems appropriate, including suspension or termination of membership rights; provided, however, that prior to suspending or terminating any member's membership rights due to such failure, the Board of Directors shall give to the defaulting member written notice of its decision and a reasonable opportunity to cure.  Without limiting the foregoing, the CEO may, at any time, withhold and set off against any and all distributions or revenues (or any portion thereof) due to any member (or any affiliate of such member) by the Tour in the event that such member has failed to pay any dues, fees, assessments or other payments as and when they become due.

## ARTICLE IV.
## ELECTION OF DELEGATES AND MEETINGS OF MEMBERS

Section 4.1    Election of Delegates; Terms.    Except as provided herein with respect to the CEO Delegate (as defined below), the members of each class shall elect delegates ("Delegates") and, to the extent provided in these By-Laws, alternate delegates ("Alternates") to represent them at all annual and special meetings of the members until their successors are elected, qualified and seated.  In addition, the CEO Delegate shall be an at-large representative of the members to represent them at all annual and special meetings of the members until his or her successor is elected, qualified and seated.  Each Delegate and Alternate shall be at least eighteen years of age. The Delegates, when assembled as Delegates as directed by Article IV of these By-Laws, shall have and may exercise all of the powers, rights and privileges of members of the class which elected them (or, in the case of the CEO Delegate, of the members generally).  Whenever in these By-Laws the term "members" is used, unless otherwise expressly provided, it shall refer to the members of the Tour or their duly elected Delegates.  The Delegates shall be elected as follows:

(a)    <u>Player Class Delegates and Alternates; the Players' Council</u>.  The voting members of the Player Class, acting through a "Players' Council," shall elect or appoint three (3) Delegates (each, a "Player Class Delegate"), and shall be entitled to designate one (1) Alternate (the "Player Class Alternate"), all of whom shall be elected as follows:

(A)    one (1) Player Class Delegate shall be elected by a plurality vote of the Players' Council Members described in Section 4.1(a)(i)(A)–(B) (the Top 20 Group members) for a two (2) year term in every odd calendar year;

(B)    one (1) Player Class Delegate shall be elected by a plurality vote of the Players' Council Members described in Sections 4.1(a)(i)(C)-(E) (the 21-50, 51-100 and 21+ Groups members) for a two year term in each odd calendar year;

(C)    one (1) Player Class Delegate shall be elected by a plurality vote of all voting Player's Council Members for a two (2) year term in every even calendar year; and

(D)    the Player Class Alternate shall be elected by a plurality vote of all voting Player's Council Members for a two (2) year term in every even calendar year.

Subject to the foregoing, the Player Class Delegates and the Player Class Alternate will be elected to serve for a term of two (2) years and until their successors are elected, qualified and seated.  The terms of the various Player Class Delegates and the Player Class Alternate will commence with the seating of the Delegates at the first annual meeting following their election and qualification.  Upon the death, resignation, removal or retirement of any Player Class Delegate or Player Class Alternate, or if for any other reason there is a vacancy in either such position, a successor shall be selected in the manner described in the applicable section above and such person shall serve the unexpired term of the person who had occupied the vacated position.  For the purposes of these By-Laws, retirement, unless otherwise specifically provided, shall mean voluntary retirement as a Delegate, Alternate or from some other position involved in the governance or administration of the Tour, and shall not refer to retirement from active play.  The purpose of the Players' Council shall be (i) to enhance and foster communications among the Player Class members, the Player Class Delegates and the Tour, and (ii) to elect the Delegates of the members of the Players' Class.  Other than as set forth in the preceding sentence, the Players' Council shall have only those powers and duties as may be assigned to them from time to time by the Board of Directors of the Tour, subject to applicable law, the Certificate of Incorporation and these By-Laws.

(i)    <u>Election of Players' Council</u>.  The Players' Council shall be comprised of seven (7) voting members and one (1) non-voting member (together with non-voting <u>ex officio</u> members, as described below in this Section 4.1(a)(i)), each of whom must be both a full member of the Tour and the Women's Tennis Benefit Association, Inc. (the "Benefit Association") and elected at a meeting of the Player Class (or by action by written consent in lieu thereof) as follows:

(A)    Two (2) members, who shall be elected for two (2) year terms in each even calendar year, shall be nominated from among and elected by plurality

vote of those members described in Section 2.1(a)(i) (Top 20 Group), provided that not more than three (3) of the four (4) may be citizens of countries on the same continent;

(B)    Two (2) members, who shall be elected for two (2) year terms in each odd calendar year, shall be nominated from among and elected by plurality vote of those members described in Section 2.1(a)(i) (Top 20 Group), provided that not more than three (3) of the four (4) may be citizens of countries on the same continent;

(C)    One (1) member, who shall be elected for a one (1) year term in 2019 and thereafter for a two (2) year term in each even calendar year, shall be nominated from among and elected by plurality vote of those members described in Section 2.1(a)(ii) (21-50 Group);

(D)    One (1) member, who shall be elected for a two (2) year term in each odd calendar year, shall be nominated from among and elected by plurality vote of those members described in Section 2.1(a)(iii) (51-100 Group);

(E)    One (1) member, who shall be elected for a one (1) year term in 2018 and thereafter for a two (2) year term in each odd calendar year, shall be nominated from among and elected by plurality vote of those members, voting as a single class, described in Sections 2.1(a)(ii) (21-50 Group), 2.1(a)(iii) (51-100 Group), and Section 2.1(a)(iv) (101+ Group) (collectively the 21 + Group); and

(F)    One (1) member, who shall be the non-voting member, who shall be elected for a two (2) year term in each even calendar year, shall be nominated from among and elected by plurality vote of those members described in Section 2.1(a)(iv) (101+ Group).

(ii)    <u>Nomination and Election Procedures</u>.  The nomination and election procedures for the Players' Council shall be as set forth on Schedule II attached hereto (except as may be modified or supplemented with respect to nominations and elections following a vacancy as set forth in Section 4.1(a)(iv) below).

(iii)    <u>Resignation and Removal of Players' Council Members</u>.  Any member of the Players' Council may resign on written notice to the other members of the Players' Council.  Any member of the Players' Council may be removed for cause at any meeting of the Players' Council by a majority of the voting members then in office. Retirement from active play or ceasing to be a full member of the Tour and the Benefit Association may be deemed cause for removal.

(iv)    <u>Vacancies among Players' Council Members</u>.  In the event of the death, resignation, removal or retirement of a member of the Players' Council (such member, a "Vacating Member"), or if for any other reason there is a vacancy on the Players' Council, the vacancy so created shall be filled as soon after the occurrence of the vacancy as practicable as follows:

(A)    The Players' Council shall, as soon as reasonably practicable following the occurrence of the vacancy, establish a 21-day Nomination Period for the

members of the class or classes of members entitled to elect the replacement for the Vacating Member (the "Eligible Voting Members") to nominate a replacement Player Council member. Players shall be notified of the vacancy and the Nomination Period via the Player Zone or another official form of Tour communication;

(B)    Determination of the members of the class or classes of members entitled to nominate and elect the replacement member and to be nominated and serve as the replacement member shall be as set forth on Schedule II attached hereto provided that it shall be based on the first official ranking issued following the occurrence of the vacancy. In the event the vacancy occurs following the issuance of the final ranking of a calendar year, but prior to the issuance of the first ranking of the subsequent year, the final ranking of the calendar year shall be used;

(C)    Following the expiration of the Nomination Period, the replacement member shall be elected by vote or action of the Eligible Voting Members to be conducted in the same manner as provided in Section 4.1(a)(i) of these By-Laws for the election or appointment of members of the Players' Council, except to the extent otherwise set forth in this Section 4.1(a)(iv);

(D)    If no member eligible for nomination has been nominated to fill the vacancy following the expiration of the Nomination Period, then the Players' Council shall, by a majority of the voting members then in office, nominate and elect a full Tour and Benefit Association member who satisfies the nomination eligibility requirements set forth above. If, after using its reasonable best efforts to nominate and elect a member to fill the vacancy using the criteria set forth in the previous sentence, the Players' Council is still unable to nominate and elect a member to fill such vacancy, the Players' Council shall, as soon as reasonably practicable, elect by vote of a majority of the voting members of the Players' Council any full Tour and Benefit Association member of the Players' Class regardless of whether such member satisfies the criteria set forth in the prior sentence to fill such vacancy; provided that, to the maximum extent possible, the Players' Council shall ensure such member's nomination and election are consistent with the spirit and goals of the eligibility requirements set forth in these By-Laws. The consents may be in counterparts and may be written or electronic.  If written, the consent must be signed (electronic signature is sufficient).  If electronic, the consent must be sent by electronic mail and set forth, or be submitted with, information from which authorization can be determined.

(v)    <u>Meetings of the Players' Council; Action without a Meeting</u>.

(A)    The Players' Council shall hold regular meetings at such times and places as it may from time to time determine.  Special meetings of the Players' Council may be called at any time by the Chairperson of the Players' Council, if any, or by a majority of the members of the Players' Council then in office and entitled to vote.  The Players' Council may hold its meetings within or without the State of New York or the United States, as it may determine.

(B)    Any one or more Players' Council members may participate in a meeting of the Players' Council by means of a conference telephone, videoconference or similar communications equipment allowing all persons participating in the meeting to hear each other at the same time, and participation by such means shall constitute presence in person at such meeting.

(C)    Whenever the Players' Council is required or permitted to take any action by vote, such action may be taken without a meeting upon the consent of all of the members of the Players' Council entitled to vote thereon, which consent shall set forth the action so taken.  The resolution and the consents of the members of the Players' Council entitled to vote shall be filed with the minutes of the proceedings of the Players' Council.  The written consents may be in counterparts and may be written or electronic. If written, the consent must be signed (facsimile signature is sufficient).  If electronic, the consent must be sent by electronic mail and set forth, or be submitted with, information from which authorization can be determined.

(vi)    <u>Notice of Meetings</u>.

(A)    Unless the time and place of a meeting has been fixed by the Players' Council at its last preceding meeting, notice of each meeting of the Players' Council shall be given by the Chairperson or the Secretary of the Players' Council personally, by first class mail, by electronic mail or by facsimile transmission to each Players' Council member.  Notice shall be given not less than ten (10) nor more than fifty (50) days before the date of the meeting.  Notice shall be sent to the address, facsimile number or electronic mail address designated by each Players' Council member for that purpose, or, if none has been so designated, to her last known residence or business address, facsimile number or electronic mail address.  If mailed, such notice is given when deposited in the mail, with postage prepaid.  If by facsimile transmission or electronic mail, such notice is given at the time of sending to the member's facsimile number or electronic mail address unless two (2) consecutive notices are not able to be delivered by facsimile transmission or electronic mail or the Chairperson or the Secretary of the Players' Council otherwise becomes aware that notice cannot be delivered to the member by facsimile transmission or electronic mail.

(B)    Notice of a meeting of the Players' Council need not be given to any Players' Council member who submits a waiver of notice, whether before or after the meeting, or who attends the meeting without protesting, prior to or at the beginning of the meeting, the lack of notice to her.  Waiver of notice may be written or electronic. If written, the waiver must be signed (facsimile signature is sufficient).  If electronic, the waiver must be sent by electronic mail and set forth, or be submitted with, information from which authorization can be determined.  Notice of the continuation of a meeting at another time and place need not be given to any Players' Council member if such time and place are announced at the meeting being continued.

(C)    A notice or waiver of notice need not specify the purpose of any meeting of the Players' Council.

