BUKH LAW PA
Attorneys for Lesia Tsurenko
1123 Ave. Z
Brooklyn, NY 11235
Phone: (718) 376-4766
Fax: (718) 376-3033
Arkady Bukh, Esq.

**UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

- --------------------------------------------------------X

Lesia Tsurenko,                                                  Case No: ———— 24-cv-08518-NRB

                           Plaintiff,

              v. ————————————————————

                                                                 **AMENDED** COMPLAINT

WTA Tour, Incorporated and Steve Simon

                                                                 JURY TRIAL DEMANDED

                           Defendants.

_ --------------------------------------------------------X

        Plaintiff  Lesia Tsurenko ("Plaintiff"), by and through her attorney BUKH LAW PA,
alleges the following in this Amended Complaint against the Defendants in this action:

### INTRODUCTION

        1.      The nature of this action is a breach of contract, negligence, negligent
supervison supervision and retention, and negligent infliction of emotional distress.

### Parties

        2.      Plaintiff  Lesia Tsurenko, is an individual and a citizen of Ukraine. She is
a professional tennis player and a member of Defendant WTA Tour, Incorporated.

3.      Defendant WTA Tour, Incorporated ("WTA") is a New York non-profit membership corporation that organizes a circuit of international women's tennis tournaments. Its members include female tennis players and the companies that own and operate the affiliated tournaments.

4.      Defendant Steve Simon is the CEO of WTA Tour, Incorporated.

**Jurisdiction And Venue**

5.      Plaintiff brings this Complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship, and the amount in controversy exceeds $75,000.

6.      This Court has personal jurisdiction over Defendants as their primary place of business in New York, where Defendant WTA Tour is incorporated.

7.      Venue is proper in this District under 28 U.S.C. § 1391 because (1) one or more of the Defendants resides in this District; (2) a substantial part of the events giving rise to this litigation occurred in this District.

**Facts**

8.      Plaintiff Ms. Lesia Tsurenko is a Ukrainian professional tennis player. Ms. Tsurenko has won four singles titles on the WTA Tour. Plaintiff Ms. Lesia Tsurenko is a member of Defendant WTA Tour. The relationship between the members and the WTA Tour is governed by the Official Rulebook. Exhibit 1. and By-Laws. Exhibits 1, 2.

9.      9.      In addition, the Rulebook requires that as a condition of participating in the WTA Tour, players must execute an Annual Player Form. While Plaintiff acknowledged signing the Form on December 31, 2023, she was deprived of any opportunity to

2

negotiate its terms, including  its overbroad Waiver under which a player like Plaintiff is required, as a condition to participate in the tournaments sponsored by the WTA,  "knowingly, voluntarily, fully, and forever waive any and all claims, demands, losses, or causes of action that [she], [her] heirs or legal representatives may have against WTA Tour, WTA tournaments, WTA player members, the WTBA, the ITF and any WTA sponsor, and any director, manager, officer, employee, authorized agent or independent contractor of any of the foregoing (collectively, the "WTA Parties") . . . (ii) "arising in conjunction with any decision, ruling, action or inaction of WTA Parties with respect to **all matters** within their respective jurisdictions or areas of operations." Exhibit 3 at 2-3. (emphasis added).

10.     Defendant WTA Tour is a worldwide top-tier tennis tour for women organized by the Women's Tennis Association. The WTA is administered and governed by the WTA Tour, Inc., a United States registered corporation whose members are the players, its recognized WTA 1000 Mandatory, WTA 500, and WTA 250 Tournaments worldwide, and the International Tennis Federation. The Chief Executive Officer, Mr. Steve Simon is responsible for the day-to-day operations of the WTA. The Board of Directors of the WTA Tour is comprised of three (3) Player Board Representatives, three (3) Tournament Board Representatives, one (1) ITF Board Representative, and the CEO. The Board of Directors is responsible for establishing the long-term strategic plan for the WTA. Alternate Board Representatives for each member class may also attend Board of Directors meetings as determined by the CEO.

