UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
LESIA TSURENKO,

Case No. 24-cv-08518-NRB

Plaintiff,

-against-

WTA TOUR, INC. AND STEVE SIMON,

Defendants.

------------------------------------------------------------------- X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

BUKH LAW PA
Attorneys for Lesia Tsurenko
1123 Ave. Z
Brooklyn, NY 11235
Phone: (718) 376-4766
Fax: (718) 376-3033
honorable@usa.com

## TABLE OF CONTENTS

Table Contents…………………………………………………………………………………2

Table of Authorities…………………………………………………………………………4

FACTUAL AND PROCEDURAL BACKGROUND …………………………………… …6

Amended Complaint Allegations …………………………………………………………..6

ARGUMENT …………………………………………………………………………………...9

THE COURT SHOULD NOT DISMISS THE AMENDED COMPLAINT ………………...9

a. Standard Under Rule 12(b)(6) ……………………………………………………………...9

1. Plaintiff Plausibly Alleges Breach of Contract Claim …………………………………...9

a. The Waivers Signed by Plaintiff are Unconscionable …………………………………..10

b. The Waivers Are Limited in Scope As They Do Not Cover the Alleged Claims ………....13

c. The Term "Tournament Support Personnel" Includes the WTA Or the WTA
Is Liable for Its Actions or Inactions Under Respondeat Superior Doctrine ………………14

d. Plaintiff Plausibly Alleges a Breach of Contract Claim ………………………………...14

e. Court Should Interfere with WTA's Internal Decisions As They Violate WTA's
Own Rules …………………………………………………………………………….....14

2. Plaintiff Plausibly Alleges Negligence Claim …………………………………………...15

a. Plaintiff Plausibly Alleges that Defendants Owe Her a Duty Independent of the Parties'
Contractual Relationship …………………………………………………………………...15

b. Defendants Voluntarily Assume a Duty to Plaintiff to Ban Russian and Belarusian Players
Who Supported the War and Breached That Duty …………………………………………17

c. Plaintiff's Allegations Include Well-Pleaded Allegations of Hostile Work
Environment Claim …………………………………………………………………………19

d. Plaintiff's Well-Pleaded Allegations Support Plaintiff's Negligence Claim……………… 20

3. Plaintiff Plausibly Alleges Negligent Supervision Claim …………………………….21

4. Plaintiff Plausibly Alleges Negligent Infliction of Emotional Distress ……………………22

5. Defendants' Request to Award, "in accordance with the WTA By-Laws,"

Their Attorneys' Fees and Costs Should Not Be Enforced As It is Unconscionable,
Constitutes a Penalty, and Violates Public Policy Considerations …………………………..23

CONCLUSION …………………………………………………………………………….25

Certification……………………………………………………………………………26

# TABLE OF AUTHORITIES

## Cases

Alfano v. Costello, 294 F.3d 365 (2d Cir. 2002)……………………………………………..20

Amusement Bus. Underwriters v. Am. Intl. Group, Inc., 66 N.Y.2d 878 (1985)……………..13

Ashcroft v. Iqbal, 556 U.S. 662 (2009)…………………………………………………...8, 9, 21

Benitez  v. New York City Bd. of Educ., 73 N.Y.2d 650 (1989)……………………………..17

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)…………………………………………….8

Brown v. Henderson, 257 F.3d 246 (2d Cir. 2001)……………………………………20, 22

Brown v. NY Design Ctr., Inc., 215 A.D.3d 1 (1st Dep't 2023)……………………………23

Christian v. Christian, 42 N.Y.2d 63 (1977)………………………………………………..10

City of New York v. Local 333, Marine Div., Int'l Longshoremen's Ass'n, 106 Misc.

2d 888 (New York County 1980)……………………………………………………………..10

Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465 (D.C. Cir. 1997)………………………………24

Crouch v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 845 F.2d 397 (2d Cir. 1988)…………15

Curley v. AMR Corp., 153 F.3d 5 (2d Cir. 1998)…………………………………………...16

Fensterstock v. Educ. Fin. Partners, 611 F.3d 124 (2d Cir. 2010)……………………………11

Fils-Aime v. Ryder TRS, Inc., 40 A.D.3d 917 (2d Dep't 2007)……………………………14

Ford Motor Credit Co. v. Miller, 990 F. Supp. 107 (N.D.N.Y. 1998)……………………10, 24

Heard v. City of NY, 82 N.Y.2d 66 (1993)…………………………………………………18

Howell v. New York Post Co., 81 N.Y.2d 115 (1993)……………………………………..22

Hume v. United States, 132 U.S. 406 (1889)………………………………………………10

In re Nasdaq Mkt.–Makers Antitrust Litig., 894 F. Supp. 703 (S.D.N.Y. 1995)………………9

Matter of Krodel v. Amalgamated Dwellings Inc., 166 A.D.3d 412 (1st Dep't 2018)………24

