**BUKH LAW PA**
1123 Ave. Z
Brooklyn, NY 11235
Phone: (718) 376-4766
Fax: (718) 376-3033

<u>VIA ECF</u>                                   July 15, 2025

The Honorable Naomi Reice Buchwald
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

        Re:   <u>Lesia Tsurenko v. WTA Tour, Inc. and Steve Simon, Case No. 24-cv-08518-NRB</u>

Dear Judge Buchwald:

Our firm represents Plaintiff Lesia Tsurenko ("Plaintiff") in this case. Plaintiff submits this letter pursuant to Rule 2(C)(1) of Your Honor's Individual Practices, to outline her substantive arguments stated in her Opposition to Defendants' Motion to Dismiss the Amended Complaint.

**1. Plaintiff Plausibly Alleges Breach of Contract Claim**

First, contrary to Defendants' contention, Plaintiff's breach of contract claim should not be dismissed based on her alleged waivers of her right to bring such a claim because due to its virtual worldwide monopoly, all WTA players, including Plaintiff, have only two options – either to accept unconditionally all the oppressive terms of the WTA rules, including said waivers, as stated in the Official Rulebook and By-Laws, Exhibits 2,4, and Annual Player Form, Exhibit 5, or entirely forfeit their opportunity to play tennis, as there is no alternative to be a ranked professional women player outside of the WTA's tournaments. Therefore, since Plaintiff had no bargaining power when she executed the waivers, the WTA exercised its power in such a way as to take advantage of Plaintiff's lack of sophistication and bargaining power. <u>See Ford Motor Credit Co. v. Miller</u>, 990 F Supp. 107, 110 (N.D.N.Y. 1998); <u>Hume v. United States</u>, 132 U.S. 406 (1889); <u>Christian v. Christian</u>, 42 N.Y.2d 63, 71 (1977). As such, the unlimited waivers provisions are invalid and unenforceable.

Second, based on the analysis of terms of the Rulebook, the waivers are not applicable to allegations stated in this Amended Complaint, which deal with mental abuse and harassment of Plaintiff rather than technical matters involving the organization of the tournament, member classification, and similar issues in connection with Defendants' operations, which are covered by the Rulebook. As such, Plaintiff did not waive her claims against the WTA. <u>See United States Nav. Inst. v. Charter Communications, Inc.</u>, 875 F.2d 1044, 1049 (2d Cir. 1989). Alternatively, this determination is a question of fact, and it should not be determined on motion to dismiss. <u>See, e.g.</u>, <u>United States Nav. Inst.</u>, 875 F.2d 1044, 1048 (2d Cir. 1989).

Third, contrary to Defendant's argument that "WTA and its directors and officers do not fall within the definition of "Tournament Support Personnel, " since the Rulebook several times defines Tournament Support Personnel as "any tournament director, official, owner, operator, employee, agent, contractor or any similarly situated person." Exhibit 2 at 279, 418, 511. Even if they are not, under the doctrine of *respondeat superior*, the WTA, "a principal is [vicariously] liable for the negligent acts committed by its agents within the scope of the agency." Fils-Aime v. Ryder TRS, Inc., 40 A.D.3d 917 (2d Dep't 2007).

Fourth, Plaintiff plausibly alleges a breach of contract claim as her allegations fit squarely within said rules, as the WTA's conduct "created or failed to rectify tournament conditions that adversely affected Ukrainian players' ability to perform their obligation as members of WTA and mentally abused Ukrainian members, including Plaintiff." Exhibit 3 at 40.

Fifth, since WTA's conduct adversely affected Plaintiff's ability to play tennis and mentally abused her, all of which is prohibited by the Rulebook, the issue is not the interpretation of the organization's own rules; rather, since the rules were clearly violated, Plaintiff seeks to redress those violations. Crouch v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 845 F.2d 397, 403 (2d Cir. 1988).

## 2. Plaintiff Plausibly Alleges Negligence Claim

First, Plaintiff's negligence claim is not premised on a breach of contract claim as Plaintiff has been harassed by Defendants' continued neglect to make reasonable accommodations, preventing interactions between Ukrainian and Russian players. In fact, under Federal and New York law, sports tournament organizers, promoters, or sponsors owe a duty to promote a safe environment in sports, free from emotional, physical, and sexual abuse. See, e.g., 36 U.S.C. § 220524, 36 U.S.C § 220503; Benitez v. New York City Bd. of Educ., 73 N.Y.2d 650, 654, (1989)(organizers of sporting activities owe a duty to exercise reasonable care to protect participants "from injuries arising out of unassumed, concealed, or unreasonably increased risks.").

