UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LESIA TSURENKO,

                Plaintiff,

v.                                   **Case No. 24-cv-08518-NRB**

WTA TOUR, INC. AND STEVE SIMON,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

PROSKAUER ROSE LLP
Bradley I. Ruskin
Jordan B. Leader
Jordan R. Duval
Eleven Times Square
New York, NY 10036-8299

*Counsel for Defendants*

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

I.  Plaintiff's Breach of Contract Claim Should Be Dismissed ............................................. 1
   A. The Waivers Are Binding and Enforceable ................................................................ 1
   B. WTA Is Not "Tournament Support Personnel" .......................................................... 4
   C. Plaintiff Fails to Allege Illegality or Bad Faith to Invoke Judicial Interference ..... 5

II. Plaintiff's Negligence Claim Fails .................................................................................... 6
   A. Defendants Did Not Breach a Duty Independent of the Parties' Contract ............... 6
   B. Defendants Did Not Voluntarily Assume a Duty to Ban Players Who
      Supported the War ...................................................................................................... 7

III. Plaintiff Fails to Plausibly Allege a Hostile Work Environment Claim .......................... 8

IV. Plaintiff's Negligent Supervision Claim Should Be Dismissed ....................................... 9

V.  Plaintiff's NIED Claim Should Be Dismissed ................................................................ 11

CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ATP Tour, Inc. v. Deutscher Tennis Bund*,
   91 A.3d 554 (Del. 2014) ..................................................................................................12

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.*,
   679 F. Supp. 2d 474 (S.D.N.Y. 2010) ................................................................................7

*Bearden v. Alameda Cnty.*,
   2020 WL 1503656 (N.D. Cal. 2020) .................................................................................8

*Benitez v. NYC Bd. of Educ.*,
   73 N.Y.2d 650 (1989) ........................................................................................................6

*Bezuszka v. L.A. Models, Inc.*,
   2006 WL 770526 (S.D.N.Y. 2006) (Buchwald, J.) ...........................................................3

*Bouet v. City of New York*,
   125 A.D.3d 539 (1st Dep't 2015) .....................................................................................10

*Bright v. Coca Cola Refreshements USA, Inc.*,
   2014 WL 5587349 (E.D.N.Y. 2014) ..................................................................................9

*Brink's Glob. Servs. USA, Inc. v. Bonita Pearl Inc.*,
   2025 WL 1666303 (S.D.N.Y. 2025) ..................................................................................8

*Brooks v. USA Track & Field, Inc.*,
   247 N.E.3d 1 (Ind. Ct. App. 2024) ....................................................................................4

*Buchan v. U.S. Cycling Fed'n, Inc.*,
   227 Cal. App. 3d 134 (2d Dist. 1991) ...............................................................................4

*Christian v. Christian*,
   42 N.Y.2d 63 (1977) ..........................................................................................................2

*City of New York v. Local 333, Marine Div., Int'l Longshoremen's Ass'n*,
   106 Misc. 2d 888 (Sup. Ct. 1980) .....................................................................................2

*Coop. Agricole Groupement De Producteurs Bovins De L'Ouest v. Banesto Banking Corp.*,
   1989 WL 82454 (S.D.N.Y. 1989) ......................................................................................7

*Doe v. Alsaud*,
  12 F. Supp. 3d 674 (S.D.N.Y. 2014)..................................................................11

*Ford Motor Credit Co. v. Miller*,
  990 F. Supp. 107 (N.D.N.Y. 1998)......................................................................2

*Ghorpade v. MetLife, Inc.*,
  2014 WL 7008954 (S.D.N.Y. 2014)....................................................................8

*Gillman v. Chase Manhattan Bank*,
  73 N.Y.2d 1 (1988)..............................................................................................2

*Heard v. City of New York*,
  82 N.Y.2d 66 (1993)............................................................................................7

*Hoffman v. Parade Publ'ns*,
  15 N.Y.3d 285 (2010)..........................................................................................8