(D)    A majority of the Players' Council members present and entitled to vote, whether or not a quorum is present, may adjourn any meeting to another time and place.  Notice of any adjournment of a meeting to another time or place shall be given in the manner described above to the members who were not present at the time of the adjournment.

(vii)    Quorum.  At any meeting of the Players' Council, a quorum for the transaction of any business shall consist of a majority of the Players' Council members entitled to vote at such meeting.  When a quorum is present to organize a meeting, it is not broken by the subsequent withdrawal of any member.

(viii)    Voting.  All matters properly brought before a duly constituted meeting of the Players' Council shall be decided by the vote of a majority of those Players' Council members present, entitled to vote and voting thereon.

(ix)    Organization.  The Players' Council may by majority vote elect a Chairperson from among the Player Class Delegates.  The Chairperson shall serve as the chairperson of each Players' Council meeting and shall have such other responsibilities with respect to the administration of the Players' Council as the Players' Council members may determine, subject to applicable law, the Certificate of Incorporation and these By-Laws.

(x)    Expenses and Compensation.  The Board of Directors of the Tour may approve the payment of reasonable travel, lodging, meal and other expenses of the Players' Council members incident to their attendance at meetings of the Players' Council.  No Players' Council member may be present at or otherwise participate in any Board of Directors deliberation or voting concerning the member's own compensation except if requested to present information or answer questions prior to such deliberation or voting.

(b)    Tournament Class Delegates and Alternates; Tournament Council.

(i)    Delegates and Alternates:  The Tournament Class shall elect one (1) Tournament Class Delegate per year for a three (3) year term, to replace the Tournament Class Delegate whose term is then expiring.  The Tournament Class Alternate shall be elected for a two (2) year term in every odd calendar year.  The Tournament Class Delegates will also serve (x) as Tournament Council Representatives, as contemplated by Section 4.1(b)(ii), and (y) as members of the Board of Directors, as contemplated by Section 5.3(a)(ii).  The Tournament Class Alternate will also serve (x) as a Tournament Council Representative, as contemplated by Section 4.1(b)(ii), and (y) as an observer and alternate member of the Board of Directors, as contemplated by Section 5.7.

(A)    Nominations:  Candidates shall be nominated regionally by at least two (2) Tournaments from any Tier Levels (as defined below) from the particular Geographic Region (as defined below) for which Tournament Class elections are being conducted.  Any two (2) Tournaments may nominate such a candidate by causing persons having an ownership interest or direct management involvement in the Tournaments to complete a nomination form prepared by the Tour or its accounting firm and submitting such nomination form to the Tour in accordance with the applicable instructions.  A person

may not nominate himself or herself. For purposes hereof, the Tier Levels of Tournaments are Tiers I (including Tier I with mandatory player commitment: Tier I - Mandatory), II, and III (the "Tournament Levels"), and the three (3) geographic regions are Europe, Asia Pacific, and the Americas (North, Central and South America) (the "Geographic Regions").

        (B)   <u>Elections</u>:

        (1)   Elections shall be on a Geographic Region basis. Elections for the Tournament Class Delegates from each Region shall be conducted on an annual staggered basis. The Tour will distribute ballots listing all qualified candidates from each Geographic Region to each Tournament within such Geographic Region entitled to vote. A Tournament shall be entitled to vote if, on the date the nominations for Delegates were opened, the Tournament was a member in good standing of the Tour. Each Tournament shall vote for one candidate only. Votes shall be cast and weighted as follows: Tier I: 6 votes per Tournament; Tier II: 3 votes per Tournament; Tier III: 1 vote per Tournament. The candidate from each Geographic Region who receives the highest number of votes will be the Tournament Class Delegate from that Geographic Region; and

        (2)   Every odd calendar year, one (1) Tournament Class Alternate shall be elected at large by the Tournament Council. Such election shall take place immediately after the results of the Tournament Class Delegate election for that year are known. The term of service of the Alternate shall be two (2) years. In addition to serving as Tournament Class Alternate, such Alternate may attend each meeting of the Board to observe; and

        (C)   <u>Administration</u>. The nomination and election process and timetable shall be administered by or at the direction of the Tour's CEO. Tournament Class Delegates will be elected to serve for a term of three (3) years. All terms of such Delegates and the Tournament Class Alternate shall continue until their successors are elected, qualified and seated. In the event of the death, resignation, removal or retirement of a Tournament Class Delegate or the Tournament Class Alternate, or if for any other reason there is a vacancy in either such position, a successor shall be selected in the manner described in the applicable section above and such person shall serve the unexpired term of the person who had occupied the vacated position. The terms of the Tournament Class Delegates and the Tournament Class Alternate will commence with the seating of the Delegates at the first annual meeting following their election and qualification.

        (ii)   <u>WTA TOUR Tournament Council: Number and Qualification of Tournament Council Representatives</u>.

        (A)   There shall be a WTA TOUR Tournament Council (the "Tournament Council") which shall be comprised of twelve (12) to fourteen (14) representatives of the Tournaments (the "Tournament Council Representatives"), as follows:

(1)    Three (3) representatives shall be the Tournament Class Delegates;

(2)    One (1) representative shall be the Tournament Class Alternate; and

(3)    Nine (9) Tournament Council representatives shall be nominated and elected as described below.

(4)    If the Three (3) Tier I Tournament Council representatives do not an include a representative of a Tier I with mandatory player commitment, then the Tournament Council may appointment one (1) additional representative for the Tier I Tournaments with mandatory player commitment.

The purpose of the Tournament Council shall be to enhance and foster communication among the Tournament Class members, the Tournament Class Delegates and the Tour. The Tournament Council shall have such other powers and duties as may be assigned to it from time to time by the Board of Directors of the Tour, subject to applicable law, the Certificate of Incorporation and these By-Laws. Each Tournament Council Representative will serve for a term determined in accordance with Section 4.1(b)(ii)(C) (or in the case of Tournament Class Delegates, a term that is co-terminus with his or her term as a Tournament Class Delegate). The Tournament Council Representatives may invite such other persons as they may determine from time to time to attend the meetings of the Tournament Council as regular Observers or in any other non-voting capacity.

(B)    The Tournament Council Representatives (other than the Tournament Class Delegates) shall be elected in accordance with the following:

(1)    <u>Nominations</u>:    Candidates shall be nominated regionally by at least two (2) Tournaments from any Tier Levels from a particular Geographic Region. Any two (2) Tournaments may nominate such a candidate by causing persons having an ownership interest or direct management involvement in the Tournaments to jointly complete a nomination form prepared by the Tour or its accounting firm and submitting such nomination form to the Tour in accordance with the applicable instructions. A Tournament may only nominate one (1) candidate per election. A person may not nominate himself or herself.

(2)    <u>Elections</u>:    Elections will be conducted for one Tournament Level per Geographic Region each year in accordance with Section 4.1(b)(ii)(C), in order to elect one Tournament Council Representative for each Geographic Region, at the applicable Tournament Level, whose Tournament Council Representative's term is expiring in such year. In each such year, each of the three (3) Geographic Regions shall elect one (1) Tournament Council Representative representing each such Geographic Region from the applicable Tournament Level, as determined by Geographic Region. The candidate receiving the largest number of votes from the Tournaments in the applicable Geographic Region shall be elected as the Tournament Council Representative, at the applicable

Tournament Level, from such Geographic Region.  Any tie between candidates at any Tournament Level in a Geographic Region shall be resolved by a runoff vote between the two tied candidates in which each Tournament in the Geographic Region votes.  In all cases, each Tournament shall be entitled to one (1) vote for the election of Tournament Council Representatives.  A Tournament shall be entitled to vote if, on the date the nominations for candidates were opened, the Tournament was a member in good standing of the Tour.

(C)    Administration:  With respect to the nomination or election of any Tournament Council Representative (other than Tournament Class Delegates) the nomination and election process and timetable shall be administered by or at the direction of the Tour's CEO.

(1)    In 2004, each Geographic Region shall elect a Tournament Council Representative representing Tier I, such representative to serve for a term of:

(a)    for the United States, three (3) years, ending in 2007;

(b)    for Asia Pacific, two (2) years, ending in 2006;

(c)    for Europe, one (1) year, ending in 2005.

(2)    In 2004, each Geographic Region shall elect a Tournament Council Representative representing Tier II, such representative to serve for a term of:

(a)    for Europe, three (3) years, ending in 2007;

(b)    for the United States, two (2) years, ending in 2006;

(c)    for Asia Pacific, one (1) year, ending in 2005.

(3)    In 2004, each Geographic Region shall elect a Tournament Council Representative representing Tier III, such representative to serve for a term of:

(a)    for Asia Pacific, three (3) years, ending in 2007;

(b)    for Europe, two (2) years, ending in 2006;

(c)    for the United States, one (1) year, ending in 2005.

(4)    Tournament Council Representatives elected in 2005 and thereafter shall serve for terms of three (3) years.

(iii)    Resignation and Removal of Tournament Council Representatives.  Any Tournament Council Representative may resign at any time upon written notice to the

Tournament Council and Board of Directors of the Tour.  Any Tournament Council Representative may be removed for cause at any meeting of the Tournament Council as follows:

> (A)  If the Tournament Council Representative is also a Delegate, by his or her removal as a Delegate pursuant to the provisions of Section 4.2 of these By-laws, whereupon he or she shall automatically be removed as a Tournament Council Representative, without further action; and

> (B)  If the Tournament Council Representative is not also a Delegate, by the affirmative vote of a majority of the total number of the voting Tournament Council Representatives.

If a Tournament Council Representative resigns in his or her role as a Delegate, he or she shall be deemed also to have resigned as a Tournament Council Representative without further action.

> (iv)  <u>Vacancies</u>.  In the event of the death, resignation, removal or retirement of a Tournament Council Representative, or if for any other reason there is a vacancy on the Tournament Council, the vacancy so created shall be filled as soon as practicable after the occurrence of the vacancy (i) in the same manner as provided in Section 4.3 of these By-Laws, in the case of the death, resignation, removal or retirement of a Representative who is a Tournament Class Delegate or Alternate, or (ii) by vote of a majority of the Tournament Council Representatives then in office.  The person selected to fill such vacancy shall serve only the unexpired term of the person he or she replaced.

> (v)  <u>Meetings of the WTA TOUR Tournament Council</u>.

> (A)  The Tournament Council shall hold regular meetings at such times and places as the Tournament Council may from time to time determine.  Special meetings of the Tournament Council may be called at any time by the Chairperson of the Tournament Council, if any, or by a majority of Tournament Council Representatives then in office.  The Tournament Council may hold its meetings within or without the State of New York and within or without the United States, as it may determine.

> (B)  Any one or more Tournament Council Representatives may participate in a meeting of the Tournament Council by means of a conference telephone, videoconference or similar communications equipment allowing all persons participating in the meeting to hear each other at the same time, and participation by such means shall constitute presence in person at such meeting.

> (C)  Whenever the Tournament Council is required or permitted to take any action by vote, such action may be taken without a meeting upon the consent of all the Tournament Council Representatives entitled to vote on the matter, which consent shall set forth the action so taken.  The resolution and consents of the Tournament Council Representatives shall be filed with the minutes of the proceedings of the Tournament Council.  Such consent may be written or electronic. If written, the consent must be signed (facsimile signature is sufficient).  If electronic, the consent must be sent by electronic mail and set forth, or be submitted with, information from which authorization can be determined.

(vi)    <u>Notice of Meetings</u>.