10     11.     Due to its virtual worldwide monopoly, all WTA players virtually have only two options – either to accept unconditionally all the oppressive terms of the WTA rules as stated in the Official Rulebook and By-Laws, and Annual Player Form, or entirely

forfeit their opportunity to play tennis, as there is no alternative to be a ranked professional player outside of the WTA's tournaments. In fact, in a recent class action lawsuit filed in this District, Plaintiffs- tennis players alleged that the WTA Tour, among other tennis organizations, "have formed a cartel, acquired monopsony power in the market for the services of professional tennis players, erected barriers to entry to lock out competitors and preserve their own artificial market position, and abused their power to the harm of players, the sport, fans, and competition." Vasek Pospisil v. ATP Tour, Inc., WTA Tour, Inc., et al, 1:25-cv-02207, Dkt. No. 1 at 6 (S.D.N.Y. March 18, 2025). Further, the Class Action Complaint alleges that the WTA Tour, among other tennis organizations, "forced players to sign illegal waiver and arbitration agreements that seek to deprive players of their right to hold Defendants to account in court." Id. at 7.

    12. In fact, as a condition of a player's membership in the WTA, the By-Laws require that each member of the Tour agrees to

> (d) Waive any and all claims or demands, whether for damages or otherwise, which the member might now or hereafter have against the Tour or any member of the Tour or against any director, officer or employee of the Tour in connection with or by reason of any decision, ruling or action of the membership of the Tour, any applicable class of membership of the Tour, the Board of Directors (or any authorized committee of the Board) or the officers or employees of the Tour with respect to all matters within their respective jurisdictions.

Exhibit 2 at 6. As a result, Plaintiff strongly believes that this Waiver is unconscionable and unenforceable. Moreover, the Waiver is not applicable to allegations stated in this Amended Complaint, which deals with mental abuse and harassment of Plaintiff rather than any matters

involving the organization of the tournament, member classification, and similar issues in connection with Defendants' operations.

13.    Indeed, the By-Laws define Players as "[a]ny woman whose primary source of income is derived from participation on a regular basis in competitive tennis for economic gain." Exhibit 2 at 4. Therefore, if such a player-woman wants to continue to make a living by participating on a regular basis in competitive tennis for economic gain, she must join the WTA by accepting without any chance to negotiate its oppressive rules, including the overbroad Waiver.

14.    On February 24, 2022, when the Russian Federation invaded Ukraine, Ukrainian tennis players expected that WTA would make some changes. Various events took place in world sports, and Russian and Belarusian sportsmen were banned from most types of sports.

~~11~~15.    At the moment of the invasion, Plaintiff was attending a Tennis Tournament in Guadalajara, Mexico. As soon as the invasion started, the Ukrainian team players noticed that Russian players showed a different attitude to them than before. Russian players stopped speaking to them and were ignoring them in the hallway.

~~12~~16.    In March 2022, Plaintiff participated in the Indian Wells tournament California. The Ukrainian team expected that Russian and Belarus players would be banned from the tournament as other Russian and Belarus professional athletes were sanctioned and banned from participating in international sports events. However, the tournament proceeded as if nothing had happened.

1317.   The Ukrainian players initiated a meeting to address this issue. The Ukrainian team was in shock and desperate due to the war in their country, and they wanted to address multiple issues in light of the Russian invasion of Ukraine. The meeting was attended by three Ukrainian players, Ms. Lesia Tsurenko, Elina Svitolina, and Marta Kostyuk, and two coaches, Ms. Tsurenko's coach, Mykyta Vlasov and Ms. Kostyuk's coach.

1418.   At the meeting, the WTA was represented by its CEO, Defendant Steve Simon. The Ukrainian team tried to explain that if certain players from Russia and Belarus support the war in Ukraine, they should be banned because it is a Fair Play violation and elementary human rights. Mr. Simon took an aggressive stance but stated that if Russian or Belarus players showed public support of the war, they would be banned from any tournament sponsored by the WTA.