Markatos v. Citibank, N.A., 760 F. Supp. 3d 70, 75 (S.D.N.Y. 2024)………………………12

Miles v. R & M Appliance Sales, Inc., 26 N.Y.2d 451 (1970)………………………………18

Moore Charitable Found. V. PJT Partners, Inc., 40 N.Y.3d 150 (2023)………………………21

Morgan v. State, 90 N.Y.2d 471 (1997)……………………………………………………17

NY Conference Assn. of 7th Day Adventists v. 915 James St. Assoc., 38 A.D.2d 235

(4th Dep't 1972)…………………………………………………………………19

Pinto v. Tenenbaum, 105 A.D.3d 930 (2d Dep't 2013). ………………………………..14

Snell v. Suffolk Cnty., 782 F.2d 1094 (2d Cir. 1986)…………………………………...20

Sanchez v. Nitro Lift Tech., L.L.C., 91 F. Supp. 3d 1218 (E.D. Okla. 2015)………………24

Sykes v. Rachmuth, 2023 U.S. Dist. LEXIS 57052, 2023 WL 2752865

 (S.D.N.Y. Mar. 31, 2023)…………………………………………………………19

Taggart v. Costabile, 131 A.D.3d 243 (2d Dep't 2015)………………………………23

Tenczar v. Richmond, 172 A.D.2d 952 (3d Dep't 1991)……………………………..22

United States Nav. Inst. v. Charter Communications, Inc., 875 F.2d 1044 (2d Cir. 1989)…..13

Uy v. Hussein, 186 A.D.3d 1567 (2d Dep't 2020)………………………………..14

Vasek Pospisil v. ATP Tour, Inc., WTA Tour, Inc., et al, 1:25-cv-02207

(S.D.N.Y. March 18, 2025)…………………………………………………………7

Westinghouse Elec. Corp. v. N.Y.C. Transit Auth., 82 N.Y.2d 47, 55 (1993)………………11

**Statutes**

Fed. R. Civ. P. 12(b)……………………………………………………………5, 8

36 U.S.C. § 220505……………………………………………………………16

36 U.S.C. § 220524……………………………………………………………16

36 U.S.C § 220503……………………………………………………………..16

N.Y. U.C.C. § 2-302……………………………………………………………11

N.Y. Real. P. § 235-c…………………………………………………………..11

N.Y. U.C.C. § 2-A-108…………………………………………………………11

LESIA TSURENKO (hereinafter, "Plaintiff"), respectfully submits the following memorandum of law in opposition to Defendants WTA Tour, Inc. ("WTA") and Steve Simon ("Defendants") Motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lesia Tsurenko commenced this action on November 8, 2024, by filing a Complaint ("Complaint"), against Defendants WTA and its CEO Steve Simon, alleging a breach of contract, negligence, negligent supervision and retention, and negligent infliction of emotional distress causes of action. Exhibits 1, 2.

After a pre-motion conference, with the Court's permission, on April 16, 2025, Plaintiff filed the Amended Complaint. Exhibits 3, 4, 5.

**<u>Amended Complaint Allegations</u>**

Defendant WTA Tour is a worldwide top-tier tennis tour for women organized by the Women's Tennis Association. Am. Compl. at ¶10 (Exhibit 3)  The WTA is administered and governed by the WTA Tour, Inc., a United States registered corporation whose members are the players, its recognized WTA 1000 Mandatory, WTA 500, and WTA 250 Tournaments worldwide, and the International Tennis Federation. <u>Id</u>. The Chief Executive Officer, Defendant Mr. Steve Simon, is responsible for the day-to-day operations of the WTA. <u>Id</u>.

Due to its virtual worldwide monopoly, all WTA players, including Plaintiff, have only two options – either to accept unconditionally all the oppressive terms of the WTA rules as stated in the Official Rulebook and By-Laws, Exhibits 2,4, and Annual Player Form, Exhibit 5, or entirely forfeit their opportunity to play tennis, as there is no alternative to be a ranked professional women player outside of the WTA's tournaments.

In fact, in a recent class action lawsuit filed in this District, Plaintiffs - tennis players - alleged that the WTA Tour, among other tennis organizations, "have formed a cartel, acquired monopsony power in the market for the services of professional tennis players, erected barriers to entry to lock out competitors and preserve their own artificial market position, and abused their power to the harm of players, the sport, fans, and competition." Vasek Pospisil v. ATP Tour, Inc., WTA Tour, Inc., et al, 1:25-cv-02207, Dkt. No. 1 at 6 (S.D.N.Y. March 18, 2025). Further, the Class Action Complaint alleges that the WTA Tour, among other tennis organizations, "forced players to sign illegal waiver and arbitration agreements that seek to deprive players of their right to hold Defendants to account in court." Id. at 7.

On February 24, 2022, when the Russian Federation invaded Ukraine, Ukrainian tennis players, including Plaintiff, expected that the WTA would make some changes in its tournaments. Various events took place in world sports, and Russian and Belarusian sportsmen were banned from most types of sports. Exhibit 3 at ¶15. At the moment of the invasion, Plaintiff was attending a Tennis Tournament in Guadalajara, Mexico. As soon as the invasion started, the Ukrainian team players noticed that Russian players showed a different attitude towards them than before. Russian players stopped speaking to them and were ignoring them in the hallway. Id. at ¶16.