Second, since Defendants voluntarily assumed a duty to ban Russian or Belarusian players if they showed public support of the war, Exhibit 3 at ¶¶14-16, 19-21, Defendants are estopped from escaping liability for their breach of that duty as a "special relationship" or "duty" were formed. See, e.g., Miles v. R & M Appliance Sales, Inc., 26 N.Y.2d 451 (1970). In fact, Defendants' promise placed Plaintiff in a worse position than she otherwise would have been without it, as she reasonably expected to avoid playing against Russian or Belarusian players, who publicly supported the war.

Third, Plaintiff's negligence claim included a hostile work environment claim. Sykes v. Rachmuth, 2023 U.S. Dist. LEXIS 57052, 2023 WL 2752865, at *7 (S.D.N.Y. Mar. 31, 2023) . Specifically, her well-plead allegations include Defendant Simon statement that "It is OK to support the war," despite his prior promise that "if Russian or Belarus players showed public support of the war, they would be banned from any tournament sponsored by the WTA," Exhibit 3 at ¶¶ 18, 25, Defendants' disregard of Plaintiff's complaints about Ms. Viktoria Kudermetova,

a Russian player, who during the Paris Roland Garros tournament, wore a shirt with "Tatneft" patch, knowing that that company directly sponsored the war and was sanctioned by several Western countries, id. at ¶19, refusal to address Ms. Marta Kostyuk, a Ukrainian player, request to excuse her from playing a doubles match against Russian players Ms. Kudermetova and Ms. Pavlyuchenkova, due to the psychological impossibility of playing against Ms. Kudermetova, who, together with her husband, supported the invasion in Ukraine, id. at ¶20, decisions not to remove Russian or Belarus flags at WTA' sponsored tournaments, despite the International Olympic Committee's mandate, id. at ¶22, ignoring displayed Russian flags and t-shirts with Vladimir Putin's image on them at the 2023 Australian Open, id. at ¶24, unreasonable requests to remove Ukrainian flag from Plaintiff's coach shoulders, id. at ¶31, retaliation against Plaintiff's coach, Mykyta Vlasov, id. at ¶32.

### 3. Plaintiff Plausibly Alleges Negligent Supervision Claim

Plaintiff alleged that "Defendants had a duty of care to Plaintiff, as well as to all Ukrainian members when retaining, supervising, and evaluating its employees, including Defendant Simon, to timely, adequately, and appropriately investigate, heed, and act on all reasonable suggestions and information that Defendant acted unethically and otherwise detrimental to mental and physical to the wellbeing of Plaintiff." Exhibit 4 at ¶54. Further, it is premature to determine whether Defendant Simon's conduct occurred within the scope of his employment because an employee's "scope of employment" is heavily dependent on factual considerations, and as such, this question is ordinarily one for the jury. Tenczar v. Richmond, 172 A.D.2d 952, 953 (3d Dep't 1991).

### 4. Plaintiff Plausibly Alleges Negligent Infliction of Emotional Distress

A breach of a duty of care resulting directly in emotional harm is compensable even though no physical injury occurred." Brown v. NY Design Ctr., Inc., 215 A.D.3d 1, 9 (1st Dep't 2023). As such, Defendants' negligence discussed above proximately caused Plaintiff's emotional harm and distress.

### 5. Court Should Find Attorney's Fees Shifting Provision Invalid and Unenforceable

First, Plaintiff was not even aware of the By-Laws provisions, let alone the litigation cost allocation provision. Also, in her signed 2024 Annual Player Form, she only acknowledged that she "had the opportunity to review the Rulebook." Exhibit 5 at 1. Similar to the waiver provision in the By-Laws, Exhibit 4 at 7, the fee shifting provision is unconscionable as it is a textbook example of a "contractual overreaching, imposition, oppressiveness, or patent unfairness." This provision creates a chilling effect, completely preventing tennis players from seeking their day in court. See, e.g., Matter of Krodel v. Amalgamated Dwellings Inc., 166 A.D.3d 412, 414 (1st Dep't 2018).

Therefore, Plaintiff believes that Defendants' Motion should be denied in its entirety.

Respectfully,

3

s/ Arkady Bukh

_____

cc: Counsel of Record (via ECF)