*In re Estate of Hennel*,
  29 N.Y.3d 487 (2017)..........................................................................................2

*Klos v. Polskie Linie Lotnicze*,
  133 F.3d 164 (2d Cir. 1997)................................................................................3

*LaSalle v. City of New York*,
  2015 WL 1442376 (S.D.N.Y. 2015)....................................................................9

*Milgrim v. Backroads, Inc.*,
  142 F. Supp. 2d 471 (S.D.N.Y. 2001).................................................................3

*Morgan v. New York*,
  90 N.Y.2d 471 (1997)..........................................................................................6

*Morris v. N.Y. Football Giants, Inc.*,
  150 Misc. 2d 271 (Sup. Ct. 1991).......................................................................3

*N.Y. Conf. Assn. of 7th Day Adventists of Syracuse v. 915 James St. Assocs., Ltd.*,
  38 A.D.2d 235 (4th Dep't 1972).........................................................................8

*Rissman v. Chertoff*,
  2008 WL 5191394 (S.D.N.Y. 2008)....................................................................9

*Roco G.C. Corp. v. Bridge View Tower, LLC*,
  166 A.D.3d 1031 (2d Dep't 2018).......................................................................5

*Spinelli v. NFL*,
  903 F.3d 185 (2d Cir. 2018)................................................................................3

*Taggart v. Costabile*,
    131 A.D.3d 243 (2d Dep't 2015)..........................................................................................11

*Tenczar v. Richmond*,
    172 A.D.2d 952 (3d Dep't 1991)..........................................................................................10

*Valentini v. Citigroup, Inc.*,
    837 F. Supp. 2d 304 (S.D.N.Y. 2011)..................................................................................11

**STATUTES**

36 U.S.C. § 220505.........................................................................................................................6

# INTRODUCTION

In an attempt to create the illusion of well-pleaded claims, Plaintiff's Opposition is full of contradictory and *ipse dixit* arguments, distortions of the law, and mischaracterizations of her own allegations. On numerous issues, the Opposition simply fails to address, and therefore concedes, arguments Defendants made in their Moving Brief. As shown below, each of the claims in the Amended Complaint fails as a matter of law, and the Court should dismiss the Amended Complaint in its entirety with prejudice.

# ARGUMENT

## I. Plaintiff's Breach of Contract Claim Should Be Dismissed

### A. The Waivers Are Binding and Enforceable

Plaintiff argues the waivers should not be enforced because they allegedly are unconscionable or inapplicable to her breach of contract claim. She is wrong.

#### 1. *The Waivers Are Not Unconscionable*

Plaintiff does not, and cannot, deny that the terms of the By-Laws, including the waiver, apply to her as a member and bar her claim. Nor can she deny that she signed the APF – and agreed further to waive her claims – multiple times, including twice after the events she alleges give rise to her claims. She seeks to circumvent this by arguing the waivers are unconscionable because they preclude "Plaintiff from asserting any cause of action without even getting any benefit from this bargain." (Opp. at 10.) But she refutes her own argument by acknowledging the many significant benefits she receives as a WTA member, including the right to compete in WTA 1000 tournaments that award "$2 million to $10 million" in prize money, as well as "resources such as The Player Development Advisory Panel, orientation programs, and access to coaching certifications...." (*Id*. at 12.) WTA members receive numerous other benefits, including insurance, a pension, and participation in WTA governance. (Rulebook at 202–03, 207.) Further, in

connection with her annual signing of the APF, Plaintiff received approximately $6.9 million in prize money.[1]

Thus, Plaintiff cannot establish that the agreements she agreed to be bound by are "so grossly unreasonable" that the Court should decline to enforce the waivers. *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988). One case Plaintiff cites (Opp. at 10), *Christian v. Christian*, 42 N.Y.2d 63 (1977), demonstrates that she cannot meet her burden. There, the New York Court of Appeals, in overturning a decision voiding an agreement on unconscionability grounds, explained that an unconscionable bargain is one which "no person in his or her senses and not under delusion would make." *Id.* at 71 (cleaned up); *In re Estate of Hennel*, 29 N.Y.3d 487, 495 (2017).[2] Plaintiff has not plausibly pleaded (nor could she) that she was deluded in agreeing to the waivers.