(A)    Unless the time and place of a meeting has been fixed by the Tournament Council as a regular meeting, notice of each meeting of the Tournament Council shall be given by the Chairperson or the Secretary of the Tournament Council personally, by first class mail, by electronic mail or by facsimile transmission to each Tournament Council Representative.  Notice shall be given not less than ten (10) nor more than fifty (50) days before the date of the meeting.  If mailed, such notice is given when deposited in the mail, with postage prepaid.  If by facsimile transmission or electronic mail, such notice is given at the time of sending to the Tournament Council Representative's facsimile number or electronic mail address unless two (2) consecutive  notices are not able to be delivered to the Tournament Council Representative by facsimile transmission or electronic mail or the Chairperson or the Secretary of the Tournament Council  otherwise becomes aware that notice  cannot be delivered to the Tournament Council Representative by facsimile transmission or electronic mail. Notices shall be sent to each Tournament Council Representative at the address, facsimile number or electronic mail address designated by her or him for that purpose, or, if none has been so designated, at her or his last known residence or business address, facsimile number or electronic mail address.

(B)    Notice of a meeting of the Tournament Council need not be given to any Representative who submits a waiver of notice whether before or after the meeting, or who attends the meeting without protesting, prior to or at the beginning of the meeting, the lack of notice to her or him.  Waiver of notice may be written or electronic. If written, the waiver must be signed (facsimile signature is sufficient).  If electronic, the waiver must be sent by electronic mail from which authorization can be determined.  Notice of the continuation of a meeting at another time and place need not be given to any Tournament Council Representative if such time and place are announced at the meeting being continued.

(C)    A notice or waiver of notice need not specify the purpose of any meeting of the Tournament Council.

(D)    A majority of the Tournament Council Representatives present, whether or not a quorum is present, may adjourn any meeting to another time and place.  Notice of any adjournment of a meeting to another time or place shall be given in the manner described above to the Representatives who were not present at the time of the adjournment and, unless such time and place are announced at the meeting, to the other Tournament Council Representatives.

(vii)    <u>Quorum</u>.  At any meeting of the Tournament Council, a quorum for the transaction of any business shall consist of seven (7) Tournament Council Representatives entitled to vote at such meeting, including at least one (1) Tournament Council Representative representing each Tier level and one (1) Tournament Council Representative representing each Geographic Region.  When a quorum is present to organize a meeting, it is not broken by the subsequent withdrawal of any Representative.  The Tournament Council Representatives present and entitled to vote may, by a majority of the votes cast, adjourn the meeting despite the absence of a quorum.

(viii)  <u>Voting</u>.   At all meetings of the Tournament Council, each Tournament Council Representative shall have one (1) vote.  All matters properly brought before a duly constituted meeting of the Tournament Council shall be decided by the vote of a majority of those Tournament Council Representatives present and voting thereon.

(ix)  <u>Organization</u>.  The Tournament Council shall elect a Chairperson and a Secretary from among its voting Representatives.   The Chairperson shall serve as the chairperson of the meeting and shall have such other responsibilities, with respect to the administration of the Tournament Council, as the Tournament Council Representatives may determine, subject to applicable law, the Certificate of Incorporation and these By-Laws.

(x)  <u>Expenses and Compensation</u>.  The Board of Directors of the Tour may approve the payment of reasonable travel, lodging, meal and other expenses of the Tournament Council Representatives incident to their attendance at meetings of the Tournament Council.   The Board of Directors of the Tour may also approve an operating budget for the Tournament Council and may fix the compensation of the Tournament Council Representatives for services in any capacity.   No Tournament Council Representatives may be present at or otherwise participate in any Board deliberation or voting concerning his or her own compensation except if requested to present information or answer questions prior to such deliberation or voting.

(c)  <u>Federation Class Delegates</u>.  In every odd calendar year, the Federation Class shall elect or appoint one (1) Federation Class Delegate and one (1) Federation Class Alternate in accordance with the procedures established from time to time by the ITF Committee of Management.  The Federation Class Delegate and Federation Class Alternate will be elected or appointed to serve for a term of two (2) years and until their successors are elected, qualified and seated.  The terms of the Federation Class Delegate and Federation Class Alternate will commence with the seating of the Delegates at the first annual meeting following their election and qualification.

(d)  <u>Special Class Delegate</u>.   The Special Class member shall not elect a Delegate, but shall be represented by the CEO Delegate.

(e)  <u>CEO Delegate</u>.  The CEO of the Tour shall be <u>ex officio</u> an at-large Delegate without voting rights except as may be provided by law or as explicitly set forth in these By-Laws.

(f)  <u>Affiliations</u>.  Notwithstanding anything to the contrary in these By-Laws, no person shall be eligible to serve or stand for election as a Player Class Delegate or a Tournament Class Delegate if such person has an Affiliation with any Entity with whom any other Delegate (other than any Delegate whose term would expire upon the qualification and seating of such person as a Player Class Delegate or Tournament Class Delegate, as applicable) (a "Seated Delegate") has an Affiliation.  If any such ineligible person (a "Disqualified Person") is elected pursuant to Section 4.1(a) or (b), such Disqualified Person shall not be qualified or seated as a Delegate, and shall not be permitted to appoint himself or herself as a Player Class Director or a Tournament Class Director, respectively, provided that the Seated Delegate's eligibility shall not be affected.  In the event that any person becomes a Disqualified Person at any time after he or she is qualified and seated as a Player Class Delegate or Tournament Class Delegate (i.e., during such person's term, such person becomes Affiliated with an Entity with whom another Seated Delegate

has an Affiliation), such Disqualified Person shall no longer be eligible to serve as a Delegate and shall automatically be deemed to be removed for cause pursuant to Section 4.2 below, provided that the other Seated Delegate's eligibility shall not be affected.  Furthermore, in the event that two or more persons that have an Affiliation with any Entity are elected contemporaneously or within the same election cycle (i.e., such persons would otherwise be seated as Delegates at the same annual meeting of members of the Tour) pursuant to Section 4.1(a) or (b), regardless of whether such persons are elected to serve as Player Class Delegates or Tournament Class Delegates, then neither of such persons shall be qualified or seated as a Player Class Delegate or a Tournament Class Delegate, and neither shall be permitted to appoint himself or herself as a Player Class Director or a Tournament Class Director, unless one (or, if applicable, more than one) of such persons resigns prior to such annual meeting such that not more than one such persons is seated at such annual meeting.

No person shall be eligible to serve or stand for election as a Player Class Alternate or Tournament Class Alternate if such person has an Affiliation with any Entity with whom any Delegate (other than any Delegate whose term would expire upon the qualification and seating of such person as an Alternate) has an Affiliation (a "Disqualified Alternate"); in such event (or in the event any person subsequently elected as a Delegate has an Affiliation with such Entity), such Disqualified Alternate shall not be qualified or seated as an Alternate (or, if such person has previously been qualified or seated, shall resign from his or her position as an Alternate), and shall not be permitted to appoint himself or herself as an Alternate Director.  In the event any Disqualified Alternate fails to resign as required by the foregoing sentence, such Disqualified Alternate may be removed for cause from his or her position as an Alternate by the affirmative vote of a majority of the total number of Delegates elected by the same class that elected such Disqualified Alternate.

      (i)     For purposes of this Section 4.1(f), a person shall be deemed to have an "Affiliation" with, and will be "Affiliated" with, an Entity if such person or any of his or her immediate family members:

      (A)     owns, directly or indirectly, any equity or other ownership interest in such Entity (except for any such interest that represents less than five percent (5%) of any outstanding class of securities that are publicly traded on any generally recognized securities exchange);

      (B)     is an employee, officer, director or manager of (x) such Entity or (y) any other entity that owns, directly or indirectly, more than ten percent (10%) of any class of equity or other ownership interests in such Entity;

      (C)     has received, during the past twelve (12) months, compensation from such Entity in excess of U.S. $120,000, unless such person provides evidence satisfactory to the Tour that such compensation constitutes less than ten percent (10%) of the aggregate income earned by such person during such twelve (12) month period; or

      (D)     has any other material relationship with such Entity (as determined by the affirmative vote of five (5) Directors, including at least one (1) Player Class Director and one (1) Tournament Class Director).

(ii)    The term "Entity" shall mean, collectively, (A) any corporation, partnership, limited liability company or other entity, and (B) any other person or entity that directly or indirectly controls, is controlled by, or is under common control with, such corporation, partnership, limited liability company or other entity; provided that such term shall exclude the Women's Tennis Benefit Association, the Tour, the International Tennis Federation, and any Tour or International Tennis Federation affiliated entity.  For purposes of this definition, a person will be deemed to "control" an entity if such person, together with his or her immediate family members and their respective affiliated entities, owns, directly or indirectly,  more than twenty-five percent (25%) of any class of equity or other ownership interests of such entity or otherwise possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of such entity, whether through ownership of voting securities, by contract or otherwise.

Notwithstanding anything to the contrary in this Section 4.1(f), nothing in this Section 4.1(f) will apply to any Player Class Delegate or Tournament Class Delegate (or any Player Class Director or Tournament Class Director) whose term expires in 2017 until such time as such term expires; provided that if such person is elected to serve an additional term that expires after 2017, this Section 4.1(f) shall apply to such person at all times from and after such election.  Furthermore, nothing in this Section 4.1(f) shall render ineligible a Federation Class Delegate or a Federation Class Alternate.

Section 4.2    Resignation and Removal of Delegates.  Any Delegate may resign on written notice to the Board of Directors.  Any Delegate may be removed for cause at any annual or special meeting of the members or class of members by the affirmative vote of a majority of the total number of Delegates (including the Delegate whose removal is being considered) elected by the same class that elected the Delegate whose removal is being considered; provided, however, that the CEO Delegate may not be removed except concurrently with the removal of the CEO as an officer pursuant to Section 8.9 hereof.  No Delegate may be removed without cause (except the CEO, upon his removal with or without cause pursuant to Section 8.9 hereof).  If a Delegate who is also a Director resigns or is removed in her role as a Director she shall be deemed also to have resigned or been removed as a Delegate without further action.

Section 4.3    Vacancies among Delegates.  In the event of the death, resignation, removal or retirement of a Delegate, or if for any other reason there is a vacancy among Delegates, the vacancy or vacancies so created shall be filled as soon after the occurrence of the vacancy as practicable by vote or action of the class of members entitled to elect or appoint the Delegate whose death, resignation, removal or retirement created the vacancy, such vote or action to be conducted in the same manner as provided in Section 4.1 of these By-Laws for the election or appointment of Delegates, except that in the case of the Tournament Class, only those Tournaments of the same Tournament Level and Tournaments of the same Geographic Region that were represented by the Delegate whose death, resignation, removal or retirement created the vacancy shall be entitled to vote.  Any vacancy as to the CEO Delegate shall be filled automatically upon election of a successor CEO.  In the event of the death, resignation, removal or retirement of an Alternate, or if for any other reason there is a vacancy among Alternates, vacancy or vacancies so created shall be filled as soon after the occurrence of the vacancy as practicable by majority vote or action of the Delegates of the same class of members as the Alternate whose death, resignation, removal or retirement created the vacancy.  Any Delegate or Alternate elected to fill a vacancy shall hold

office for the remaining term of the Delegate or Alternate as to whom the vacancy is being filled, and until the successor has been appointed and qualified.