1519.   Despite this promise, neither Defendant Steve Simon nor Defendant WTA banned Russian and Belarus players who publicly supported the war. In fact, there were multiple instances when Plaintiff informed Defendants that certain Russian and Belarus players publicly supported the war. Specifically, in April 2022, Ms. Viktoria Kudermetova, a Russian player, during the Paris Roland Garros tournament, wore a shirt with "Tatneft" patch[1], knowing that that company directly sponsored the war and was sanctioned by several Western countries. While Plaintiff informed Defendants about this fact, no action addressing this violation was taken by Defendants. Notably, the Ukrainian team planned to hold a presentation for players to show the horrors of the war in Ukraine to the players, but it was blocked by Defendants according to the information given to us by the tournament director, Mr. Amelie Morezmo.

---

[1] Ms. Viktoria Kudermetova has worn this patch for a year and half despite Plaintiff's complaints, which were totally ignore by Defendants.

1620.   During the tournament in Rome, Italy, in May of 2022, Ms. Marta Kostyuk, a Ukrainian player, submitted a written complaint to the WTA after her refusal to play in a doubles match against Russian representatives Ms. Kudermetova and Ms. Pavlyuchenkova due to the psychological impossibility of playing against Ms. Kudermetova, who, together with her husband, supported the invasion in Ukraine. This Complaint was sent to Mr. Simon and was completely ignored.

1721.   Worse, when Russian and Belarus players were banned from the Wimbledon tournament in 2022, Defendants supported them with their efforts to participate in the tournament, totally ignoring the Ukrainian players' position.

1822.    Notably, at some of Defendants' tournaments, they forget to remove Russian or Belarus flags, despite the International Olympic Committee's decision. At the same time, in August of 2022, at a tournament in Cincinnati, Ohio, during a match between two Russian players, Ms. Potapova and Ms. Kalinskaya, at the request of Ms. Potapova, a girl wrapped in a Ukrainian flag was removed from the match by the security. After a major outcry in the press, the WTA announced that the flag had been removed from the courtCourt due to the discrepancy in the size of the flag, even though the security guards did not even try to measure her flag.

1923.   At the end of 2022, at a tournament in Romania, a Russian player Ms. Anastasia Hasanova, publicly supported Russia's invasion of Ukraine by publishing a post on her Instagram page condoning the Russian invasion. Plaintiff filed a complaint with the WTA office, and she also sent a written complaint to WTA lawyer Mr. David Palanzo with a transcription and

translation of her Instagram post. Later, Plaintiff was informed that Ms. Hasanova received only a formal warning.

20~~24~~.    At the Australian Open tournament in Melbourne, on January 29, 2023, during the match between a Ukrainian player, Ms. Kateryna Baindl, and a Russian player, Ms. Rakhimova,  there were fans in the stands with Russian flags, wearing t-shirts with the image of Putin.   This action severely disturbed and inflamed the Ukrainian team. There was no reaction from the tournament WTA security. The next day, Plaintiff complained and demanded an explanation about this incident from the WTA, and Mr. Nikita Vlasov had three meetings with the tournament director, Mr. Craig Tiley.

21~~25~~.    In 2023, at the Indian Wells tournament~~,~~ in California, Plaintiff initiated a meeting with Mr. Simon to discuss the severe stress Ukrainian players were experiencing when playing against Russian and Belarus players, who publicly support the war. During the meeting, he shocked Plaintiff by responding – "**It is OK to support the war. It is another person's opinion and it should not hurt you**."  Further, he said that Russian and Belarus players should be returned to the Olympic Games. Notably, in public, Defendants have stated that they fully support Ukrainian players.

22~~26~~.    At that time, the Ukrainian National Olympic Committee criticized Ukrainian tennis players for playing with Russian or Belarus players, demanding that Ukrainian tennis players stop participating in tournaments against Russian and Belarus tennis players. Thus, Ukrainian players, including Plaintiff, were under additional pressure from their own country for actions beyond their control, and they faced a terrible dilemma – either to stop their careers or become enemies in their own country.

2327.   After a conversation with Mr. Steve Simon, Plaintiff did not know what to do. She went to a WTA psychologist, Kathy Martin, for medical assistance. Also, she went the next day to the WTA office where she apprised WTA's officials, including WTA supervisor Ms. Donna Kelso, player's relations manager Neil Robinson, WTA Safeguard director Lindsay Brandon, and WTA vice president Mr. Ashley Keber about Mr. Steve Simon's position. Strangely, the only solution the vice president suggested was to take a half-year break from the tournaments for all Ukrainian players.