Subsequently, as Plaintiff alleges in her Amended Complaint, Defendant violated their contractual obligations stated in the Rulebook and the By-Laws, and an independent duty of care.  Specifically,  Plaintiff alleges that Defendant Simon made statement that  "It is OK to support the war," despite his prior promise that "if Russian or Belarus players showed public support of the war, they would be banned from any tournament sponsored by the WTA,"  Exhibit 3 at ¶¶ 18, 25, Defendants unreasonably disregarded  Plaintiff's complaints about  Ms. Viktoria

Kudermetova, a Russian player, who during the Paris Roland Garros tournament, wore a shirt with "Tatneft" patch, knowing that that company directly sponsored the war and was sanctioned by several Western countries, id. at ¶19, Defendants refused to address Ms. Marta Kostyuk, a Ukrainian player's request to excuse her from playing a doubles match against Russian players Ms. Kudermetova and Ms. Pavlyuchenkova, due to the psychological impossibility of playing against Ms. Kudermetova, who, together with her husband, supported the invasion in Ukraine, id. at ¶20, Defendants made decisions not to remove Russian or Belarus flags at WTA-sponsored tournaments, despite the International Olympic Committee's mandate, id. at ¶22, Defendants ignored a prohibited display of Russian flags and t-shirts with Vladimir Putin's image on them at the 2023 Australian Open,[1] id. at ¶24, Defendants initiated and supported unreasonable requests to remove the Ukrainian flag from Plaintiff's coach shoulders, id. at ¶31, Defendants retaliated against Plaintiff's coach, Mykyta Vlasov, id. at ¶32.

On June 13, 2025, Defendants filed their Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF. No. 30.

## ARGUMENT

## THE COURT SHOULD NOT DISMISS THE AMENDED COMPLAINT

### a. Standard Under Rule 12(b)(6)

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A

---

[1] While the WTA does not directly financially sponsor the Australian Open, as the governing body for women's professional tennis, it oversees the WTA Tour, which includes the Australian Open as one of the four Grand Slam tournaments. Specifically, the WTA's role is regulatory and promotional, supporting players and the tournament's inclusion in the WTA Tour calendar. See https://www.wtatennis.com/news/3849551/australian-open-2024-draws-dates-prize-money-and-what-you-need-to-know To that extent, Defendants' claim that Australian Open "is not part of or governed by the WTA Tour," Mem. at 19 n.14, is misleading and inaccurate.

complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory." In re Nasdaq Mkt.– Makers Antitrust Litig., 894 F. Supp. 703, 709 (S.D.N.Y. 1995) (internal quotation marks omitted). To be legally viable, claims must provide more than just labels, conclusions, or formulaic recitations of the elements of a cause of action. Iqbal, 556 U.S. at 678.

### 1. Plaintiff Plausibly Alleges Breach of Contract Claim

First, contrary to Defendants' contention, Plaintiff's breach of contract claim should not be dismissed based on her alleged waivers of her right to bring such a claim because due to its virtual worldwide monopoly, all WTA players, including Plaintiff, have only two options – either to accept unconditionally all the oppressive terms of the WTA rules, including said waivers, as stated in the Official Rulebook and By-Laws, Exhibits 2,4, and Annual Player Form, Exhibit 5, or entirely forfeit their opportunity to play tennis, as there is no alternative to be a ranked professional women player outside of the WTA's tournaments.

In fact, as a condition of a player's membership in the WTA, the By-Laws require that each member of the Tour agrees to

> (d) Waive any and all claims or demands, whether for damages or otherwise, which the member might now or hereafter have against the Tour or any member of the Tour or against any director, officer or employee of the Tour in connection with or by reason of any decision, ruling or action of the membership of the Tour, any applicable class of membership of the Tour, the Board of Directors (or any authorized committee of the Board) or the officers or employees of the Tour with respect to all matters within their respective jurisdictions.

Exhibit 4 at 7. As a result, Plaintiff's position is that the waivers are unconscionable and unenforceable. Indeed, the By-Laws define Players as "[a]ny woman whose primary source of income is derived from participation on a regular basis in competitive tennis for economic gain."

Exhibit 2 at 4. Therefore, if such a player-woman wants to continue to make a living by participating on a regular basis in competitive tennis for economic gain, she must join the WTA by accepting without any chance to negotiate its oppressive rules, including the overbroad waivers.

**a. The Waivers Signed by Plaintiff are Unconscionable**

The doctrine of unconscionability, which is based on public policy considerations, has been defined as contractual overreaching, imposition, oppressiveness, or patent unfairness." Ford Motor Credit Co. v. Miller, 990 F. Supp. 107, 110 (N.D.N.Y. 1998)(citing 22 N.Y. JUR. 2d Contracts § 156, at 192 (1996); Hume v. United States, 132 U.S. 406 (1889).   See also Christian v. Christian, 42 N.Y.2d 63, 71 (1977)("an unconscionable bargain has been regarded as one such as no [person] in his [or her] senses and not under delusion would make on the one hand, and as no honest and fair [person] would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any [person] of common sense")(internal citations and quotation marks omitted).  In this case, the overbroad waivers of "any and all claims" against Defendants is clearly unconscionable since it unreasonably deprives Plaintiff from asserting any cause of action without even getting any benefit from this bargain.