Plaintiff argues next that WTA took "advantage of Plaintiff's lack of sophistication and lack of bargaining power." (Opp. at 10.) Plaintiff, however, does not allege that she was unsophisticated, nor could she. When she signed the APFs in 2023, she was a 34-year-old professional tennis player with 16 years' experience on the Tour. She employs a coach (AC ¶ 17) and an agent, and had endorsement deals with well-known, international brands.[3] Plaintiff is therefore a "highly paid, sophisticated professional athlete[], who possessed considerable

---

[1]    *See* Lesia Tsurenko, WTA TOUR, https://www.wtatennis.com/players/315295/lesia-tsurenko#main-content.

[2]    None of Plaintiff's other cases held a waiver to be unconscionable. *See Ford Motor Credit Co. v. Miller*, 990 F. Supp. 107, 110 (N.D.N.Y. 1998) ("[R]eliance on the doctrine of unconscionability is misplaced."); *City of New York v. Local 333, Marine Div., Int'l Longshoremen's Ass'n*, 106 Misc. 2d 888, 891 (Sup. Ct. 1980) (agreement "untainted by" adhesion).

[3]    *See* TopSeed Players, TOPSEED, https://topseed.net/athlete-management/ and LESIA TSURENKO, https://lesia-tsurenko.com.

bargaining power [and] w[as] represented by experienced agents and/or counsel." *Morris v. N.Y. Football Giants, Inc.*, 150 Misc. 2d 271, 276 (Sup. Ct. 1991); *cf. Bezuszka v. L.A. Models, Inc.*, 2006 WL 770526, at *8–9 (S.D.N.Y. 2006) (Buchwald, J.) (enforcing waiver, finding (i) no disparity in bargaining power between young models and agency, and (ii) the complaint, like here, did not allege plaintiffs were under external pressure to sign or given an unreasonably short time to review agreement).

Even if the waivers were unconscionable, Plaintiff ratified the agreements and cannot now repudiate them. "Under New York law, a party can ratify an unconscionable agreement and does so by accepting benefits under the agreement with knowledge of its terms instead of promptly repudiating it." *Spinelli v. NFL*, 903 F.3d 185, 208 (2d Cir. 2018). There is no dispute that Plaintiff continued to accept the benefits of the bargain – including WTA membership benefits and receiving millions of dollars in prize money – after signing the APFs. That conduct vitiates her argument.

2. *The Parties' Agreements Are Not Contracts of Adhesion.*

Plaintiff's argument that the By-Laws and APF constitute contracts of adhesion fails. Under New York law, "[a] court will find adhesion only when the party seeking to rescind the contract establishes that the other party has used 'high pressure tactics,' or 'deceptive language….'" *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997). Even assuming the waivers were on a take-it-or-leave-it basis, Plaintiff does not allege that WTA used high pressure tactics or deceptive language, which dooms her argument. *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001) (holding such allegations are "required to render [a waiver] a contract of adhesion"). Indeed, as demonstrated in the Moving Brief, and as Plaintiff did not refute, numerous courts in New York have enforced waivers that sports bodies required

3

participants to sign.  (Mov. Br. at 12.) *See also Brooks v. USA Track & Field, Inc.*, 247 N.E.3d 1 (Ind. Ct. App. 2024); *Buchan v. U.S. Cycling Fed'n, Inc.*, 227 Cal. App. 3d 134 (2d Dist. 1991).

### 3. *Plaintiff Concedes the Waivers Apply to Her Claim*

Plaintiff argues the waivers are limited in scope and do not cover her breach of contract claim (Opp. at 12–13), but she completely contradicts her argument by conceding the waivers apply to "'any and all claims' against Defendants," which "deprives Plaintiff from asserting any cause of action" against WTA.  (Opp. at 10.)