Section 4.4    Annual and Special Meetings of Members/Delegates; Place of Meetings; Annual Meetings.  The annual meeting of members shall generally be conducted at the conclusion of the Board of Directors meeting held in August or September at such time and place as may be designated in the notice of meeting.  Each class of members shall be represented at the annual meeting of members by Delegates duly elected or appointed pursuant to the provisions of Sections 4.1 and 4.3 of these By-Laws.  The purpose of the annual meeting of members shall be to seat newly elected or appointed Delegates, to appoint Directors pursuant to Section 5.3 of these By-Laws and to transact any other business that properly may be before the members.  The annual meeting of members may be held by contemporaneous meetings of each class of members of the Tour held at the time and place designated for the annual meeting of members.

(a)    Special Meetings.  Whenever, under the provisions of these By-Laws or under applicable law, the members are required or permitted to take action at a meeting other than at an annual meeting, a special meeting of the members may be called by the CEO or the Board of Directors, and shall be called by the CEO or Board of Directors at the request in writing of at least one (l) voting Delegate of each class of members.  The notice for such meeting shall comply with Section 4.5 of this Article IV.

(b)    Place of Meetings.  Meetings of members may be held at such locations within or without the State of New York and within or without the United States as may be determined by the Board of Directors.

(c)    Attendance by Communications Equipment.  Any one (1) or more Delegates or members may participate in a meeting of the members by means of a conference telephone, videoconference or similar communications equipment allowing all persons participating in the meeting to hear each other at the same time, and participation by such means shall constitute presence in person at such meeting.

Section 4.5    Notice of Meetings and Waiver of Notice.

(a)    Whenever members are required or permitted to take any action at a meeting, written notice shall state the place, date and hour of the meeting and, unless it is an annual meeting, indicate that it is being issued by or at the direction of the person or persons calling the meeting.  Notice of a special meeting shall also state the purpose or purposes for which the meeting is called.

(b)    A copy of the notice of any meeting shall be given, personally, by facsimile transmission, by electronic mail or by first class mail, to each member entitled to vote at such meeting.  If the notice is given personally, by electronic mail, by facsimile or by first class mail, it shall be given not less than ten (10) nor more than fifty (50) days before the date of the meeting. If mailed, such notice is given when deposited in the United States mail, with postage prepaid, directed to the member at the member's address as it appears on the record of members, or, if the member shall have filed with the Secretary of the Tour a written request that notices to such member be mailed to some other address, then directed to such member at such other address.  If

by facsimile transmission or electronic mail, such notice is given when sent to the member's facsimile number or electronic mail address as it appears on the record of members, or, if the member shall have filed with the Secretary of the Tour a written request that electronic notices to such member be sent to some other facsimile number or electronic mail address, then directed to such member at such other facsimile number or electronic mail address.  Notice shall not be deemed to have been given electronically if the Tour is unable to deliver two (2) consecutive notices to the member by facsimile telecommunication or electronic mail, or the Tour otherwise becomes aware that notice cannot be delivered to the member by facsimile or electronic mail.

(c)     An affidavit of the Secretary or other person giving the notice that the notice required by this Section has been given shall, in the absence of fraud, be prima facie evidence of the facts stated in the affidavit.

(d)     If any By-Law regulating the next succeeding election of Delegates or Directors is adopted, amended or repealed by the Board of Directors of the Tour, there shall be set forth in the notice of the next meeting of the members the By-Law so adopted, amended or repealed, together with a concise statement of the changes made.

(e)     Notice of meeting need not be given to any member who submits a waiver of notice, in person or by proxy, whether before or after the meeting.  Waiver of notice may be written or electronic.  If written, the waiver must be signed (facsimile signature is sufficient).  If electronic, the waiver must be sent by electronic mail from which authorization can be determined.  The attendance of any member at a meeting, in person or by proxy, without protesting prior to the commencement of the meeting the lack of notice of such meeting, shall constitute a waiver or notice by such member.

(f)     Notice of adjournment shall be required only to the extent provided in Section 4.9 of this Article IV.

Section 4.6     Quorum.  At any meeting of the members of the Tour, a quorum for the transaction of any business shall consist of five (5) Delegates, including at least one (1) Player Class Delegate and one (1) Tournament Class Delegate, or if a meeting of the members of a class is held for the seating or removal of one (1) or more Delegates or the Alternate elected by that class of members or for any other proper purpose, a quorum shall consist of a majority of the Delegates of such class of members.  When a quorum is present to organize a meeting, it is not broken by the subsequent withdrawal of any Delegate.  The Delegates present and entitled to vote may, by a majority of the votes cast, adjourn the meeting despite the absence of a quorum.  If a special meeting of members (not Delegates) is held for any reason required or permitted by law, a quorum shall consist of a majority of each class of members (not Delegates).

Section 4.7     Voting.

(a)     Except as required by applicable law and except for (i) the election of Delegates and Alternates pursuant to Sections 4.1 and 4.3 of these By-Laws and (ii) the exercise of the powers of the Special Class member in accordance with Section 5.13(c) of these By-Laws, members' voting rights may be exercised only by their Delegates.  Each Delegate shall have one (1) vote.

19

(b)    Except as otherwise provided by applicable law, the Certificate of Incorporation or these By-Laws, a vote of a majority of the Delegates present at a meeting shall constitute the act of the Delegates.  However, the approval of any of the Supermajority Matters (as defined below) shall require the affirmative vote of five (5) of the Delegates present at a meeting, including one (1) Player Class Delegate and one (1) Tournament Class Delegate. If the Federation Class Delegate does not vote in favor of a particular Supermajority Matter, then the vote with respect to such Supermajority Matter shall be deferred to a subsequent meeting of Delegates (including any adjournment of the then-current meeting), which subsequent meeting shall not be held earlier than ten (10) days thereafter.  At such subsequent meeting, the approval of the relevant Supermajority Matter shall require the affirmative vote of five (5) of the Delegates, including at least one (1) Player Class Delegate and one (1) Tournament Class Delegate, regardless of whether the Federation Class Delegate votes in favor of such Supermajority Matter.  The following constitute "Supermajority Matters":

(i)    Any amendment or repeal of the following Sections of these By-Laws:  Sections 2.1, 2.3, 2.4, 3.1, 4.1 (insofar as it sets forth the number of Delegates to be elected or appointed by each class of members and/or by the members at-large), 4.7, 5.2, 5.13, 8.2, 10.10 and Schedule 1 - Section 3; and

(ii)    Any amendment to Tour membership, including any associated amendment or repeal of Article II.

(c)    Notwithstanding the foregoing, no amendment to these By-laws which restricts the right of the Federation Class Delegate to elect a voting Director shall be adopted without the affirmative vote of five (5) Delegates, including the Federation Class Delegate.

(d)    If a meeting of the members of a class is held for the seating or removal of one (1) or more Delegates or the Alternate elected by that class of members or for any other proper purpose, any action taken by the members of such class shall require the affirmative vote of a majority of the Delegates of such class entitled to vote.  If a special meeting of members (not Delegates) is held for any reason required or permitted by law, except as otherwise provided by applicable law, by the Certificate of Incorporation or by these By-Laws, any action required or permitted to be taken by the members (not Delegates) shall require the affirmative vote of a majority of the members of each class present and entitled to vote on the matter before them.

(e)    A member or Delegate shall not sell his or her vote or issue a proxy to vote to any person for any sum of money or anything of value.

Section 4.8    Action without a Meeting.  Whenever Delegates or members are required or permitted to take any action by vote, such action may be taken without a meeting if all the Delegates or members entitled to vote on the matter consent to the adoption of a resolution authorizing the action.  Such consent may be written or electronic.  If written, the consent must be signed by the Delegate or member (facsimile signature is sufficient).  If electronic, the consent must be sent by electronic mail and set forth, or be submitted with, information from which authorization can be determined. Written or electronic consent thus given by all of the Delegates or members entitled to vote shall have the same effect as the unanimous vote of members and any certificate with respect to the authorization or taking of any such action which is delivered to the

Department of State shall recite that the authorization was by unanimous written consent. The resolution and the consents of the Delegates or members entitled to vote shall be filed with the minutes of the proceedings of the Board.

      Section 4.9    Adjourned Meetings of Members.  The members present at a meeting may adjourn the meeting despite the absence of a quorum.  When a meeting is adjourned to a new time or place, it shall not be necessary to give any notice of the adjourned meeting if the time and place to which the meeting is adjourned are announced at the meeting at which the adjournment is taken (but if any members who attended such meetings have left such meeting prior to the announcement of the time and place of the adjourned meeting, such members shall be entitled to notice).  At the adjourned meeting any business may be transacted that might have been transacted on the original date of the meeting.  However, if after the adjournment the Board of Directors fixes a new record date for the meeting, a notice of the adjourned meeting shall be given to each member entitled to vote at such meeting.

      Section 4.10    List of Members/Delegates.  A list or record of members and their Delegates entitled to vote, certified by the Secretary, shall be produced at any meeting of members or Delegates upon the request of any member or Delegate who has given written notice to the Tour that such request will be made at least ten (10) days prior to such meeting.  If the right to be present as a Delegate or member at any meeting is challenged, the person presiding at the meeting shall require such list or record of members and their Delegates to be produced as evidence of the right of the persons challenged to vote at such meeting, and all persons who, from such list or record, appear to be members or Delegates entitled to vote may vote at such meeting as provided in these By-Laws.

      Section 4.11    Special Class of Members.  Except with respect to Supermajority Matters, in the event of a tie vote on a particular matter by the Board of Directors, the matter shall be referred to the Special Class member as provided in Section 5.13(c) of these By-Laws.  The Special Class member has the power by written consent to determine the management and direction of the Tour on any matter referred by the Board of Directors in accordance with this Section 4.11.

## ARTICLE V.
## BOARD OF DIRECTORS

      Section 5.1    Power of Board; Qualification of Directors.  Except as otherwise provided in the Certificate of Incorporation and in Sections 4.11 and 5.13(c) of these By-Laws, the business and affairs of the Tour shall be controlled and managed by or under the direction of the Board of Directors.  The Board, or a designated audit committee of the Board, shall oversee the adoption and implementation of, and compliance with, any Conflict of Interest or Whistleblower Policy adopted by the Tour; provided, however, that any Director who is an employee of the Tour shall not participate in any Board or committee deliberations or voting relating to the administration of the Whistleblower Policy.  Each Director shall be at least eighteen (18) years of age.

Notwithstanding anything to the contrary in these By-Laws, no Disqualified Person (as such term is defined in Section 4.1(f)) shall be eligible to serve as a Player Class Director or a Tournament Class Director.  If any person becomes a Disqualified Person during his or her term as a Player

Class Director or a Tournament Class Director, such person shall automatically be deemed to be removed for cause pursuant to Section 5.5 below.

Section 5.2    Number of Directors and Alternates.  The number of voting Directors constituting the entire Board of Directors shall be eight (8):  three (3) appointed by the Player Class, each of whom shall be a Director of the Benefit Association; three (3) appointed by the Tournament Class; one (1) appointed by the Federation Class; and the CEO of the Tour.  In addition, there shall be three (3) Alternate Directors:  one (1) appointed by the Player Class, one (1) appointed by the Tournament Class; and one (1) appointed by the Federation Class.  The CEO of the Tour, if any, shall be a voting Director ex officio of the Tour and shall participate in meetings of the Board of Directors.  No decrease in the number of Directors shall shorten the term of any incumbent Director.