2428.   Subsequently, Plaintiff had a match with a Croatian player, which she literally forced herself to play as she was mentally devastated. She actually was crying during the game. She continued crying in the locker room after the game. While Plaintiff informed her WTA psychologist and WTA top officials about her conversation with Mr. Simon, nothing changed.

2529.   Shortly thereafter, Plaintiff faced a scheduled game against Belarus player Aryna Sabalenka, also known as President Lukashenko's Barbie doll. The game was scheduled in the evening at central court.the Central Court. Plaintiff was trying to hold herself together, but one hour before the game, around 6:00 p.m.., she had a panic attack and breath problems. She went to the supervisor, and without the ability to breathe, with shaking hands and twitching eyes, Plaintiff said to her supervisor that she would not play against Ms. Sabalenka due to a panic attack. The supervisor demanded that she play because otherwise, the WTA would lose money. However, Plaintiff refused to comply and decided to withdraw from the game.

2630.   After the canceled game, Plaintiff was interviewed by a Ukrainian journalist, to whom she revealed her conversation with Mr. Simon. The next day, the interview

was translated into many different languages, and she received a lot of support even a hashtag was created on Twitter #stevesimonout.

~~27~~31.   At the tournament in Beijing, China, during the match against Ms. Veronika Kudermetova, the WTA Chief of Security, Mr. Bob Campbell, demanded without any justification that Plaintiff's coach ~~remove the Ukraine~~removed Ukrainian flag from his shoulders. ~~This illegal request led~~Moreover, during a rain delay, he talked about the war in front of Plaintiff, which destroyed her ability to pay tennis and she lost the ~~Plaintiff's defeat~~game for psychological reasons. ~~Similar~~A similar request to remove the Ukrainian flag was made by Mr. Bob Campbell in the end of March 2023, in the Miami tournament, ~~agiant~~during a match against Ms. CoCo Vandeweghe.

~~28~~32.   On March 30, 2023, a video call was held with the WTA Board, WTA CEO, and representatives of the Players Council, Mr. Sloane Stephens(USA) and Ms. Magda Linette(Poland), where Plaintiff raised the issue of Mr. Simon's statements regarding support for the war, as well as the violation of Ukrainian team's rights. Since the WTA continued to ignore the fact of the incident during the tournament in Indian Wells, Mr. Mykyta Vlasov made a written request to conduct an internal investigation and clarify the circumstances and consequences of this incident. On June 20, 2023, Plaintiff was informed by a letter from Safeguard Director Mr. Lindsay Brandon that a case was opened against her coach, Mr. Nikita Vlasov, regarding violations of the WTA Code of Conduct. This happened on the eve of the tournament in Eastbourne, Great Britain. This affected Plaintiff mental health, and she refused to participate in the tournament, stating the official reason of "mental pressure from WTA." However, the supervisor of that tournament, Ms. Kerrylin Kramer, did not indicate the reason for

the refusal in the official documents, leaving an empty space. Based on information and belief, the incident involving Mr. Nikita Vlasov was fabricated to put pressure on Plaintiff.

29 33.   On October 17, 2023, Plaintiff received a decision from the WTA Committee in the case against the WTA CEO, in which the Committee determined that Mr. Simon did not violate the Code of Conduct, nor did he violate any provision in the Employee Handbook. On December 1, 2023, Plaintiff appealed the decision to the WTA Board, which affirmed Committee's Decision "in all respects."

30 34.   While the Board states in its decisions that "it recognizes the highly difficult circumstances that continue to impact our Ukrainian player members and remains focused on their wellbeing and safety. In that regard, the Board welcomes further dialogue with Ms. Tsurenko and other Ukrainian player members to continue to seek to further this goal," nothing materially has been done by the TWA to address these concerns.

**Plaintiff complains and for a first cause of action for Breach of Contract alleges as follows:**

(Against all defendants Defendant WTA)

31 35.   Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 30 34 above with the same force and effect as if herein set forth.