Moreover, the Rulebook, with its Annual Player Form, has all the elements of a contract of adhesion. "Contracts of adhesion" are contracts prepared by one party and presented to another, in a disadvantageous bargaining position, on a "take it or leave it" basis. City of New York v. Local 333, Marine Div., Int'l Longshoremen's Ass'n, 106 Misc. 2d 888, 891 (New York County 1980), rev'd on other grounds,  79 A.D.2d 410 (1980).

Here, since Plaintiff had no bargaining power when she executed the waivers, the WTA exercised its power in such a way as to take advantage of Plaintiff's lack of sophistication and lack of bargaining power. As such, the unlimited waivers provisions are invalid and unenforceable. Again, given the worldwide WTA monopoly, all WTA players are forces to

accept unconditionally all the oppressive terms of the WTA contract without any negotiation of its terms if they want to be ranked professional players.

While Defendants argue, relying on <u>Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.</u>, 82 N.Y.2d 47, 55 (1993) that "[t]he bedrock of the doctrine of unconscionability is the prevention of oppression and unfair surprise… and not of disturbance of allocation of risk," Mem. at 11, the <u>Westinghouse</u> Court further clarified that citation saying that "where, as here, the parties are '**dealing at arm's length with relative equality of bargaining power**,' they ought to be left to themselves." <u>Id</u>. (emphasis added). <u>See also</u> <u>Fensterstock v. Educ. Fin. Partners</u>, 611 F.3d 124, 127 (2d Cir. 2010), <u>vacated on other ground</u>, 564 U.S. 1001 (2011)("It was not necessary for the borrower to allege that he was "surprised" by the class arbitration waiver, as procedural unconscionability could exist in the absence of surprise. Presentation of such a clause to a weaker party on a take-it-or-leave-it basis without the opportunity for meaningful negotiation was oppressive under California law").

In this case, Plaintiff, due to the reasons stated above, certainly did not deal with the WTA "at arm's length with relative equality of bargaining power." Moreover, contrary to Defendants' contention, under New York law, a party does not need to allege that she attempted to negotiate the terms of a contract to establish unconscionability. For example, N.Y. U.C.C. § 2-302 explicitly states that the court may determine unconscionability as a matter of law and does not impose a requirement for the party to demonstrate efforts to negotiate the terms of the contract. Similarly, N.Y. Real. P. § 235-c and N.Y. U.C.C. § 2-A-108 provide similar provisions for leases and lease contracts, respectively, without requiring evidence of negotiation attempts.

Last but not least, the WTA misleadingly argues that "[t]he Rulebook clearly provides that players can participate in WTA tournaments without being WTA members," Mem

11

at 12 n.10, failing to disclose that non-members of the WTA face several severe disadvantages when attempting to participate in WTA tournaments, including inability to be automatically eligible to enter the main draw or qualifying events of WTA tournaments, leaving for them the only option to gain entry to WTA tournaments through wildcards, which are limited in number. As a result, non-members may struggle to accumulate enough points without regular access to higher-tier events. Text generated by Grok[2], xAI, July 14, 2025, https://grok.com/share/c2hhcmQtMw%3D%3D_fbaf60c8-bad3-4c07-a5b7-6f2a61c99dba

        Moreover, while non-members can earn WTA ranking points by participating in ITF Women's Circuit tournaments, which are lower-tier events organized by the International Tennis Federation (ITF), these tournaments offer limited WTA ranking points compared to WTA events, making it challenging for non-members to achieve a ranking high enough to gain direct entry into WTA tournaments. Id. As a consequence, non-members primarily rely on ITF events, which have lower prize money, ranging from $15,000 to $100,000, which pales in comparison with $2 million to $10 million for WTA 1000 events. Id. Finally, WTA members benefit from resources such as the Player Development Advisory Panel, orientation programs (e.g., "Rookie Hours"), and access to coaching certifications, which help players navigate the professional environment, while non-members do not have access to these programs, which can hinder their ability to prepare for and compete in WTA tournaments. Id.   As such, the only feasible option for professional tennis players is to sign the oppressive waivers to participate in the WTA events. Therefore, the Court should not enforce the waivers as unconscionable.

**b. The Waivers Are Limited in Scope As They Do Not Cover the Alleged Claims**

---

[2] As Defendants duly noted, the Court may consider this material on a motion to dismiss because "[i]t is generally proper to take judicial notice of articles and Web sites published on the Internet." Markatos v. Citibank, N.A., 760 F. Supp. 3d 70, 75 (S.D.N.Y. 2024)

Further, based on the analysis of terms of the Rulebook, the waivers are not applicable to allegations stated in this Amended Complaint, which deal with mental abuse and harassment of Plaintiff rather than technical matters involving the organization of the tournament, member classification, and similar issues in connection with Defendants' operations, which are covered by the Rulebook. As such, Plaintiff did not waive her claims against the WTA. See United States Nav. Inst. v. Charter Communications, Inc., 875 F.2d 1044, 1049 (2d Cir. 1989)(where determination of the terms of contract in a question of law, courts "should interpret a contract in a way that ascribes meaning, if possible, **to all of its terms**.")(emphasis added).