Even if the waivers were limited to matters "which are covered by the Rulebook" (Opp. at 13) (they are not), she argues that her contract claim stems from "allegations [that] fit squarely within … rules [XVII.F.1 and XVII.F.1.a]" of the Rulebook.  (*Id.* at 15.)  Thus, even under Plaintiff's theory, the waivers cover her claim.

Finally, the Court should reject Plaintiff's conclusory argument that the applicability of the waivers is a question of fact that cannot be decided now.  (*Id.* at 13.)  Plaintiff never asserts what language purportedly is ambiguous.  Her argument that the waivers are limited in scope is not a reasonable interpretation, especially because Plaintiff concedes the waivers cover "any and all claims" and "any cause of action" against WTA.  (*Id.* at 10.)  Thus, there is no ambiguity, and the Court should enforce the waiver now.

### B. WTA Is Not "Tournament Support Personnel"

Plaintiff's argument that WTA is included within the definition of Tournament Support Personnel is wrong.  Plaintiff alleges WTA breached Rule XVII.F.1, which only applies to Tournament Support Personnel.  (AC ¶ 37.)  That term is defined in the Rulebook as "any Tournament Director, Tournament Owner, Tournament operator, Tournament employee, or any

4

designated agent of the Tournament." (Rulebook at 279.)[4] This rule only applies to *persons* who work for a Tournament or are designated as the Tournament's Owner. There is no doubt that WTA is not a person and it does not work for a Tournament. Plaintiff tries to avoid this obvious flaw by attempting to rely on the tort doctrine of *respondeat superior*, which is inapplicable to her contract claim. *Roco G.C. Corp. v. Bridge View Tower, LLC*, 166 A.D.3d 1031, 1034 (2d Dep't 2018). Even if it were, Plaintiff's attempt fails because the doctrine only applies to a party's employees. Here, there is no allegation, nor could there be, that any unspecified individuals who work for Tournaments are employees of WTA. And to the extent Plaintiff is trying to argue now that WTA should be liable for Simon's alleged conduct, that too fails because Plaintiff cannot plausibly allege that Simon works for a Tournament. Instead, the only allegation is that Simon is WTA's CEO. (AC ¶ 4.) Thus, the doctrine is inapplicable and cannot save Plaintiff's claim.[5]

   **C.**  **Plaintiff Fails to Allege Illegality or Bad Faith to Invoke Judicial Interference**

Plaintiff argues the Court should interfere with the internal decisions made by WTA because the "gist" of her Amended Complaint is that Defendants' conduct was "illegal or made in bad faith." (Opp. at 15.) However, there are no such plausible allegations in the Amended Complaint. The Court should reject Plaintiff's improper effort to rewrite her Amended Complaint through new allegations in her Opposition and find that there is no basis to invoke judicial interference. (Mov. Br. at 14–15.)

---

[4] Plaintiff cites to a slightly different definition of Tournament Support Personnel (Rulebook at 418), but that definition only applies to a different section of the Rulebook.

[5] Moreover, Plaintiff failed to address Defendants' argument that even if that Rule were applicable, none of the allegations fall within the conduct the Rule prohibits. (Mov. Br. at 13–14.)

5

## II. Plaintiff's Negligence Claim Fails

### A. Defendants Did Not Breach a Duty Independent of the Parties' Contract

Plaintiff asserts the duties of care "independent of the parties' contract" that Defendants allegedly breached were to provide unidentified accommodations to her, set tournament schedules to avoid interactions between Ukrainian and Russian players, and enforce tournament rules to prevent the display of symbols of Russia. (Opp. at 16.)[6] Contrary to Plaintiff's *ipse dixit* assertion, these allegations all derive exclusively from the parties' contractual relationship. In fact, Plaintiff specifically argues that her negligence claim is based on Defendants' alleged failure to "enforce their own rules." (*Id.*)

Plaintiff's reference to three federal statutes, which she claims impose a duty on sports organizers to protect against emotional harm, does not assist her. (Opp. at 16–17.) Each of these statutes pertains exclusively to *amateur athletics*, and none creates a private right of action. *See* 36 U.S.C. § 220505(b)(9).