Notwithstanding anything to the contrary in these By-Laws, no Disqualified Alternate (as such term is defined in Section 4.1(f)) shall be eligible to serve as an Alternate Director.  If any person becomes a Disqualified Alternate during his or her term as an Alternate Director, such person shall resign from his or her position as an Alternate Director.  In the event any Disqualified Alternate fails to resign as required by the foregoing sentence, such Disqualified Alternate may be removed for cause from his or her position as an Alternate Director by the affirmative vote of a majority of the total number of Delegates elected by the same class that elected such Disqualified Alternate.

Section 5.3    Appointment of Directors and Alternates; Terms of Office.

(a)    Appointment of Directors and Alternates; Terms.  The Directors (other than the CEO) and Alternates shall be appointed at the annual meetings of members, as follows:

(i)    Directors Appointed by the Players' Class Delegates.  At the annual meeting of members in every calendar year, each newly-elected Player Class Delegate and Alternate shall appoint himself or herself as a Player Class Director or Alternate, respectively, to serve for a term that is equal in length to the term for which such person has been elected as a Delegate or Alternate Delegate, and until their successors are appointed and qualified.

(ii)    Directors Appointed by Tournament Class Delegates.  At the annual meeting of members each newly-elected Tournament Class Delegate or Alternate shall be appointed to be a Tournament Class Director or Alternate, respectively, to serve terms equal in length to the terms for which such persons were elected to serve as Delegates or Alternate Delegates, and until their successors are appointed and qualified.

(iii)    Directors Appointed by Federation Class Delegate.  At the annual meeting of members in every odd calendar year, the Federation Class Delegate shall appoint one (1) Federation Class Delegate and one (1) Alternate as Director and Alternate Director, respectively, to serve for a term of two (2) years, and until their successors are appointed and qualified.

(b)    Chief Executive Officer.  The Chief Executive Officer shall serve, ex officio, as a Director, with full voting rights, for a term that is co-terminus with the term of his or her employment as CEO.

Section 5.4    <u>Newly-Created Directorships</u>.  Newly-created directorships resulting from an increase in the number of Directors shall be filled by vote or action of the class of members entitled to elect or appoint such Director, or as provided in the amendment to these By-Laws creating such directorship.

Section 5.5    <u>Resignation and Removal of Directors</u>.  Any Director may resign at any time upon written notice to the Board of Directors.  Any Director may be removed for cause at any annual or special meeting of the members by the affirmative vote of a majority of the total number of Delegates elected by the same class that appointed the Director whose removal is being considered.  No Director may be removed without cause (except for the CEO, whose term shall terminate automatically upon termination of his or her employment).  If a Director who is also a Delegate resigns or is removed in his or her role as a Delegate, he or she shall be deemed also to have resigned or been removed as a Director without further action.

Section 5.6    <u>Vacancies among Directors</u>.  In the event of the death, resignation, removal or retirement of a Director, or if for any other reason there is a vacancy among Directors, the Board of Directors shall direct that the vacancy so created be filled as soon as practicable after the occurrence of the vacancy, by vote or action of the class of members entitled to elect or appoint such Director.  The person filling such vacancy shall serve only the unexpired term of the person he or she has replaced.

Section 5.7    <u>Alternates.</u>

(a)    In the absence of a regular Director from a meeting of the Board (whether such absence is due to a conflict of interest or otherwise), the Alternate Director of the same class may, upon prior written notice to the Secretary, attend such meeting or execute a written consent and exercise the rights, powers and privileges of the absent Director at such meeting or in such consent. A regular Director who is recused from a vote due to a conflict of interest pursuant to the Conflict of Interest Policy shall be deemed absent for the purposes of this Section 5.7(a) and Section 5.14.

(b)    When exercising the rights, powers and privileges of the absent Director, the Alternate Director shall be subject, in all respects, to the provisions of these By-Laws, the Certificate of Incorporation, the WTA Tour Rules, the Conflicts of Interest Policy and the New York Not-for-Profit Corporation Law.

(c)    In addition to the provisions of Section 5.7(a), the Alternate Director appointed by the Players' Council, the Alternate Director appointed by the Tournament Class Delegates, and the Alternate Director appointed by the Federation Class Delegate shall be entitled to attend all meetings of the Board, but without any rights, powers or privileges of a Director.  The Tour shall pay all reasonable travel, lodging, meal and other expenses of any of such Alternate Directors incident to their attendance at meetings of the Board of Directors.

(d)    Notices of any meeting of the Board shall be sent to the Alternate Directors in the same manner and at the same time as such notices are sent to Directors.

Section 5.8    <u>Observers and Others</u>. The Board of Directors may, in its discretion, invite or permit persons other than Directors to attend the meetings of the Board and may invite or permit

such persons to participate in the discussions.  No such observer or invitee shall have the right to vote on any matter or have any of the other rights, privileges or responsibilities of Directors.

(a)    Grand Slam Events.  The Board of Directors may permit one (1) Observer and one (1) Alternate Observer representing the Grand Slam Events to attend meetings of the Board, with the right to be heard.  The attendance of such Observer and Alternate shall be at their own expense.

(b)    [Intentionally omitted.]

(c)    The Players' Council.  The Board shall permit up to two (2) members of the Players' Council (in addition to those persons in attendance as Directors or Alternates) to attend meetings of the Board, with a right to be heard but not vote.  Such attendees shall be designated by the Players' Council from time to time and at any time as follows:  (i) one (1) attendee shall be designated by the four (4) members of the Players' Council elected by plurality vote of the members of the Players' Council described in Section 2.1(a)(i), and (ii) one (1) attendee shall be designated by majority vote of all of the other voting members of the Players' Council.  The attendance of such members of the Players' Council shall be at the expense of the Benefit Association.  If the identity of any such member is known to the Council, then notices of any meeting of the Board shall be sent to such members of the Players' Council in the same manner and at the same time as such notices are sent to Directors.

(d)    Other.  The Directors may exclude any person permitted to attend the meetings of the Board pursuant to this Section 5.8 from discussions relating to the rights or obligations of the parties under any agreement between the Tour and such person (or the organization which such person represents), including any possible extension of or amendment to any such agreement.

Section 5.9    Meetings of Directors.

(a)    Annual and Regular Meetings.  An annual meeting of the Board of Directors shall be held on the same date and at the same place as, and as soon as practicable after, each annual meeting of members of the Tour.  At least one (1) regular meeting of the Board of Directors (including the annual meeting) shall be held at such times and places within or without the United States as the Board from time to time may determine.

(b)    Special Meetings.  Special meetings of the Board may be held at any time whenever called by the CEO or the Chairman of the Board or upon the written demand of not less than two (2) Directors.

(c)    Place of Meetings.  Meetings of the Board of Directors may be held at such locations within or without the State of New York and within or without the United States as may be determined by the Board.

(d)    Attendance by Communication Equipment.  Any one or more Directors may participate in a meeting of the Board by means of a conference telephone or similar communications equipment or by electronic video screen communication allowing all persons participating in the meeting to hear each other at the same time and each Director  to participate in

all matters before the Board, including, without limitation, the ability to propose, object to and vote upon a specific action to be taken by the Board, and participation by such means shall constitute presence in person at such meeting.

Section 5.10    Chairman of the Board.  The CEO shall be the Chairman of the Board and shall preside at all meetings of the Board and all meetings of the members at which he or she shall be present.  The Chairman of the Board shall have and may exercise such powers as from time to time are assigned to him or her by the Board and as may be provided by law.  If there is no CEO or if the CEO is not present, then at the second and fourth regular meetings of the Board in each year, the Board shall elect from among its members a Director to serve as Chairman of the Board pro tem to preside over any meeting of the Board or meeting of the members after the adjournment of the meeting at which the Chairman pro tem is elected and until the adjournment of the meeting at which the next Chairman pro tem is so elected.  The Director serving as Chairman pro tem of a meeting shall remain the Chairman pro tem for any continuation of the meeting and until the adjournment of the meeting.  The Chairman pro tem shall be elected from among the other Directors (other than the CEO, who shall not be eligible to be Chairman pro tem), on a rotating schedule.

Section 5.11    Notice and Waiver of Notice.  (a)  No notice need be given of annual or regular meetings of the Board, the time and place of which are fixed by the Board.  Notice of each special meeting shall be given to each Director (and to each other person entitled to notice pursuant to Sections 5.7 or 5.8 of these By-Laws) personally, by first class mail, by electronic mail or by facsimile transmission.  If the notice is given personally, by facsimile, by electronic mail or first class mail, it shall be given not less than seven (7) nor more than fifty (50) days before the date of the meeting.  If notice is given by mail, it is given when deposited in the United States mail, if by facsimile transmission or electronic mail, at the time of sending provided that notice shall not be deemed to have been given electronically if the Tour is unable to deliver two (2) consecutive notices to the Director by facsimile transmission or electronic mail, or the Tour otherwise becomes aware that notice cannot be delivered to the Director by facsimile transmission or electronic mail.  Notices by mail, electronic mail, facsimile transmission or messenger shall be sent to each Director (and to each other person entitled to notice pursuant to Sections 5.7 or 5.8 of these By-Laws) at the address, facsimile number or electronic mail address designated by her or him for that purpose, or, if none has been so designated, at her or his last known residence or business address, facsimile number or electronic mail address.

(b)    Notice of a meeting of the Board of Directors need not be given to any Alternate Director, nor to any Director (or to any other person entitled to notice pursuant to Sections 5.7 or 5.8 of these By-Laws) who submits a waiver of notice whether before or after the meeting, or who attends the meeting without protesting, prior to or at the beginning of the meeting, the lack of notice to her or him.  Waiver of notice may be written or electronic.  If written, the waiver must be signed by the Director (facsimile signature is sufficient).  If electronic, the waiver must be sent by electronic mail and set forth, or be submitted with, information from which authorization can be determined.  Notice of the continuation of a meeting at another time and place need not be given to any Director (or to any other person entitled to notice pursuant to Sections 5.7 or 5.8 of these By-Laws) if such time and place are announced at the meeting being continued.

(c)     A notice or waiver of notice need not specify the purpose of any meeting of the Board of Directors.

(d)     A majority of the Directors present, whether or not a quorum is present, may adjourn any meeting to another time and place.  Notice of any adjournment of a meeting to another time or place shall be given in the manner described above to the Directors (and other persons entitled to notice pursuant to Sections 5.7 or 5.8 of these By-Laws) who were not present at the time of the adjournment and, unless such time and place are announced at the meeting, to the other Directors (and other persons entitled to notice pursuant to Sections 5.7 or 5.8 of these By-Laws).

(e)     Failure to provide notice of a meeting to observers or alternates as required by Sections 5.7 or 5.8 shall not invalidate any action taken at such meeting of the Board, if proper notice shall have been given to the Directors or if the Directors shall have waived notice.

Section 5.12   Quorum of Directors.  At any meeting of the Board of Directors, a quorum for the transaction of any business shall consist of five (5) Directors entitled to vote at such meeting, including at least one (1) Director from the Player Class and one (1) Director from the Tournament Class.  When a quorum is present to organize a meeting, it is not broken by the subsequent withdrawal of any Director.  The Directors present and entitled to vote may, by a majority of the votes cast, adjourn the meeting despite the absence of a quorum.

Section 5.13   Voting; Action by the Board.

(a)     Except as otherwise provided by applicable law, by the Certificate of Incorporation or by these By-Laws, the affirmative vote of a majority of the Directors present at a meeting shall constitute the act of the Board.