32 36.   Plaintiff, as a member of the WTA, by submitting an application to join the WTA entered into a valid Agreement with Defendants governed by the WTA Official Rulebook , under which Defendants were obligated to "refrain from engaging in conduct detrimental to the WTA or the WTA Tour or contrary to the integrity of the game of tennis and

11

to ensure that Tournament partners adhere to the same standard in the activation of their

partnership with the Tournament." Exhibit 1 at 294.

3337. According to the WTA Code of Conduct, "[c]onduct detrimental to the

WTA or the WTA Tour or contrary to the integrity of the game of tennis shall include, but not be

limited to, public comments, whether or not to the media, and marketing and promotional

campaigns and messaging, which unreasonably attack or disparage a Tournament, sponsor,

player, official, the WTA, or the WTA Tour." Id. at 295.

3438. Violation of this Section "shall subject a Tournament and/or Tournament

Support Personnel to a fine of up to $25,000, denial of privileges or exclusion of the person in

question from any or all Tournaments, and/or loss or change in membership status, and/or

forfeiture of all sums, if any, previously paid to the WTA." Id.

3539. Plaintiff duly performed her part of the Agreement.

3640. Defendants breached the Agreement as they failed to provide reasonable

accommodation to Ukrainian players, created or failed to rectify tournamentstournament

conditions that adversely affected Ukrainian players' ability to perform their obligation as

members of WTA, mentally abused Ukrainian members, including Plaintiff, involved in conduct

contrary to the integrity of the game of tennis.

3741. As a direct and proximate result of the Defendants' breach of the

Agreement, Plaintiff has suffered substantial financial losses at the amount to be determined at

trial.

3842.   By reason of the foregoing, Plaintiffs is entitled to judgment against all Defendants, jointly and severally, in the amount of at the amount to be determined at trial, plus interest, costs, and expenses, including attorneys' fees.

**Plaintiff complains and for a second cause of action in negligence alleges as follows:**

39(Against All Defendants)

43.   Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 3842 above with the same force and effect as if herein set forth.

40      44.   Defendants owe Plaintiff duty of care, stemming from the principles of Fair Play and basic human rights, to provide an opportunity to play tennis during the sponsored tournaments free of direct and indirect harassment and humiliation by other players, support team members, and fans.

45.   Defendants breached their non-delegable duty of care owed to Plaintiff, and were negligent in the following ways:

a. Failing to protect Plaintiff from direct and indirect harassment and humiliation by Russian and Belarus'Belarussian players, support team members, and fans:, who openly supported the Russian invasion of Ukraine;

b. Failing to institute and enforce appropriate policies, procedures, rules, regulations, practices, and requirements necessary to prevent said direct and indirect harassment and humiliation, which created a hostile environment by Russian and Belarus' players, support team members, and fans:, including but not limited to displaying at the sponsored tournaments

prohibited Russian flags, wearing t-shirts with the image of Mr. Putin, making insulting remarks, etc.

c. Failing to investigate ~~complaints~~instances of direct and indirect harassment and humiliation, which created a hostile environment, made by Russian and Belarussian players, support team members, and fans;

d. Failing to address Defendant ~~Simon~~Simon's unethical conduct toward the Ukrainian members;

e. Failing to appropriately discipline Defendant Simon for his unethical conduct toward the Ukrainian members;

f. Failing to intervene to prevent the escalation of inappropriate conduct towards Plaintiff by Defendant Simon;

g. Failing to exercise reasonable care to detect when actions or behavior of Defendant Simon are detrimental to Plaintiff's physical and emotional wellbeing;

h. Failing to exercise reasonable care to detect that the actions or behavior of Defendant Simon ~~demonstrated noncompliance with WTA Rules~~violated the principles of Fair Play and ~~Procedures, Code of Conduct, and State Law;~~elementary human rights.

~~41~~ 46.    In addition, Defendant Steve Simon voluntarily assumed a duty to ban Russian or Belarusian players if they showed public support of the war, and as such, Defendants are estopped from escaping liability for their breach of that duty as "special relationship" or "duty" were formed.

47.    Since Defendant Steve Simon breached that duty on which Plaintiff reasonably relied upon and did not ban Russian or Belarusian players despite their open public

14

support of the war, about which Defendants were timely notified by Plaintiff, Defendants acted negligently.