Alternatively, this determination is a question of fact, and it should not be determined on motion to dismiss. See, e.g., United States Nav. Inst., 875 F.2d at 1048 ("The meaning of a contract term that is susceptible to at least two reasonable interpretations is generally an issue of fact, requiring the trier of fact to determine the parties' intent"); Amusement Bus. Underwriters v. Am. Intl. Group, Inc., 66 N.Y.2d 878, 880 (1985)("While the meaning of a contract is ordinarily a question of law, when a term or clause is ambiguous and the determination of the parties' intent depends upon the credibility of extrinsic evidence or a choice among inferences to be drawn from extrinsic evidence, then the issue is one of fact"). As such, Plaintiff's argument that her waivers are limited in scope and do not cover the relevant claims asserted in the Amended Complaint is a question of fact that is not suitable for a motion to dismiss.

c. **The Term "Tournament Support Personnel" Includes the WTA Or the WTA Is Liable for Its Actions or Inactions Under *Respondeat Superior* Doctrine**

Contrary to Defendant's argument that "WTA and its directors and officers do not fall within the definition of "Tournament Support Personnel, " the Rulebook several times

defines Tournament Support Personnel as "any tournament director, official, owner, operator, employee, agent, contractor or any similarly situated person." Exhibit 2 at 279, 418, 511. As "Tournament" means any singles or doubles tennis competition **administered by the WTA**, or approved as a WTA Ranking event by the WTA, Exhibit 2 at 278 (emphasis added), "any tournament director, official, owner, operator, employee" logically includes the WTA, at least under the theory of *respondeat superior*.

Indeed, under the doctrine of *respondeat superior*, "a principal is [vicariously] liable for the negligent acts committed by its agents within the scope of the agency." <u>Fils-Aime v. Ryder TRS, Inc.</u>, 40 A.D.3d 917 (2d Dep't 2007). "An action may be considered to be within the scope of employment, thus rendering an employer vicariously liable for the conduct, when 'the employee is engaged generally in the business of the employer, or if the act may be reasonably said to be necessary or incidental to such employment.'" <u>Uy v. Hussein</u>, 186 A.D.3d 1567, 1570 (2d Dep't 2020); <u>Pinto v. Tenenbaum</u>, 105 A.D.3d 930, 931 (2d Dep't 2013). Whether an employee was acting within the scope of his or her employment is generally a question of fact for the jury. <u>Uy v. Hussein</u>, 186 A.D.3d at 1570.

Here, since it is undisputable that "any tournament director, official, owner, operator, employee" acted within the scope of their employment for the WTA, as such, their acts or omissions rendered the WTA vicariously liable for their conduct.

**d. Plaintiff Plausibly Alleges a Breach of Contract Claim**

Plaintiff alleged that Defendants were obligated to "refrain from engaging in conduct detrimental to the WTA or the WTA Tour or contrary to the integrity of the game of tennis and to ensure that Tournament partners adhere to the same standard in the activation of their partnership with the Tournament." Exhibit 2 at 294. In addition, according to the WTA

Code of Conduct, "[c]onduct detrimental to the WTA or the WTA Tour or contrary to the integrity of the game of tennis shall include, but not be limited to, public comments, whether or not to the media, and marketing and promotional campaigns and messaging, which unreasonably attack or disparage a Tournament, sponsor, player, official, the WTA, or the WTA Tour." Id. at 295.

Contrary to Defendants' contention, Plaintiff's allegations fit squarely within said rules, as the WTA's conduct "created or failed to rectify tournament conditions that adversely affected Ukrainian players' ability to perform their obligation as members of WTA and mentally abused Ukrainian members, including Plaintiff." Exhibit 3 at 40. As a result, Plaintiff plausibly alleges a breach of contract claim.

### e. Court Should Interfere with WTA's Internal Decisions As They Violate WTA's Own Rules

The gist of Plaintiff's allegations is that WTA's purported conduct was illegal or made in bad faith, as its internal decisions violated the terms of the Rulebook. As a result, WTA's conduct adversely affected Ukrainian players' ability to perform their obligations as members of WTA and mentally abused Ukrainian members, including Plaintiff, all of which is prohibited by the Rulebook. Critically, the issue is not the interpretation of the organization's own rules; rather, since the rules were clearly violated, Plaintiff seeks to redress those violations.

The Second Circuit has noted a distinction between, on the one hand, a simple challenge to an organization's allegedly erroneous interpretation and, on the other, an allegation that the organization acted in bad faith. See, e.g., Crouch v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 845 F.2d 397, 403 (2d Cir. 1988) In other words, a court should not intervene if it simply disagrees with what it perceives to be an unreasonable application of an organization's rules, but it may do so in response to legitimate allegations of bad faith or illegality. Id. at 401.

Therefore, as Plaintiff's allegations concern the latter, the Court should interfere and remedy those violations.

### 2. Plaintiff Plausibly Alleges Negligence Claim

**a. Plaintiff Plausibly Alleges that Defendants Owe Her a Duty Independent of the Parties' Contractual Relationship**

To establish a prima facie case of negligence under New York law, three elements must be demonstrated: (1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach. Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998).