Plaintiff also contends, without authority, that the duty of sports organizers to exercise reasonable care against injuries arising out of "unassumed, concealed, or unreasonably increased risks" "presumably" encompasses emotional harm. (Opp. at 17–18.) The two cases she cites, however, involve *physical* injuries. *Benitez v. NYC Bd. of Educ.,* 73 N.Y.2d 650 (1989); *Morgan v. New York,* 90 N.Y.2d 471 (1997). Plaintiff cannot simply "presume" the existence of a legal

---

[6] As discussed in Defendants' Moving Brief at 19 n.14, the only allegation of anyone displaying symbols of Russia relates to the Australian Open. Plaintiff inexplicably continues to argue that WTA governs all of women's professional tennis, including the Australian Open. (Opp. at 8 n.1.) There are no plausible allegations, however, to support these arguments. WTA is the governing body only of the WTA Tour. Simply because WTA published an article about the Australian Open, and that tournament is reflected on WTA's yearly calendar, does not demonstrate that WTA has any authority over the Australian Open, which is independently run by Tennis Australia.

duty without any supporting authority.  *Coop. Agricole Groupement De Producteurs Bovins De L'Ouest v. Banesto Banking Corp.*, 1989 WL 82454, at *17–18 (S.D.N.Y. 1989).

> **B.     Defendants Did Not Voluntarily Assume a Duty to Ban Players Who Supported the War**

Plaintiff next contends that Defendants voluntarily assumed a duty to ban players who publicly supported the war, and that they are estopped from escaping liability for breaching that duty because a "special relationship" or "duty" was formed.  (Opp. at 18.)  This argument fails because Plaintiff does not identify the nature, or cite any allegations to support the existence of, any form of "special relationship," which is fatal to her claim.  *See B & M Linen, Corp. v. Kannegiesser, USA, Corp.,* 679 F. Supp. 2d 474, 484 (S.D.N.Y. 2010).

Further, Plaintiff has not plausibly alleged Simon's purported promise placed her in a worse position than she otherwise would have been without it.  She argues that the promise led her to expect she would not have to compete against Russian and Belarussian players, and that her emotional injury was therefore "substantially more significant" when she did.  (Opp. at 18.)  But that misses the point.  The test is not whether she allegedly suffered a greater injury, but whether the alleged failure to follow through on an assumed duty "enhanced the risk [Plaintiff] faced, created a new risk[,] [or] induced [her] to forego some opportunity to avoid risk."  *Heard v. City of New York,* 82 N.Y.2d 66, 73 (1993).  Here, the risk level remained exactly the same before and after the alleged promise:  Plaintiff might have had to play against certain players she did not want to play against.  And Plaintiff has not and cannot allege that she forwent an opportunity to avoid the risk because she knew well in advance of any match who her opponent would be and could have decided not to play if she so chose.

Plaintiff's assertion that Simon's promise is binding without consideration under the doctrine of equitable estoppel (Opp. at 19) fails for a similar reason.  A promise is only binding "if

7

the promisee relying thereon changes his position," which Plaintiff did not do. *N.Y. Conf. Assn. of 7th Day Adventists of Syracuse v. 915 James St. Assocs., Ltd.*, 38 A.D.2d 235, 237 (4th Dep't 1972).

Lastly, Plaintiff's argument that her reliance on Simon's alleged promise was justified fails because the fact that Simon did not have authority to ban players absent a Board vote is expressly stated in the By-Laws. "Any alleged reliance on an outside statement which so clearly contradicts the language in the contract is unreasonable and not justified." *Brink's Glob. Servs. USA, Inc. v. Bonita Pearl Inc.*, 2025 WL 1666303, at *19 (S.D.N.Y. 2025) (cleaned up).