(b)     The approval of any Supermajority Matters shall require the affirmative vote of five (5) of the Directors present at a meeting, including one (1) Director from the Player Class and one (1) Director from the Tournament Class.  If the Federation Class Director does not vote in favor of a particular Supermajority Matter, then the vote with respect to such Supermajority Matter shall be deferred to a subsequent meeting of Directors (including any adjournment of the then-current meeting), which subsequent meeting shall not be held earlier than ten (10) days thereafter.  At such subsequent meeting, the approval of the relevant Supermajority Matter shall require the affirmative vote of five (5) of the Directors, including at least one (1) Director from the Player Class and one (1) Director from the Tournament Class, regardless of whether the Federation Class Director votes in favor of such Supermajority Matter.

(c)     Subject to the Certificate of Incorporation and Section 701 of the New York Not-for-Profit Corporation Law, for all matters before the Board of Directors other than Supermajority Matters, in the event of a tie vote (which shall count for this purpose all of the votes of the Directors present and eligible to vote, including the vote of the CEO then serving as a Director) the Board shall refer such matter to the Special Class member.  Such referral to the Special Class member shall be set forth in writing, and a record thereof shall be kept in the minutes of the Board.

(d)     Any amendment to these By-Laws which restricts the right of the Federation Class Delegate to elect a voting Director shall be subject to Section 4.7(c) hereof.

Section 5.14   Action by Directors without a Meeting.   Whenever the Board or any committee is required or permitted to take any action by vote, such action may be taken without a meeting if all the members of the Board or the committee entitled to vote on the matter consent to the adoption of a resolution authorizing the action.  Such consent may be written or electronic.  If written, the consent must be signed by the Director or Alternate Director if voting in the absence of a regular Director (facsimile signature is acceptable).  If electronic, the consent must be sent by electronic mail and set forth, or be submitted with, information from which authorization can be determined.  In the case of action by the Directors, the Directors not entitled to vote on the matter shall be notified of the proposed resolution at the same time and in the same manner as the Directors who are entitled to vote are notified.  In the case of action by a committee entitled to vote on a matter, the committee members not entitled to vote on the matter shall be notified of the proposed resolution at the same time and in the same manner as the committee members who are entitled to vote are notified.  The resolution and the written consents of the Directors or committee members shall be filed with the minutes of the proceedings of the Board.  The written consents may be in counterparts and may be facsimiles of the original written consents.

Section 5.15   Compensation of Directors.  The Board of Directors shall have authority to pay all reasonable travel, lodging, meal and other expenses of the Directors incident to their attendance at meetings of the Board of Directors and to fix the compensation of Directors for services in any capacity.   No Director may be present at or otherwise participate in any Board of Directors deliberation or voting concerning his or her own compensation except if requested to present information or answer questions prior to such deliberation or voting.

## ARTICLE VI.
## EXECUTIVE COMMITTEE AND OTHER COMMITTEES

Section 6.1   Executive and Other Committees.

(a)      Provided as set forth in Section 8.9, the Board of Directors may designate from among its members an executive committee and other committees, each consisting of three (3) or more Directors, and each committee so formed, to the extent provided in the resolution, shall have all the authority of the Board, except that no such committee shall have authority as to the following matters:  (i) the submission to members of any action that needs member approval; (ii) the filling of vacancies in the Board or in any committee thereof; (iii) the fixing of compensation of the directors for serving on the Board or on any committee thereof; (iv) the amendment or repeal of the By-Laws, or the adoption of new By-Laws; (v) the amendment or repeal of any resolution of the Board unless the resolution expressly provides that it may be amended or repealed by the committee; (vi) the removal or indemnification of directors.

(b)      Committees, other than committees of the Board created pursuant to sub-Section (a) above, whether created by the Board or the members shall be committees of the Tour and may be elected or appointed in the same manner as officers.  No such committee shall have the authority to bind the Board and any determinations of such committee shall be treated as

recommendations of such committee, to be acted upon by the Board or by the executive committee in due course.

(c)     The CEO shall be a member ex officio of all committees other than an executive committee established pursuant to Section 8.9 with such voting rights, if any, as may be provided in the resolutions establishing the committees.

(d)     The Board of Directors may designate one or more Directors or, in the case of any Tour committee, other individuals as alternate members of any such committee, who may replace any absent member or members at any meeting of such committee.

(e)     Unless the Board of Directors otherwise provides or as set forth in Section 8.9, each committee may adopt, amend and repeal rules for the conduct of such committee's business.  In the absence of a provision by the Board of Directors, these By-Laws or a provision in the rules of such committee to the contrary, the following rules shall govern:

(i)     A majority of the entire authorized number of members of such committee shall constitute a quorum for the transaction of business;

(ii)     The vote of a majority of the members of the entire authorized number of members of such committee if a quorum is then present or the unanimous written consent of all members thereof shall be the act of such committee;

(iii)     Any one or more members of such committee may participate in a meeting of such committee by means of a conference telephone or similar communications equipment or by electronic video screen communication allowing all persons participating in the meeting to hear each other at the same time and participation by such means shall constitute presence in person at such meeting; and

(iv)     In other respects each committee shall conduct its business in the same manner as the Board of Directors conducts its business pursuant to Article V of these By-Laws.

(f)     Each such committee shall serve at the pleasure of the Board of Directors.

(g)     Any purchase of real property that would not, upon purchase thereof, constitute all, or substantially all, of the assets of the Tour, may be approved by a majority of the members of a committee authorized by the Board.  Any sale, mortgage, lease, exchange or other disposition of the Tour's real property that does not constitute all, or substantially all, of the assets of the Tour, may be approved by a majority of the members of a committee authorized by the Board.  Such actions by a committee shall be promptly reported to the Board no later than the next regular meeting of the Board.

## ARTICLE VII.
## CODE OF CONDUCT AND STANDARDS OF PERFORMANCE

Section 7.1     Code of Conduct and Standards of Performance.     The Board shall promulgate, adopt, administer and enforce (i) a code of conduct (the "Code of Conduct") to govern

the conduct of tournament support personnel, the players and those associated with them (e.g., coaches, representatives and relatives) and to promote adherence to the highest professional standards by tournament support personnel, the players and those associated with them in their capacity as tennis personnel and professionals; and (ii) Tournament standards of performance (the "Standards of Performance") to set the standards by which all Tour Tournaments must abide and conform in staging a high level, professional tennis tournament on the Tour.

Section 7.2    Code of Conduct and Standards of Performance Committee.

(a)    There shall be a Code of Conduct and Standards of Performance Committee which shall be authorized to consider modifications to the Code of Conduct and Standards of Performance and to hear and decide all appeals from penalties levied under the WTA TOUR Rules for violations under the Code of Conduct and Standards of Performance in accordance with the provisions of this Article VII.

(b)    The Committee shall be comprised of five (5) regular voting members, two (2) to four (4) alternates, two (2) non-voting, advisory members, one (1) non-voting chairman of the Committee and the CEO, who shall be a member ex officio and who shall be non-voting.  The Committee members shall be appointed annually as follows:

(i)    The CEO shall appoint two (2) non-voting, advisory WTA TOUR staff members;

(ii)    The Player Class Directors shall appoint two (2) voting members and up to two (2) alternate members;

(iii)    The Tournament Class Directors shall appoint two (2) voting members and up to two (2) alternate members;

(iv)    The Federation Class Director shall appoint one (1) voting member; and

(v)    The CEO shall appoint a non-voting member to serve as Chairperson.

(c)    Each voting Committee member shall have one (1) vote.

(d)    Proposed modifications to the Code of Conduct or Standards of Performance may be considered at meetings of the full Committee.  The Committee may make recommendations to the Board of Directors of modifications to the Code of Conduct and Standards of Performance.

(e)    Appeals from penalties levied under the WTA TOUR Rules for violations of the Code of Conduct or Standards of Performance shall be heard and decided by the Committee, except in the case of appeals involving monetary penalties of $50,000 or more or major offenses, such as offenses punishable by suspension from the WTA TOUR or loss of membership, which shall be referred directly to the Board of Directors for decision.  The decisions of the Committee and the Board of Directors shall be final.

(f)     The Committee may adopt, amend and repeal rules for the conduct of its business.  In the absence of a provision by the Board of Directors or a provision in the rules of the Committee to the contrary, the following rules shall govern:

(i)     A majority of the voting members of the Committee, shall constitute a quorum for the transaction of business;

(ii)     The vote of a majority of the voting members of the Committee, shall be the act of such committee;

(iii)     In the event of a tied vote, the appeal shall be referred to the Board of Directors for decision, which decision shall be issued within thirty (30) days of the tied vote and shall be final; and

(iv)     Any one or more members of the Committee may participate in a meeting of the Committee by means of a conference telephone or similar communications equipment or by electronic video screen communication allowing all persons participating in the meeting to hear each other at the same time, and participation by such means shall constitute presence in person at such meeting.

## ARTICLE VIII.
## OFFICERS

Section 8.1     <u>Officers</u>.  The Board of Directors may elect or appoint a CEO, a Secretary, a Treasurer and such other officers as the Board of Directors may determine.  Any two or more offices may be held by the same individual, except the offices of CEO and Secretary.

Section 8.2     <u>Election of Officers.</u>

(a)     The election or appointment of the CEO shall require the affirmative vote of five (5) Directors, including at least one (1) Director elected by the Tournament Class and one (1) Director elected by the Player Class.  The then-incumbent CEO shall have no right to vote upon the election or appointment of a successor or his or her re-election.  Notwithstanding the foregoing, if the Director elected by the Federation Class Delegate does not vote in favor of the CEO nominee, the election of a CEO shall be postponed until a subsequent meeting of the Board (including any adjournment of the then-current meeting) held at least ten (10) days after the date of the then-current meeting.  At such subsequent meeting, any nominee for CEO receiving the affirmative vote of at least five (5) Directors (including at least one (1) Director elected by the Player Class and one (1) Director elected by the Tournament Class) shall be elected as CEO, notwithstanding any vote to the contrary by the Director elected by the Federation Class Delegate.

(b)     The election or appointment of all other officers shall require the affirmative vote of a majority of the Directors.

Section 8.3     <u>Term of Office; Resignation; Removal; Vacancies</u>.  Except as otherwise provided in the resolution of the Board of Directors electing or appointing any officer, all officers shall be elected or appointed to hold office until the meeting of the Board of Directors following the next succeeding annual meeting of members.  Each officer shall hold office for the term for

which he or she is elected or appointed, and until his or her successor has been elected or appointed and qualified.  Any officer may resign at any time by giving written notice to the Board or to the Chairman of the Board, if any, or to the CEO or Secretary of the Tour.  Such resignation shall take effect at the time specified therein, and unless otherwise specified therein no acceptance of such resignation shall be necessary to make it effective.  Such resignation shall not prejudice any rights the Tour may have under any employment contract.  Any officer may be removed by the Board, with or without cause, at any time; provided, however, that the removal of the CEO shall require the affirmative vote of at least five (5) Directors, including at least one (1) Director elected by the Player Class and one (1) Director elected by the Tournament Class.  Removal of an officer without cause shall be without prejudice to his or her contract rights, if any, with the Tour, but the election or appointment of an officer shall not of itself create contract rights.  Any vacancy occurring in any office of the Tour by death, resignation, and removal or otherwise may be filled by the Board for the unexpired portion of the term or for such other period as the Board may determine.

Section 8.4    Compensation.  Salaries and other compensation of officers shall be as fixed from time to time by the Board.    No officer may be present at or otherwise participate in any Board of Directors deliberation or voting concerning his or her own compensation except if requested to present information or answer questions prior to such deliberation or voting.