48.    Defendants, through themselves, their servants, agents and/or employees, were negligent in failing to provide Plaintiff reasonable accommodation, created or failed to rectify tournamentstournament conditions that adversely affected Ukrainian players' ability to perform their obligation as members of WTA, and mentally abused Ukrainian members, including Plaintiff, involved in conduct contrary to the integrity of the game of tennis.

4249.    The Defendants, through themselves, their servants, agents and/or employees, failed to exercise the necessary caution and care required under the circumstances, thereby causing Plaintiff to sustain severe mental injuries.

4350.    The injuries sustained by Plaintiff were caused solely through the negligent actions/inactions of Defendants without any negligence on the part of Plaintiff contributing thereto. The injuries sustained by Plaintiff were proximately caused by Defendants actions/inaction and were foreseeable to Defendants as they had actual notice of Defendant Simon's unethical conduct.

4451.    As a result of the Defendants' negligence, the Plaintiff sustained severe injuries, obliging her to incur expenses for medical care and which injuries prevented and will prevent her in the performance of her usual duties and adversely affect her tennis career, and upon information and belief, said injuries may be of a permanent nature.

4552.    As a result of the foregoing, the Plaintiff has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory

damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper.

**Plaintiff complains and for a third cause of action in negligent supervision and retention[2] alleges as follows:**

~~46.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 45 above with the same force and effect as if herein set forth.~~

~~47~~(Against All Defendants)

53.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 52 above with the same force and effect as if herein set forth.

54.    Defendants had a duty of care to Plaintiff, as well as to all Ukrainian members when retaining, supervising, and evaluating its employees, including Defendant Simon, to timely, adequately, and appropriately investigate, heed, and act on all reasonable suggestions and information that Defendant acted unethically and otherwise detrimental to mental and physical to the wellbeing of Plaintiff.

~~48~~55.    As of 2022, Defendants knew or reasonably should have known of Defendant Simon's propensity to mentally, physically, and emotionally injure Ukrainian members, including Plaintiff~~.~~, as Plaintiff timely notified Defendants verbally and in writing about  Defendant Simon's adverse and hostile attitude against the Ukrainian members, including Plaintiff.

---

[2] Where the negligence claim relates to an employer's retention and supervision of an employee, the complaint must include allegations that: (1) the employer had actual or constructive knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm; (2) the employer knew  or should have known that it had the ability to control the employee and of the necessity and opportunity for exercising such control; and (3) the employee engaged in tortious conduct on the employer's premises or using property or resources available to the employee only through their status as an employee. See Moore Charitable Found. V. PJT Partners, Inc., 40 N.Y.3d 150, 157 (2023).

4956.   Despite the known history of Defendant Simon's propensity to mentally, physically, and emotionally injure Ukrainian members, including Plaintiff, Defendants continued to permit him to act as the WTA CEO.

5057.   Defendants had a duty of care to Plaintiff, as well as to other Ukrainian members, to protect Plaintiff from emotional injury and to otherwise ensure the safety of Ukrainian members, including Plaintiff, from being harassed by Defendant Simon. In breach of their duty of care, Defendants negligently retained Defendant Simon when they knew, or should have known, of his propensity to mentally, physically, and emotionally injure Ukrainian members, including Plaintiff.

5158.   Additional negligent and careless acts and omissions of the Defendants include but are not limited to failing to exercise reasonable care to detect when actions or behavior of Defendant Simon are detrimental to Ukrainian members, including Plaintiff; failing to exercise reasonable care to detect that actions or behavior of Defendant Simon demonstrate noncompliance with WTA Code of Conduct, WTA Employee Handbook, and applicable State Law, the principles of Fair Play and basic human rights.

5259.   Defendants, as the employer/principal responsible for the actions of its employees/agents, including but not limited to Defendant Simon, Defendants' negligent retention and supervision of Defendant Simon caused Plaintiff's mental anguish, loss of capacity for the enjoyment of life, medical treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper.

**Plaintiff complains and for a fourth cause of action for
negligent infliction of emotional distress alleges as follows:**

(Against All Defendants)

60.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 59 above with the same force and effect as if herein set forth.