Contrary to Defendants' argument that Plaintiff fails to allege the existence of any duty owed by WTA that is independent of the duties WTA may owe to her pursuant to the parties' contractual relationship, Mem. at 15-16,  Plaintiff's negligence claim is not premised on breach of contract claim, i.e., breach of the Rulebook's contractual terms.   In fact, Plaintiff has identified a duty of care that Defendants owed to her that is independent of the parties' contract.

Specifically, Plaintiff has been harassed by Defendants' continued neglect to make reasonable accommodations, preventing interactions between Ukrainian and Russian players. At a minimum, Defendants could have set the tournament schedule to avoid or minimize games between Ukrainian and Russian players, and vigorously enforce their own tournament rules to prevent unreasonable emotional pressure caused by the prohibited display of the symbols of the Russian Federation, the country that invaded Plaintiff's Ukraine.

By analogy, under U.S. Federal law, sports tournament organizers, promoters, or sponsors owe a duty of care to players or participants, as outlined in statutes governing amateur athletics. For instance,   36 U.S.C. § 220505 specifies that the United States Olympic & Paralympic Committee and related organizations must take reasonable steps to advocate for

equal treatment of athletes and facilitate the resolution of disputes involving eligibility and participation in competitions. Additionally, the statute emphasizes that nothing in its provisions preempts or abrogates the duty of care owed under state or common law, thereby affirming the existence of such a duty. Similarly, 36 U.S.C. § 220524 requires national governing bodies to promote a safe environment in sports, free from **emotional**, physical, and sexual abuse. Furthermore, 36 U.S.C § 220503 highlights the obligation to promote a safe environment in sports, free from **emotional**, physical, and sexual abuse, and to oversee compliance with policies ensuring such safety. This provision underscores the responsibility of sports organizations to protect participants from emotional harm. In conclusion, while these statutes establish certain duties and responsibilities for sports organizations under U.S. Federal law, to prevent emotional abuse, they also preserve the same duty of care under state and common law.

Similarly, under New York law, organizers of sporting activities owe a duty to exercise reasonable care to protect participants "from injuries arising out of unassumed, concealed, or unreasonably increased risks." Benitez v. New York City Bd. of Educ., 73 N.Y.2d 650, 654, (1989); see also Morgan v. State, 90 N.Y.2d 471, 485 (1997)("in assessing whether a defendant has violated a duty of care within the genre of tort-sports activities and their inherent risks, the applicable standard should include whether the conditions caused by the defendants' negligence are 'unique and created a dangerous condition over and above the usual dangers that are inherent in the sport'"). Presumably, those "unassumed, concealed, or unreasonably increased risks" include emotional harm alleged here by Plaintiff, as this type of harm is not inherent to the game of tennis.

Therefore, contrary to Defendants' argument that "in cases where courts have found independent duties owed by sports associations to their players, those duties consistently

had to do with ensuring players' physical safety," Mem. at 16, sports tournament organizers, promoters, or sponsors' duty is not limited to protection of only physical safety of its players.

### b. Defendants Voluntarily Assume a Duty to Plaintiff to Ban Russian and Belarusian Players Who Supported the War and Breached That Duty

Since Defendant Steve Simon and Defendant WTA, by virtue of *respondeat superior* doctrine, voluntarily assumed a duty to ban Russian or Belarusian players if they showed public support of the war, Exhibit 3 at ¶¶14-16, 19-21, Defendants are estopped from escaping liability for their breach of that duty as "special relationship" or "duty" were formed. See, e.g., Miles v. R & M Appliance Sales, Inc., 26 N.Y.2d 451 (1970)(assumed duty independent of contract gave rise to obligation to perform that duty with reasonable care and breach of that duty making tortfeasor liable for negligence); Heard v. City of NY, 82 N.Y.2d 66, 72 (1993)(defendant who voluntarily assumes a duty to act with reasonable care toward others may be held liable for breach of that duty if the plaintiff relied on the defendant's undertaking and if the defendant's act or failure to act placed the plaintiff in a more vulnerable position than if the obligation had not been assumed since "an 'assumed duty', or a 'duty to go forward', may arise once a person undertakes a certain course of conduct upon which another relies").

Here, this promise placed Plaintiff in a worse position than she otherwise would have been without it, as she reasonably expected to avoid playing against Russian or Belarusian players, who publicly supported the war. As such, her emotional injury was substantially more significant when she was unexpectedly forced to compete against those players, placing her in a worse position, as she was not mentally and psychologically prepared for such matches. Moreover, she was under extreme pressure from the Ukrainian public, who criticized her for playing with the individuals openly supporting the war.

Further, Defendants are wrong arguing that "the claim would fail because of the absence of consideration," Mem. at 18 n. 12, because equitable estoppel can serve as valid consideration in certain circumstances where one party's conduct induces another to rely on a promise or representation to their detriment. See, e.g., NY Conference Assn. of 7th Day Adventists v. 915 James St. Assoc., 38 A.D.2d 235, 237 (4th Dep't 1972)("The law is clear that in any case where a party to a contract agrees to give up a possible further defense or foregoes the advantage of a condition provided for his benefit in an existing contract, the promise is binding if the promisee relying thereon changes his position.")(citing Williston, Contracts, 3d ed., § 140.)