### III.  Plaintiff Fails to Plausibly Allege a Hostile Work Environment Claim

For a non-resident independent contractor like Plaintiff to assert a claim for hostile work environment, she must have "felt the impact of" of the alleged harassment "within New York City or State." *Ghorpade v. MetLife, Inc.*, 2014 WL 7008954, at *3 (S.D.N.Y. 2014); *see also Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 290–92 (2010). Plaintiff cannot satisfy the impact test. She does not allege that she lives in New York or that any of the alleged conduct occurred here.

Regardless, Plaintiff's attempt to salvage her claim by arguing that she made "very specific and detailed" allegations of harassment (Opp. at 20) fails because she cites no authority, nor provides any analysis, as to how those allegations amount to a hostile work environment. As discussed below, none of the alleged conduct constitutes discrimination or harassment against Plaintiff, and even if it did, it is neither severe nor pervasive enough to support the claim.

Plaintiff's allegation that Defendants ignored her complaint about another player wearing a patch at a non-WTA tournament, the French Open (AC ¶ 19), is insufficient because, among other things, the alleged failure to discipline other individuals does not amount to a tort against Plaintiff. *See Bearden v. Alameda Cnty.*, 2020 WL 1503656, at *3–4 (N.D. Cal. 2020). Similarly, Plaintiff cannot have been injured, and thus does not have standing to sue, because Defendants

8

allegedly failed (AC ¶ 20) to address another player's concern about playing in a specific match. (*See* Mov. Br. at 21 n.15.)

Moreover, Defendants demonstrated in their Moving Brief at 19–20 – and Plaintiff has not even attempted to address Defendants' numerous case citations – that the alleged failure to stop spectators' displays of Russian flags and symbols (AC ¶¶ 20, 22) is also insufficient to state a claim.

Plaintiff has not alleged a single instance of harassment directed at her by other players. The only incident involving Plaintiff concerns her allegation that Simon stated that "it is OK to support the war." Putting aside that Plaintiff contemporaneously reported that Simon said something different (Mov. Br. at 7) and that such a statement isn't tortious, a *singular* statement cannot support a hostile work environment claim. *See Rissman v. Chertoff*, 2008 WL 5191394, at *3 (S.D.N.Y. 2008) ("stray remarks made by co-workers … cannot support a plausible claim"). Courts routinely reject claims based on more pervasive and objectively offensive conduct. *See Bright v. Coca Cola Refreshements USA, Inc.*, 2014 WL 5587349, at *24 (E.D.N.Y. 2014) (coworkers using the "n word" and wearing confederate flag bandana insufficient); *LaSalle v. City of New York*, 2015 WL 1442376, at *7 (S.D.N.Y. 2015) (allegation that plaintiff was called derogatory and sexist names insufficient). Lastly, Plaintiff's allegation that WTA retaliated against her coach fails both because the retaliation was not directed towards her and because she does not and cannot claim that it occurred because of a protected characteristic.[7]

## IV.  Plaintiff's Negligent Supervision Claim Should Be Dismissed

The Amended Complaint fails to plausibly plead the elements of a negligent supervision

---

[7]  Plaintiff argues that she has also alleged sufficient facts to support her negligence claim. (Opp. at 21.) However, as with her other arguments, she does not explain why or provide any support, nor does she address the points Defendants made in the Moving Brief at 21–22.

claim. First, Plaintiff's Opposition does not even attempt to identify a single act that Simon took that constitutes a tortious act against her. (Opp. at 21–22.) As discussed, she cannot do so because there are no allegations that he assumed a duty of care independent of the parties' contract or breached any alleged duty. (*See* Point II.)