Section 8.5    Chief Executive Officer.  The CEO shall preside at meetings of the Board and meetings of members at which he or she shall be present; he or she shall have, subject to the advice and consent of the Board, general charge and supervision of the business and affairs of the Tour; and, in general, he or she shall perform all duties incident to the office of president of a corporation, and such other duties as, from time to time, may be assigned to him or her by the Board of Directors or as may be provided by law.

Section 8.6    Secretary.  The Secretary shall record all the proceedings of the meetings of the members, the meetings of the Board and the meetings of the Executive Committee, if any, in a book to be kept for that purpose; he or she shall see that all notices are duly given in accordance with the provisions of these By-Laws or as required by law; he or she shall be custodian of the records of the Tour; he or she may affix the corporate seal to any document the execution of which, on behalf of the Tour, is duly authorized, and when so affixed may attest the same; and, in general, he or she shall perform all duties incident to the office of secretary of a corporation, and such other duties as, from time to time, may be assigned to him or her by the Board or the CEO or as may be provided by law.

Section 8.7    Treasurer.  The Treasurer shall have charge of and be responsible for all funds, securities, receipts and disbursements of the Tour, and shall deposit or cause to be deposited, in the name of the Tour, all monies or other valuable effects in such banks, trust companies or other depositories as, from time to time, shall be selected by or under authority of the Board; if required by the Board, he or she shall give a bond for the faithful discharge of her duties, with such surety or sureties as the Board may determine; he or she shall keep or cause to be kept full and accurate records of all receipts and disbursements in books of the Tour and shall render to the CEO and to the Board, whenever requested, an account of the financial condition of the Tour; and, generally, he or she shall perform all the duties incident to the office of treasurer of a corporation, and such other duties as may be assigned to him or her by the Board or the CEO or as may be provided by law.

Section 8.8    <u>Other Officers</u>.  The other officers of the Tour, if any, shall have such authority and perform such duties in the management of the Tour as may be prescribed by the Board and, to the extent not so prescribed, as generally pertain to their respective offices, subject to the control of the Board.

Section 8.9    <u>Management Succession.</u>

(a)    If the CEO and/or President, if any, is unable to perform for any reason such as death, incapacity (as defined below), incarceration, location in a place for an extended period of time where communication with the Tour is not possible, resignation, termination or retirement before a replacement is elected or appointed, then: (i) if the Company is without a CEO or President, either shall serve in the other's stead until a replacement is elected or appointed or, in the case of temporary incapacity, until the Board determines that the incapacity has ended; and (ii) if the Company is without a CEO and President, an executive committee shall be immediately formed and empowered by emergency authority to serve as the interim CEO and President until replacements are elected and/or appointed or, in the case of temporary incapacity, until either the CEO and/or the President have regained capacity, in the sole discretion of the Board. An incapacity (defined as total or partial incapacity due to mental or physical illness or disability which prevents the officer from performing their duties, either temporarily or permanently) that does not constitute a vacancy of office shall be determined by the Board of Directors. In addition, the CEO or President may declare a condition of incapacity and the duration thereof by written communication to the Secretary.

(b)    In the absence of a provision by the Board of Directors to the contrary, the following rules shall apply to an executive committee vested with the duties of the CEO and President:

(i)    The committee shall be comprised of two (2) voting members and two (2) non-voting member as follows: one (1) Player Class Director who shall be the Chairperson of the Players' Council, one (1) Tournament Class Director who shall be the Chairperson of the Tournament Council and one (1) Federation Class Director, who shall be a non-voting member of the committee. The General Counsel or such other WTA executive as designated by the Board of Directors shall serve as the non-voting member and shall act as the primary liaison between the committee and the WTA Tour staff;

(ii)    Each voting member shall have one (1) vote;

(iii)    The presence of both members entitled to vote shall constitute a quorum for the transaction of business;

(iv)    A unanimous vote or written consent of the voting members shall be the act of such committee; and

(v)    In the event a quorum is not present or there is a tie, the Board of Directors shall decide the matter.

(c)    In the event there is not an individual in the role of President, the Chief Operating Officer shall be substituted for each President reference in this Section 8.9.

## ARTICLE IX.
## INDEMNIFICATION AND INSURANCE

Section 9.1    <u>Indemnification</u>.    If a Director, member, officer, Delegate, Alternate, employee or agent of the Tour is made a party to any civil or criminal action or proceeding in any matter arising from the performance by such Director, member, officer, Delegate, Alternate, employee or agent of her duties for or on behalf of the Tour, then, to the full extent permitted by law, the Tour, upon affirmative vote of the Board of Directors, a quorum of Directors being present at the time of the vote who are not parties to the action or proceeding, shall:

(a)    Advance to such person all sums found by the Board, so voting, to be necessary and appropriate to enable the person to conduct her defense, or appeal, in the action or proceeding; and

(b)    Indemnify such person for all sums paid by her in the way of judgments, fines, amounts paid in settlement, and reasonable expenses, including attorneys' fees actually and necessarily incurred, in connection with the action or proceeding or appeal therein, subject to the proper application of credit for any sums advanced to the person pursuant to clause (a) of this paragraph.

Section 9.2    <u>Insurance</u>.  The Tour may maintain insurance, at its expense, to protect itself and any Director, officer, member, Delegate, Alternate, employee or agent of the Tour or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Tour would have the power to indemnify such person against such expense, liability or loss under the New York law.

## ARTICLE X.
## OTHER MATTERS

Section 10.1    <u>Fiscal Year</u>.  The fiscal year of the Tour shall begin on the first day of January and terminate on the last day of December in each calendar year.

Section 10.2    <u>Official Language</u>.  The official language of the Tour shall be English.

Section 10.3    <u>Corporate Seal</u>.  The corporate seal of the Tour shall be in the form of a circle, which seal shall have inscribed thereon the words "WTA TOUR, INC." and the jurisdiction and year of incorporation of the Tour.

Section 10.4    <u>Checks, Drafts, Notes and other Obligations</u>.  All checks, drafts, notes or other obligations of the Tour shall be signed by the CEO, the Treasurer and such other officer of the Tour as may be authorized by the Board or the finance committee, if any.

Section 10.5    <u>Deposits of Corporate Funds</u>.  All funds of the Tour shall be deposited from time to time to the credit of the Tour in such banks, trust companies, or other depositories as the Board or authorized committee may select.

Section 10.6    <u>Annual Statement</u>.  The Board shall submit to the Delegates at least thirty (30) days before the annual meeting of the members, a statement of the financial condition of the

Tour, including a balance sheet showing the assets and liabilities of the Tour and a profit and loss statement covering the preceding fiscal year, and certified by independent public accountants, and accompanied by the latest available unaudited financial statements.

Section 10.7  <u>Books and Records to be Kept</u>.  The Tour shall keep at its principal office in the State of New York or at such other office as permitted by the Certificate of Incorporation (i) correct and complete books and records of account, (ii) minutes of the proceedings of the members, Board of Directors and any committee, and (iii) a current list or record of the members, Delegates, Directors and officers of the Tour and their respective addresses.  Any of the foregoing books, minutes or records may be in written form or in any other form capable of being converted into written form within a reasonable time.  The Board may determine whether and to what extent and at what times and places and under what conditions and regulations any accounts, books, records or other documents of the Tour shall be open to inspection, and no creditor, security holder or other person shall have any right to inspect any accounts, books, records or other documents of the Tour except as conferred by law or as so authorized by the Board.

Section 10.8  <u>Related Party Transactions</u>.

(a)  The Tour and its affiliates shall not enter into any transaction, agreement, or any other arrangement in which any of the following related parties has a financial interest: (i) any Director, officer or key employee of the Tour or any of its affiliates, or any of their respective relatives, or (ii) any other corporation, firm, association or other entity in which any of the foregoing individuals has a 35% or greater ownership or beneficial interest, or, in the case of a partnership or professional corporation, a direct or indirect ownership interest in excess of 5% unless the Board, or an authorized committee thereof, determines the transaction to be fair, reasonable and in the best interest of the Tour at the time of such determination.

(b)  Any Director, officer or key employee of the Tour who has an interest in a related party transaction shall disclose in good faith to the Board, or an authorized committee thereof, the material facts concerning such interest.

(c)  No related party may participate in the deliberations or voting relating to the matters set forth in this Section; provided that the Board, or authorized committee thereof, may request that a related party present information concerning the transaction at the meeting prior to the commencement of deliberations or voting relating thereto.

Section 10.9  <u>Professional Advisers</u>.  The Board may select an accounting firm or accountant to serve as independent outside accountants for the Tour and a law firm or attorney to serve as outside general counsel for the Tour.  From time to time the Board or the CEO may appoint such other professional individuals or organizations to serve as professional advisers to the Tour as the Board, in its sole discretion, may deem necessary and appropriate for the purposes of the Tour.  Such accountants, legal counsel and other professional advisers shall serve at the pleasure of the Board and shall report to the Board and to such other officers of the Tour as the Board may from time to time direct.

Section 10.10  <u>Amendment of the By-Laws.</u>

(a)    These By-Laws may be adopted, amended or repealed by the members at the time entitled to vote in the election of directors and, unless otherwise provided in the Certificate of Incorporation, by a majority of the entire Board.  Any By-Law adopted by the Board may be amended or repealed by the members and, unless otherwise provided in the Certificate of Incorporation or by the By-Laws adopted by the members, any By-Law adopted by the members may be amended or repealed by the Board.  If any By-Law regulating an impending election of Directors is adopted, amended or repealed by the Board, there shall be set forth in the notice of the next meeting of the members for the election of Directors the By-Law so adopted, amended or repealed, together with a concise statement of the changes made.

(b)    Notwithstanding the foregoing, any amendment or repeal of the following Sections shall constitute a "Supermajority Matter" subject to the voting provisions of Sections 4.7(b) or 5.13(b), as applicable:  Section 2.1, 2.3, 2.4, 3.1, 4.1 (insofar as it sets forth the number of Delegates to be elected or appointed by each class of members), 4.7, 5.2, 5.13, 8.2 this 10.10 and Schedule 1- Section 3.  Furthermore, any amendment to these By-Laws which restricts the right of the Federation Class Delegate to elect a voting Director shall be adopted pursuant to Section 4.7(c) hereof.

Section 10.11  <u>Use of Gender Pronouns</u>.  Whenever either the pronoun "he" or "she" is used, it is not intended to be restrictive and shall be construed to mean "he or she."

Section 10.12  <u>Jurisdiction and Venue.</u>

(a)    Each Member on behalf of itself and its owners, affiliates and representatives, and each Director, officer, key employee and agent of the Tour (i) submits to the jurisdiction of the New York state courts located in New York County, New York and the United States District Court for the Southern District of New York and all related appellate courts (collectively, the "New York Courts"), (ii) consents to service of process by express delivery, any process which provides a confirmation of delivery or any other manner permitted by the rules and procedures established by the applicable New York Courts or any applicable law, and (iii) irrevocably agrees to be bound by any final judgment of any New York Courts.  The foregoing submission to personal jurisdiction is self-operative and no further instrument or action, other than service of process in the manner permitted herein or by the rules and procedures established by the applicable New York Courts or any applicable law, shall be necessary in order to confer such personal jurisdiction over any Member or any of its owners, affiliates or representatives, or any Director, officer, key employee or agent of the Tour.