61    ~~53.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 52 above with the same force and effect as if herein set forth.    54~~. Defendants negligently and recklessly inflicted emotional distress on Plaintiff by

a. Failing to protect Plaintiff from direct and indirect harassment and humiliation by Russian and ~~Belarus'~~Belarussian players, support ——team members, and fans~~:~~, who openly supported the Russian invasion of Ukraine;

b. Failing to institute and enforce appropriate policies, procedures, rules, regulations, practices, and requirements necessary to prevent said direct and indirect harassment and humiliation, which created a hostile environment by Russian and Belarus' players, support team members, and fans~~:~~, including but not limited to displaying at the sponsored tournaments

18

prohibited Russian flags, wearing t-shirts with the image of Mr. Putin, making insulting remarks, etc.

      c. Failing to investigate ~~complaints~~instances of direct and indirect harassment and humiliation, which created a hostile environment, made by Russian and Belarussian players, support team members, and fans;

      d. Failing to address Defendant ~~Simon~~Simon's unethical conduct toward the Ukrainian members;

      e. Failing to appropriately discipline Defendant Simon for his unethical conduct toward ——the Ukrainian members;

      f. Failing to intervene to prevent the escalation of inappropriate conduct towards Plaintiff ——by Defendant Simon;

      g. Failing to exercise reasonable care to detect when actions or behavior of Defendant ——Simon are detrimental to Plaintiff's physical and emotional wellbeing;

      h. Failing to exercise reasonable care to detect that the actions or behavior of Defendant ——Simon ~~demonstrated noncompliance with WTA Rules~~violated the principles of Fair Play and ~~Procedures, Code of Conduct, and State Law;~~elementary human rights.

      ~~55~~In addition, Defendant Steve Simon voluntarily assumed a duty to ban Russian or Belarusian players if they showed public support of the war, and as such, Defendants are estopped from escaping liability for their breach of that duty as "special relationship" or "duty" were formed.

      62.    Since Defendant Steve Simon breached that duty on which Plaintiff reasonably relied upon and did not ban Russian or Belarusian players despite their open public

Formatte

support of the war, about which Defendants were timely notified by Plaintiff, Defendants negligently and recklessly inflicted emotional distress on Plaintiff.

63.    The conduct caused Plaintiff emotional distress, which distress was severe. ~~Defendants~~Defendants' conduct and actions in acting by and through its employee/agents, including, but not limited to, Defendant Simon, was the direct and proximate cause of severe emotional distress to Plaintiff.

~~56~~64.    As a result of Defendants' breach of their duty, Plaintiff was, is, and, with a high degree of likelihood, will continue to be emotionally distressed.

~~57~~65.    As a result of Defendants' conduct, Plaintiff has suffered and, with a high degree of likelihood, will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment, and humiliation.

~~58~~66.    As a proximate result of the above-described events, Plaintiff has suffered from bouts of insomnia, crying episodes, developed excessive stress, loss of concentration affecting her performance at tennis games, mortification, and injury to her feelings.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper.

JURY TRIAL DEMAND

Plaintiff demands a trial by jury and all issues so triable as a matter of right.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands relief as follows:

On the FIRST CAUSE OF ACTION, to judgment against all Defendants, jointly and severally,

20

in the amount of at the amount to be determined at trial, plus interest, costs and expenses, including attorneys' fees;

On the SECOND CAUSE OF ACTION, judgment against Defendants, jointly and severally, for compensatory damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper;

On the THIRD CAUSE OF ACTION, Plaintiff demands judgment against Defendants for compensatory damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper;

On the FOURTH CAUSE OF ACTION, Plaintiff demands judgment against Defendants for compensatory damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper  and, awarding Plaintiff such other and further legal and equitable relief as the Court deems just and proper.

AND, awarding Plaintiff such other and further legal and equitable relief as the court deems just and proper.

Dated:  Brooklyn, New York
October 7, 2024
April 15, 2025

s/ Arkady Bukh

By: _____

BUKH LAW PA
Attorneys for Lesia Tsurenko
1123 Ave. Z
Brooklyn, NY 11235
Phone: (718) 376-4766
Fax: (718) 376-3033
honorable@usa.com

21