Finally, Plaintiff's reliance on the Defendants promise was justified and reasonable as she reasonably believed that such a powerful and respectful tennis organization and its CEO would keep their promise.   Moreover, as Defendants duly acknowledged, under Rule XVII(D)(13)(a)(ii), the WTA Board has the authority to ban the players. Mem. at 18, Exhibit 2 at 291.

## c. Plaintiff's Allegations Include Well-Pleaded Allegations of Hostile Work Environment Claim

Defendants correctly assumed that Plaintiff's negligence claim included a hostile work environment claim. To state such a claim, a plaintiff must allege facts that show the challenged conduct "(1) is objectively severe or pervasive -- that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected status]." Sykes v. Rachmuth, 2023 U.S. Dist. LEXIS 57052, 2023 WL 2752865, at *7 (S.D.N.Y. Mar. 31, 2023) (internal quotation marks omitted).

"It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through [other means], is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic," such as race or <u>national origin</u>. <u>Brown v. Henderson</u>, 257 F.3d 246, 252 (2d Cir. 2001)(emphasis added). While to support a hostile work environment claim,  a plaintiff generally "must prove more than a few isolated incidents of [discriminatory] enmity," as "[c]asual comments, or accidental or sporadic conversation, will not trigger equitable relief pursuant to the statute," <u>Snell v. Suffolk Cnty.</u>, 782 F.2d 1094, 1103 (2d Cir. 1986), "even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." <u>Alfano v. Costello</u>, 294 F.3d 365, 374 (2d Cir. 2002).

Here, contrary to Defendants' contention, Plaintiff sufficiently alleged her hostile work environment claim. Plaintiff's allegations are very specific and detailed. Moreover, the alleged incidents are not "accidental or sporadic."

Specifically, her well-plead allegations include, Defendant Simon statement that "It is OK to support the war," despite his prior promise that "if Russian or Belarus players showed public support of the war, they would be banned from any tournament sponsored by the WTA,"  Exhibit 3 at ¶¶ 18, 25, Defendants' disregard of Plaintiff's complaints about  Ms. Viktoria Kudermetova, a Russian player, who during the Paris Roland Garros tournament, wore a shirt with "Tatneft" patch, knowing that that company directly sponsored the war and was sanctioned by several Western countries, <u>id</u>. at ¶19, refusal to address Ms. Marta Kostyuk, a Ukrainian player, request to excuse her from playing a doubles match against Russian players Ms. Kudermetova and Ms. Pavlyuchenkova, due to the psychological impossibility of playing against Ms. Kudermetova, who, together with her husband, supported the invasion in Ukraine,

id. at ¶20, decisions not to remove Russian or Belarus flags at WTA' sponsored tournaments, despite the International Olympic Committee's mandate, id. at ¶22, ignoring displayed Russian flags and t-shirts with Vladimir Putin's image on them at the 2023 Australian Open, id. at ¶24, unreasonable requests to remove Ukrainian flag from Plaintiff's coach shoulders, id. at ¶31, retaliation against Plaintiff's coach,  Mykyta Vlasov, id. at ¶32.   These allegations clearly support her hostile work environment claim.

### d. Plaintiff's Well-Pleaded Allegations Support Plaintiff's Negligence Claim

Plaintiff plausibly alleged that she has been harassed by Defendants' continued neglect to make reasonable accommodations, preventing interactions between Ukrainian and Russian players, which emotionally abused her. Her Amended Complaint states in detail those allegations in multiple subsections of paragraph 45. Exhibit 3 at  ¶45(a) –(g).  Critically, at this stage, those allegations are sufficient as the Amended Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678.

### 3. Plaintiff Plausibly Alleges Negligent Supervision Claim

Where the negligence claim relates to an employer's retention and supervision of an employee, the complaint must include allegations that: (1) the employer had actual or constructive knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm; (2) the employer knew or should have known that it had the ability to control the employee and of the necessity and opportunity for exercising such control; and (3) the employee engaged in tortious conduct on the employer's premises or using property or resources available to the employee only through their status as an employee. See Moore Charitable Found. V. PJT Partners, Inc., 40 N.Y.3d 150, 157 (2023).

As discussed above, Plaintiff has plausibly alleged that Defendants committed actionable torts of negligence against her. Also, Plaintiff has plausibly alleged that "Defendants had a duty of care to Plaintiff, as well as to all Ukrainian members when retaining, supervising, and evaluating its employees, including Defendant Simon, to timely, adequately, and appropriately investigate, heed, and act on all reasonable suggestions and information that Defendant acted unethically and otherwise detrimental to mental and physical to the wellbeing of Plaintiff." Exhibit 4 at ¶54.