Second, Plaintiff does not argue that Simon acted outside the scope of his employment, but instead argues that it is premature to make such a determination. (Opp. at 22.) Plaintiff's own allegations, however, demonstrate that all of Simon's complained-of conduct occurred in his capacity as WTA CEO. Simon allegedly made the promise to ban players who supported the war during a meeting initiated by Ukrainian players to address tournament participation. (AC ¶¶ 16–17.) Plaintiff even admits Simon was acting then in his official capacity. (*Id.* ¶ 18.) The same is true of Simon's alleged statements at the 2023 Indian Wells Tournament, which were made during a meeting initiated by Plaintiff to discuss the same subject. (*Id.* ¶ 25.) Plaintiff also attributes to Simon decisions regarding player eligibility and the handling of a complaint submitted by another player (*id.* ¶¶ 19–20), both of which she alleges he had the authority to handle as CEO. Accordingly, the Court "may determine the 'scope of employment' issue as a matter of law." *Tenczar v. Richmond*, 172 A.D.2d 952, 953 (3d Dep't 1991); *Bouet v. City of New York*, 125 A.D.3d 539, 540–41 (1st Dep't 2015). (*See also* Mov. Br. at 23–24.)

Third, Plaintiff contends that her "numerous complaints" placed WTA on notice of Simon's purported propensity to engage in tortious conduct. (Opp. at 22.) Yet she fails to identify any such complaints and there are no plausibly pleaded allegations in the Amended Complaint to support her argument. The only example she offers concerns Simon's statement at the Indian Wells Tournament, but her complaint about the incident was made *after* the alleged wrongdoing and

10

therefore cannot establish notice. *See Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 330 (S.D.N.Y. 2011).

Plaintiff also references "multiple instances when Plaintiff informed Defendants that certain Russian and Belarus players publicly supported the war." (AC ¶ 19.) However, she does not allege that any of those complaints involved Simon, let alone that they related to a propensity on his part to harm Ukrainian players. Because the alleged conduct is of a different kind, it cannot establish notice. *See Doe v. Alsaud,* 12 F. Supp. 3d 674, 681 (S.D.N.Y. 2014).

## V.     Plaintiff's NIED Claim Should Be Dismissed

While it is accurate that a plaintiff need not suffer physical harm to establish an NIED claim, Plaintiff's cases demonstrate that a plaintiff must nevertheless plausibly allege either (1) the breach endangered one's physical safety or caused fear for one's physical safety or (2) "[a] particular type of negligence [that] is recognized as providing an assurance of genuineness, as in" the mishandling of a corpse. *Taggart v. Costabile*, 131 A.D.3d 243, 253 (2d Dep't 2015). Merely alleging emotional harm, as Plaintiff does here, is insufficient.

## CONCLUSION

For the foregoing reasons and those set forth in the Moving Brief, Defendants respectfully request the Court provide the relief requested in the Moving Brief.[8]

|  |  |
|---|---|
| Dated: August 12, 2025 | Respectfully submitted,<br>By: */s/ Jordan B. Leader*<br>Bradley I. Ruskin<br>Jordan B. Leader<br>Jordan R. Duval<br>PROSKAUER ROSE LLP<br>Eleven Times Square<br>New York, New York 10036<br>Telephone: (212) 969-3000<br>Facsimile: (212) 969-2900<br>bruskin@proskauer.com<br>jleader@proskauer.com<br>jduval@proskauer.com<br><br>*Counsel for Defendants WTA Tour, Inc. and Steve Simon* |

---

[8] Plaintiff argues the By-Laws' fee shifting provision should not be enforced. Although the appropriate time to brief this issue is in connection with a fee application, we note two things: (i) the Delaware Supreme Court held that a substantially similar fee shifting provision in the Bylaws of ATP, the men's professional tennis tour, was facially valid. *See ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 555, 558 (Del. 2014); and (ii) the By-Laws have been readily available to Plaintiff on the PlayerZone (an internal website and the official means of communication for Player Members) for years.

**Certificate of Compliance**

I, Jordan B. Leader, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and Rule (II)(B)(2) of the Honorable Naomi Reice Buchwald's Individual Rules & Practices.  According to the word count of the word processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rules, there are 3,492 words in the document.


Dated: August 12, 2025                                         Respectfully submitted,


                                                               /s/ *Jordan B. Leader*