(b)    No current or prior Member or anyone on their behalf (each a "Claiming Party"), may commence, assert or cause any claim or counterclaim (each a "Claim") against (i) the Tour, (ii) any affiliated Tour entity, (iii) any officer, Director, employee or representative of the Tour or any affiliated Tour entity, including, without limitation, any Tour Board Representative, Player Council Delegate or Tournament Council Delegate, or (iv) any other Member, (collectively, "Tour Parties"), without first exhausting (x) any and all available appeals and other remedies internal to the Tour (including, without limitation, any appeal to the Tour Board, the President, any other officer of the Tour or any internal committee or review board) provided for under the

Certificate of Incorporation, these By-Laws, the WTA Tour Rules or any applicable agreement, and (xi) any and all available appeals expressly provided for in the WTA Tour Rules (collectively, "Internal Dispute Resolution Procedures").

(c)    Following exhaustion of any and all available appeals and remedies under Internal Dispute Resolution Procedures, the New York Courts shall have exclusive jurisdiction over any dispute or controversy between any Claiming Party and the Tour or any Member; provided, however, that (i) the foregoing shall not limit or affect in any way the applicability or enforceability of any Internal Dispute Resolution Procedures (including, without limitation, any right or obligation that any person or entity may have under the WTA Tour Rules to appeal), (ii) in the event of any conflict or inconsistency between this Section 10.12(c) and any other agreement between any Claiming Party and the Tour or any Member that, by its express terms, provides for a specific forum that will have exclusive jurisdiction over such dispute or controversy, such other provision shall control, and (iii) in the event any provision of the Certificate of Incorporation, these By-Laws, the WTA Tour Rules or any applicable agreement provides that any decision or determination of the arbitrator, the Tour Board, any officer of the Tour or any other person or persons designated by the Tour Board or any officer of the Tour (including any internal committee or review board) shall be final, binding or otherwise non-appealable, no person or entity may challenge or appeal such decision or determination to any New York Court or any other court, arbitrator or other authority.

Section 10.13  <u>Governing Law</u>.  Any dispute or controversy between any Claiming Party and any Tour Party (including, but not limited to, matters concerning the arbitrability of disputes) shall be governed by the laws of the State of New York without reference to New York conflict of laws principles; provided, that any dispute or controversy arising from any separate agreement between any Tour Party and any Claiming Party that provides for a specific governing law shall be governed by such law.

Section 10.14  <u>Litigation Costs.</u>

(a)    In the event that (i) any Claiming Party initiates or asserts any Claim or joins, offers substantial assistance to or has a direct financial interest in any Claim against the Tour or any Member (including any Claim purportedly filed on behalf of the Tour or any Member), and (ii) the Claiming Party (or the third party that received substantial assistance from the Claiming Party or in whose Claim the Claiming Party had a direct financial interest) does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought, then each Claiming Party shall be obligated jointly and severally to reimburse the Tour and any such Member for all fees, costs and expenses of every kind and description (including, but not limited to, all reasonable attorneys' fees and other litigation expenses) (collectively, "Litigation Costs") that the parties may incur in connection with such Claim.

(b)    In the event that (i) the Tour initiates, asserts any Claim or joins, offers substantial assistance to or has a direct financial interest in any Claim against any Claiming Party, other than a Claim for declaratory relief, and (ii) the Tour (or the third party that received substantial assistance from the Tour or in whose Claim the Tour had a direct financial interest) does not obtain a judgment on the merits that substantially achieves, in substance and amount, the

full remedy sought, then the Tour shall be obligated to reimburse such Claiming Party for all Litigation Costs that such Claiming Party may incur in connection with such Claim.

**SCHEDULE I**

**TOURNAMENT OWNERSHIP RIGHTS**

1. The right to a date on the calendar; it being understood that WTA Tour, Inc. (the "WTA Tour") establishes each Tournament's date subject to consideration of the Tournament's longevity on the Tour, longevity in the same city, Tier level, traditional calendar date(s), venue (indoors and outdoors), court surface, geographical location and the orderly flow of tournaments.

2. Notwithstanding the foregoing, absent approval from the Tournament, each Tournament shall have the following calendar protections:

   a. Tier I – Mandatory:  Cannot be moved more than two (2) weeks before or after the current week.

   b. Tier I – non-Mandatory and Tier II – not in the week before a Grand Slam:  Cannot be moved more than three (3) weeks before or after the current week.

   c. Tier II – Week before a Grand Slam:  Right to be placed in the week prior to the respective Grand Slam.

   d. Tier III – Right to be placed in the season/swing which is appropriate for the Tournament region and surface, subject to sufficient number of Tournaments to create a season/swing.

3. The right to a level of player participation as follows:

   a. Tier I – Mandatory:  Mandatory player participation for all players who qualify by ranking.

   b. Tier I – non-Mandatory:  Right to the top level of player participation for a single week event as determined by the WTA.

   c. Tier II – not in the week before a Grand Slam:  Right to a level of player participation as determined by the WTA.

4. There shall be no downgrade of a Tournament's Tier status without a mutually agreed upon compensation plan (financial or otherwise) between the Tournament owner and the WTA Tour. If such agreement does not emerge through mutual discussions, the parties shall submit the issue of adequate compensation to binding arbitration by a single arbitrator subject to the Commercial Arbitration Rules of the American Arbitration Association or other rules as may be agreed.

5. The following  limitations on the number of tournaments by Tier Level shall apply:

   a. There shall be no more than five (5) Tier I – Mandatory Tournaments on the WTA Tour without the approval of 75% of the existing Tier I – Mandatory Tournaments.

   b. Excluding any Tier I – Mandatory Tournaments that elect to become Tier I – non-Mandatory Tournaments pursuant to a contractual right existing as of July 6, 2017, there

shall be no more than five (5) Tier I – non-Mandatory Tournaments on the WTA Tour without the approval of 75% of the existing Tier I – non-Mandatory Tournaments.

c.  There shall be no more than nine (9) total Tier I Tournaments on the WTA Tour without the approval of 75% of the existing Tier I Tournaments.

d.  Excluding the Tier II Tournaments scheduled in the weeks before the Grand Slams, there shall be no more than eight (8) additional Tier II Tournaments without the approval of 75% of the existing additional Tier II Tournaments.

6.  There shall only be one Tier II Tournament in the week immediately preceding each Grand Slam.

7.  The Tour must approve all proposed transfers of Tournament ownership and location and all proposed new Tournaments. No such transfers will be approved to, and no new Tournaments will be established in, locations within 125 miles of existing Tournaments unless the WTA Board of Directors determines that factors such as the size and separation of the marketplace, area population, location on the calendar, and the quality of facilities can support an additional Tournament within such 125-mile area. The foregoing protection shall not prevent the placement of WTA year-end championship events in any location. Notwithstanding Section 5.13 of these By-Laws, the decision to purchase a membership in connection with a request for a transfer of Tournament location shall require the affirmative vote of five (5) Directors present at a meeting, including one (1) Director from the Player Class and one (1) Director from the Tournament Class.

8.  The exclusive right to organize, promote and exploit the Tournament and to retain any and all proceeds derived therefrom, subject to the Tournament's obligations to make such payments (e.g. prize money and fees) as may be provided in the Tour Rules, the governing agreements among the Tour's constituents and resolutions of the Board of Directors. This grant of rights shall include but not be limited to revenue derived from tickets, sponsorships, television (international and domestic, subject to paragraph 9 below), radio, licensing, merchandising, film, video, publications, or any other form(s) of media hereafter discovered.

9.  Any Tournament requested by the Tour to participate in the official WTA Tour International Media Rights Pool ("Media Pool") must participate consistent with the rights and obligations established by the Board of Directors. In the event of the dissolution of the WTA Tour or the Media Pool, all media rights granted to the WTA Tour for the Media Pool shall revert back to the member; however, such dissolution and reversion shall not affect any existing third party licenses or existing uses by the WTA Tour.

10. It shall be understood that the Tour sponsor(s) shall be entitled to a negotiated benefits package, which may preclude Title Sponsorship of any Tournament in one product category for the Tour Sponsor. With regard to any exclusive Tour Sponsor product category, it is agreed that conflicting, pre-existing, Title and Presenting Sponsors will be grandfathered. In addition, Tour Sponsorship agreements may not vitiate any Tournament's conflicting, pre-existing sponsorship or exposure agreements, but may preclude the renewal of any such agreements except Title and Presenting Sponsorship agreements.

11. The right to advertise and promote the Tournament's association with the Tour and the right to advertise and promote the participants entered in the event, subject to the Rules.

12. The right to transfer ownership, but subject, in all events, to the approval and repurchase rights of the Tour as set forth in the Rules and all other requirements and conditions set forth therein, including, without limitation, Section VII.I.

13. The above rights shall be subject to the Tournament's satisfactory compliance with the Tour's By-Laws, Articles of Incorporation and Rules, including the Standards of Performance which shall be a part of those Rules. Those Standards shall include, without limitation, the obligation to pay prize money and fees to the Tour; a preclusion of unauthorized use of the names and likenesses of the players; and the obligation to promote the Tour.

**SCHEDULE II**

**PLAYERS' COUNCIL NOMINATION AND ELECTION PROCEDURES**

<u>Nomination Procedures</u>

1.      The Player's Council shall establish a Nomination Period for each Players' Council election and players shall be notified of the Nomination Period via the Player Zone or another official form of Tour communication. Only players who are full Tour and Benefit Association members and ranked in a particular group in the period between the release of the prior year-end rankings and the Monday following Roland Garros in each year, shall be eligible to nominate players within her respective ranking group(s).  A player may not nominate herself for the Players' Council.  Nominations shall close on the final day of Wimbledon.

2.      Only players who are both full Tour and Benefit Association members and ranked in particular groups in the period between the release of the prior year-end rankings and the Monday following Roland Garros in each year, shall be eligible to be nominated and serve in those ranking groups. In addition to the foregoing, (a) players who are full Tour and Benefit Association members and who (i) are former WTA ranked No. 1 singles; or (ii) have qualified to compete in the singles competition in the WTA Finals at least two (2) times shall be eligible to be nominated and serve in the Top 20 Group, and (b) players who are full Tour and Benefit Association members and previously served as a Players' Council member shall be eligible to be nominated and serve for the ranking group(s) they represented as a Players' Council member; provided that, in each case, any member elected to serve in a Top 20 position must satisfy the country and continent requirements provided in Section 4.1(a)(i)(A) and (B) of these By-Laws.

3.      Notwithstanding the foregoing, in the event that no player (or player(s)) are nominated within a particular ranking group by the expiration of the Nomination Period, the nomination pool for such group shall be expanded to include any players who are full Tour and WTBA members who previously were members of such particular ranking group and the Nomination Period for such particular ranking group shall be extended until the later of (x) an additional 21-day period and (y) an eligible nomination is received. Players shall be notified of such extension of the Nomination Period and the close of such extension via the Player Zone.

<u>Election Procedures</u>

1.      Voting will be conducted during the last full week in August.

2.      No proxies shall be allowed.

3.      Ballots shall be submitted to the Tour in accordance with the applicable instructions. If submitted electronically, the ballot shall be submitted with information from which authorization can be determined.

4.      Each eligible member shall be allowed to vote in her ranking groups.

5.      The candidate or candidates, depending upon whether multiple vacancies exist within a ranking group, receiving the greatest number of votes shall be deemed the winner or

winners for her particular ranking group.  However, no more than three players from the Top 20 Group who are citizens of countries on the same continent may be elected.  In the event that more than three of the Top 20 Group candidates receiving the greatest number of votes are from the same continent, the candidate(s) with the next highest number of votes shall be deemed the winner(s).

6.    In the event of a tie, there shall be a run-off election from among the players in the ranking group for which a tie occurred.