Further, it is premature to determine whether Defendant Simon's conduct occurred within the scope of his employment because an employee's "scope of employment" is heavily dependent on factual considerations, and as such, this question is ordinarily one for the jury. Tenczar v. Richmond, 172 A.D.2d 952, 953 (3d Dep't 1991). Finally, Plaintiff's numerous complaints to the WTA about Mr. Simon propensity to "mentally, physically, and emotionally injure Ukrainian members" are more than sufficient to establish that the WTA had the requisite notice. Exhibit 3 at ¶¶ 15, 16, 20, 23, 24, 28.   To that extent, those allegations are not "general, unrelated or lesser allegations of prior wrongdoing" as Defendants are trying to assert. Mem. at 25.

**4. Plaintiff Plausibly Alleges Negligent Infliction of Emotional Distress**

Under New York law, a cause of action alleging intentional infliction of emotional distress "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993). Notably, "a breach of a duty of care resulting directly in emotional harm is compensable even though no physical injury occurred." Brown v.

NY Design Ctr., Inc., 215 A.D.3d 1, 9 (1st Dep't 2023); Taggart v. Costabile, 131 A.D.3d 243, 252 (2d Dep't 2015)(same). As such, Defendants' argument that "Plaintiff does not allege that Defendants unreasonably endangered her physical safety or caused her to fear for her own physical safety," Mem. at 26, is unavailing.

Here, based on the discussion above, Plaintiff has plausibly alleged all the elements of the NIED claim.

### 5. Defendants' Request to Award, "in accordance with the WTA By-Laws," Their Attorneys' Fees and Costs Should Not Be Enforced As It is Unconscionable, Constitutes a Penalty, and Violates Public Policy Considerations

While Defendants did not brief on this issue, in the conclusion section, they summarily request that the Court "award Defendants, in accordance with the WTA By-Laws, their attorneys' fees and costs." Mem. at 27. This request should be rejected for several reasons. First, Plaintiff was not even aware of the By-Laws provisions, let alone the litigation cost allocation provision. Notably, when requested by the Court, Plaintiff was even unable to provide a copy of the By-Law. See Exhibit 6. Also, in her signed 2024 Annual Player Form, she only acknowledged that she "had the opportunity to review the Rulebook." Exhibit 5 at 1.

Second, Section 10.14 of the By-Law states:

Litigation Costs.

(a) In the event that (i) any Claiming Party initiates or asserts any Claim or joins, offers substantial assistance to or has a direct financial interest in any Claim against the Tour or any Member (including any Claim purportedly filed on behalf of the Tour or any Member), and (ii) the Claiming Party (or the third party that received substantial assistance from the Claiming Party or in whose Claim the Claiming Party had a direct financial interest) does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought, then each Claiming Party shall be obligated jointly and severally to reimburse the Tour and any such Member for all fees, costs and expenses of every kind and description (including, but not limited

> to, all reasonable attorneys' fees and other litigation expenses) (collectively, "Litigation Costs") that the parties may incur in connection with such Claim.

Exhibit 4 at 39. Similar to the waiver provision in the By-Laws, Exhibit 4 at 7, the fee shifting provision is unconscionable as it is a textbook example of a "contractual overreaching, imposition, oppressiveness, or patent unfairness." <u>Ford Motor Credit Co</u>., 990 F Supp. at 110. Not only do the By-Laws force its Members - tennis players - to sign a waiver prohibiting any claims against the WTA, it also, if some brave player decides to file a lawsuit, threatens to impose prohibitive attorneys' fees and cost of litigation, if she "does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought."

This provision creates a chilling effect, completely preventing tennis players from seeking their day in court. Moreover, since Plaintiff had no bargaining power to challenge this provision, even assuming she was aware of it, the Court should find it invalid and unenforceable. <u>See, e.g.</u>, <u>Matter of Krodel v. Amalgamated Dwellings Inc.</u>, 166 A.D.3d 412, 414 (1st Dep't 2018)(finding that an attorneys' fees provision which provides that the tenant must pay attorneys' fees if it commences an action against the landlord based upon the default of the landlord is unconscionable and unenforceable as a penalty); <u>Sanchez v. Nitro Lift Tech., L.L.C.</u>, 91 F. Supp. 3d 1218, 1222-1223 (E.D. Okla. 2015)( the cost-and-fee-shifting provision is unenforceable because it "would deter a substantial number of similarly situated potential litigants, as they would fear being stuck with substantial costs and fees in the event they did not prevail in their claim"); <u>Cole v. Burns Int'l Sec. Servs</u>., 105 F.3d 1465, 1485 (D.C. Cir. 1997) (establishing a per se rule that it is unlawful to require an employee to pay all or part of the arbitrator's fees as a condition of employment).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

Dated: July 15, 2025

Brooklyn, New York

/s/Arkady Bukh
_____

BUKH LAW PA
Attorneys for Lesia Tsurenko
1123 Ave. Z
Brooklyn, NY 11235
Phone: (718) 376-4766
Fax: (718) 376-3033
honorable@usa.com

**Certificate of Compliance**

I, Arkady Bukh, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and Rule (II)(B)(2) of the Honorable Naomi Reice Buchwald's Individual Rules & Practices. According to the word count of the word processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rules, there are  5,950 words in the document.

July 15, 2025                                            /s/ Arkady Bukh

                                                        _____